**APPEAL**

# U.S. Bankruptcy Court
## Eastern District of New York (Central Islip)
## Adversary Proceeding #: 8−20−08049−ast

*Assigned to:* Judge Alan S. Trust                     *Date Filed:* 03/13/20
*Lead BK Case:* 18−71748
*Lead BK Title:* Orion Healthcorp, Inc. and Allied World
National Assurance Co.
*Lead BK Chapter:* 11
*Demand:* $4020000
   *Nature[s] of Suit:*  12 Recovery of money/property − 547 preference
                           13 Recovery of money/property − 548 fraudulent transfer
                           14 Recovery of money/property − other

*Plaintiff*
−−−−−−−−−−−−−−−−−−−−−−−
**Howard M Ehrenberg,** *in his capacity as*         represented by **Jeffrey P Nolan**
*Liquidating Trustee of Orion Healthcorp,*                     Pachulski Stang Ziehl & Jones LLP
*Inc., et al*                                                                   780 Third Avenue
                                             34th Floor
                                             New York, NY 10017
                                             310−772−2313
                                             Fax : 310−201−0760
                                             Email: jnolan@pszjlaw.com

                                           **Jeffrey Norlan**
                                           Pachulski Stang Ziehl & Jones LLP
                                           780 Third Avenue
                                           34th Floor
                                           New York, NY 10017
                                           *LEAD ATTORNEY*

                                           **Ilan D Scharf**
                                           Pachulski Stang Ziehl & Jones LLP
                                         780 Third Avenue
                                           36th Floor
                                           New York, NY 10017
                                           (212) 561−7721
                                           Fax : (212) 561−7777
                                           Email: ischarf@pszyjw.com
                                           *LEAD ATTORNEY*

V.

*Defendant*
−−−−−−−−−−−−−−−−−−−−−−−
**Arvind Walia**                                                 represented by **Paris Gyparakis**
                                           Porzio, Bromberg & Newman, P.C.
                                           1675 Broadway, Ste 1810
                                           New York, NY 10019
                                           212−265−6888

1

Fax : 212–957–3983
Email: pgyparakis@pbnlaw.com

**Sanford P Rosen**
Rosen & Associates, P.C.
747 Third Avenue
New York, NY 10017–2803
(212) 223–1100
Fax : (212) 223–1102
Email: srosen@rosenpc.com

**Eugene Ronald Scheiman**
The Law Office of Eugene R. Scheiman
570 Lexington Avenue
Ste 1600
New York, NY 10022
212–594–7563
Email: eugene.scheiman@scheimanlaw.com

**Defendant**
——————————————————
**Niknim Management Inc.**                    represented by **Paris Gyparakis**
                                              (See above for address)

                                              **Sanford P Rosen**
                                              (See above for address)

                                              **Eugene Ronald Scheiman**
                                              (See above for address)

| Filing Date | # | | Docket Text |
|---|---|---|---|
| 05/28/2021 | | 22 | Amended Complaint Demand Amount by Jeffrey P Nolan on behalf of Howard M Ehrenberg against Howard M Ehrenberg.(RE: related document(s)1 Complaint filed by Plaintiff Howard M Ehrenberg, 20 Order to Schedule Hearing (Generic)) (Attachments: # 1 Adversary Cover Sheet) (Nolan, Jeffrey) (Entered: 05/28/2021) |
| 06/09/2021 | | 23 | Answer to Complaint *Answer to First Amended Complaint and Affirmative Defenses* Filed by Sanford P Rosen on behalf of Arvind Walia, Niknim Management Inc. (Rosen, Sanford) (Entered: 06/09/2021) |
| 01/18/2023 | | 51 | Motion For Summary Judgment Filed by Eugene Ronald Scheiman, Sanford P Rosen on behalf of Arvind Walia. (Attachments: # 1 Exhibit A–Amended Complaint # 2 Exhibit B–Answer # 3 Exhibit C–Statement of Undisputed Facts # 4 Exhibit D–Proposed Order) (Rosen, Sanford) (Entered: 01/18/2023) |
| 01/18/2023 | | 53 | Motion For Summary Judgment *or in the Alternative, Summary Adjudication as Against Defendants Arvind Walia and Niknim Management, Inc..* Objections to be filed on February 22, 2023. Hearing on Objections, if any, will be held on: TBD. Filed by Jeffrey P Nolan on behalf of Howard M Ehrenberg. (Nolan, Jeffrey) (Entered: 01/18/2023) |
| 01/18/2023 | | 54 | Statement of Undisputed Facts */ Joint Statement of Uncontroverted Facts in Support of Plaintiff's Motion for Summary Judgment or, in the Alternative, Summary Adjudication; Plaintiff's Additional Statement of Facts* Filed by Jeffrey P Nolan on behalf of Howard M Ehrenberg (Nolan, Jeffrey) (Entered: 01/18/2023) |

| | | | |
|---|---|---|---|
| 01/18/2023 | | <u>55</u> | Affidavit in Support / *Affidavit of Jeffrey P. Nolan in Support of Motion for Summary Judgment, or in the Alternative, Summary Adjudication as Against Defendants Arvind Walia and Niknim Management, Inc.* Filed by Jeffrey P Nolan on behalf of Howard M Ehrenberg (RE: related document(s)<u>53</u> Motion for Summary Judgment filed by Plaintiff Howard M Ehrenberg) (Attachments: # <u>1</u> Exhibit 1 – Walia Deposition Excerpts # <u>2</u> Exhibit 2 – Plaintiff's First RFP # <u>3</u> Exhibit 3 – Defendant's Response to First RFP # <u>4</u> Exhibit 4 – April 15, 2016 Email # <u>5</u> Exhibit 5 – Membership Interests Purchase Agreement # <u>6</u> Exhibit Produced Docs (REDACTED) # <u>7</u> Exhibit 7 – Proposed Order) (Nolan, Jeffrey) (Entered: 01/18/2023) |
| 01/18/2023 | | <u>56</u> | Affidavit in Support / *Affidavit of Edith Wong in Support of Motion for Summary Judgment, or in the Alternative, Summary Adjudication as Against Defendants Arvind Walia and Niknim Management, Inc.* Filed by Jeffrey P Nolan on behalf of Howard M Ehrenberg (RE: related document(s)<u>53</u> Motion for Summary Judgment filed by Plaintiff Howard M Ehrenberg) (Attachments: # <u>1</u> Exhibit A – February 2016 Bank Statement # <u>2</u> Exhibit B – August 2016 Bank Statement # <u>3</u> Exhibit C – March 2017 Bank Statement # <u>4</u> Exhibit D – December 1, 2014 Email # <u>5</u> Exhibit E – February 20, 2015 Letter (REDACTED) # <u>6</u> Exhibit F – Asset Purchase Agreement # <u>7</u> Exhibit G – Disbursement Authorization and Itemization (REDACTED) # <u>8</u> Exhibit H – May 17, 2017 Email # <u>9</u> Exhibit I – May 18, 2017 Email chain # <u>10</u> Exhibit J – May 31, 2017 Email chain # <u>11</u> Exhibit K – May 31, 2017 Email # <u>12</u> Exhibit L – May 31, 2017 Email # <u>13</u> Exhibit M – June 15, 2017 Email # <u>14</u> Exhibit N – June 19, 2017 Email) (Nolan, Jeffrey) (Entered: 01/18/2023) |
| 01/18/2023 | | <u>57</u> | Affidavit in Support / *Affidavit of Frank A. Lazzara in Support of Motion for Summary Judgment, or in the Alternative, Summary Adjudication* Filed by Jeffrey P Nolan on behalf of Howard M Ehrenberg (RE: related document(s)<u>53</u> Motion for Summary Judgment filed by Plaintiff Howard M Ehrenberg) (Attachments: # <u>1</u> Exhibit 1 – September 27, 2017 Email # <u>2</u> Exhibit 2 – 2014 Consolidated Financial Statement # <u>3</u> Exhibit 3 – Disbursement Authorization and Itemization (REDACTED) # <u>4</u> Exhibit 4 – Schedule) (Nolan, Jeffrey) (Entered: 01/18/2023) |
| 01/18/2023 | | <u>58</u> | Statement / *Request for Judicial Notice in Support of Plaintiff's Motion for Summary Judgment, or in the Alternative, Summary Adjudication as Against Defendants Arvind Walia and Niknim Management, Inc.* Filed by Jeffrey P Nolan on behalf of Howard M Ehrenberg (RE: related document(s)<u>53</u> Motion for Summary Judgment filed by Plaintiff Howard M Ehrenberg) (Attachments: # <u>1</u> Exhibit 1 – Constellation Admission Application # <u>2</u> Exhibit 2 – Walia POC 10141 # <u>3</u> Exhibit 3 – State Court Summons, Complaint, Judgment) (Nolan, Jeffrey) (Entered: 01/18/2023) |
| 02/22/2023 | | <u>60</u> | Objection / *Opposition to Motion of Defendants Arvind Walia and Niknim Management Inc. for Partial Summary Judgment Dismissing Claims Asserted in the Complaint Under 11 U.S.C. §544* Filed by Jeffrey P Nolan on behalf of Howard M Ehrenberg (RE: related document(s)<u>51</u> Motion for Summary Judgment filed by Defendant Arvind Walia, <u>52</u> Motion for Summary Judgment filed by Defendant Arvind Walia) (Nolan, Jeffrey) (Entered: 02/22/2023) |
| 02/22/2023 | | <u>61</u> | Response / *Plaintiff's Response to Defendants' Separate Statement of Facts and Plaintiff's Additional Facts in Opposition to Defendants' Motion for Summary Judgment or, in the Alternative, Summary Adjudication* Filed by Jeffrey P Nolan on behalf of Howard M Ehrenberg (RE: related document(s)<u>51</u> Motion for Summary Judgment filed by |

| | | | |
|---|---|---|---|
| | | | Defendant Arvind Walia) (Nolan, Jeffrey) (Entered: 02/22/2023) |
| 02/22/2023 | | 62 | Affidavit in Support *Affidavit of Jeffrey P. Nolan in Support of Opposition to Motion of Defendants Arvind Walia and Niknim Management, Inc. for Partial Summary Judgment Dismissing Claims Asserted in the Complaint Under 11 U.S.C. §544* Filed by Jeffrey P Nolan on behalf of Howard M Ehrenberg (RE: related document(s)60 Objection filed by Plaintiff Howard M Ehrenberg) (Attachments: # 1 Exhibit 8 – McBride POC # 2 Exhibit 9 – Schedule 10 # 3 Exhibit 10_Pt 1 – BofA Credit Agreement # 4 Exhibit 10_Pt 2 – BofA Credit Agreement # 5 Exhibit 10_Pt 3 – BofA Credit Agreement # 6 Exhibit 11_Pt 1 – Third Amended Plan # 7 Exhibit 11_Pt 2 – Third Amended Plan) (Nolan, Jeffrey) (Entered: 02/22/2023) |
| 02/24/2023 | | 64 | Motion For Summary Judgment *Affidavit of Arvind Walia in Opposition to Plaintiff's Motion for Summary Judgment* Filed by Eugene Ronald Scheiman, Sanford P Rosen on behalf of Arvind Walia. (Rosen, Sanford) (Entered: 02/24/2023) |
| 02/24/2023 | | 65 | Motion For Summary Judgment *Brief of Defendants in Opposition to Motion for Summary Judgment* Filed by Eugene Ronald Scheiman, Sanford P Rosen on behalf of Arvind Walia. (Rosen, Sanford) (Entered: 02/24/2023) |
| 02/24/2023 | | 66 | Opposition Motion For Summary Judgment *Affirmation of Sanford P. Rosen in Opposition to Motion for Summary Judgment* Filed by Eugene Ronald Scheiman, Sanford P Rosen on behalf of Arvind Walia. (Rosen, Sanford) (Entered: 02/24/2023) |
| 03/02/2023 | | 67 | Affidavit in Opposition *of Arvind Walia to Plaintiff's Motion for Summary Judgment* Filed by Eugene Ronald Scheiman, Sanford P Rosen on behalf of Arvind Walia (RE: related document(s)53 Motion for Summary Judgment filed by Plaintiff Howard M Ehrenberg) (Rosen, Sanford) (Entered: 03/02/2023) |
| 03/02/2023 | | 68 | Memorandum of Law in Opposition *to Plaintiff's Motion for Summary Judgment* Filed by Eugene Ronald Scheiman, Sanford P Rosen on behalf of Arvind Walia (RE: related document(s)53 Motion for Summary Judgment filed by Plaintiff Howard M Ehrenberg) (Rosen, Sanford) (Entered: 03/02/2023) |
| 03/02/2023 | | 69 | Affidavit in Opposition *of Sanford P. Rosen in Opposition to Plaintiff's Motion for Summary Judgment* Filed by Eugene Ronald Scheiman, Sanford P Rosen on behalf of Arvind Walia (RE: related document(s)53 Motion for Summary Judgment filed by Plaintiff Howard M Ehrenberg) (Rosen, Sanford) (Entered: 03/02/2023) |
| 03/10/2023 | | 70 | Reply *of Defendants Arvind Walia and Niknim Management Inc. in Support of Motion for Partial Summary Judgment Dismissing Certain Claims Asserted in the Complaint* Filed by Sanford P Rosen on behalf of Arvind Walia (RE: related document(s)52 Motion for Summary Judgment filed by Defendant Arvind Walia) (Rosen, Sanford) (Entered: 03/10/2023) |
| 03/10/2023 | | 71 | Objection *and Request to Strike the Affidavit of Arvind Walia Submitted in Opposition to Plaintiff's Motion for Summary Judgment, or in the Alternative, Summary Adjudication* Filed by Jeffrey P Nolan on behalf of Howard M Ehrenberg (RE: related document(s)64 Motion for Summary Judgment filed by Defendant Arvind Walia) (Nolan, Jeffrey) (Entered: |

| | | | |
|---|---|---|---|
| | | | 03/10/2023) |
| 03/10/2023 | | 72 | Reply *Brief in Support of Motion for Summary Judgment, or in the Alternative, Summary Adjudication as Against Defendants Arvind Walia and Niknim Management, Inc.* Filed by Jeffrey P Nolan on behalf of Howard M Ehrenberg (RE: related document(s)53 Motion for Summary Judgment filed by Plaintiff Howard M Ehrenberg, 64 Motion for Summary Judgment filed by Defendant Arvind Walia, 65 Motion for Summary Judgment filed by Defendant Arvind Walia, 68 Memorandum of Law in Opposition filed by Defendant Arvind Walia, 71 Objection filed by Plaintiff Howard M Ehrenberg) (Nolan, Jeffrey) (Entered: 03/10/2023) |
| 03/10/2023 | | 73 | Affidavit in Support */ Affidavit of Jeffrey P. Nolan in Support of Plaintiffs Motion for Summary Judgment, or in the Alternative, Summary Adjudication* Filed by Jeffrey P Nolan on behalf of Howard M Ehrenberg (RE: related document(s)53 Motion for Summary Judgment filed by Plaintiff Howard M Ehrenberg) (Attachments: # 1 Exhibit 12 – Form 1120_Instructions # 2 Exhibit 13 – Walia Deposition Excerpts) (Nolan, Jeffrey) (Entered: 03/10/2023) |
| 01/05/2024 | | 84 | Response *Defendants' Corrected Affidavit in Opposition to Plaintiff's Motion for Summary Judgment* Filed by Sanford P Rosen on behalf of Arvind Walia (RE: related document(s)53 Motion for Summary Judgment filed by Plaintiff Howard M Ehrenberg) (Rosen, Sanford) (Entered: 01/05/2024) |
| 01/05/2024 | | 85 | Affirmation in Opposition *of Sanford P. Rosen in Opposition to Plaintiff's Motion for Summary Judgment* Filed by Sanford P Rosen on behalf of Arvind Walia (Rosen, Sanford) (Entered: 01/05/2024) |
| 04/22/2024 | | 97 | Ordered Ordered The portion the Motion to avoid the First Transfer made on April 15, 2016 in the amount of $2,500,000 is DENIED with respect to Plaintiffs First Cause of Action to Avoid an Intentionally Fraudulent Transfer, and Second Cause of Action to Avoid a Constructively Fraudulent Transfer as a factual issue remains to be determined at trial. The portion of the Motion to avoid the Second Transfer made on June 23, 2017, in the amount of $1,520,000 is GRANTED. As to Defendant Arvind Walia, the Motion is DENIED as to the Second Transfer, as a factual issue remains to be determined at trial. Plaintiff has failed to establish that, as a matter of law, Judgment awarded in favor of Plaintiff should be rendered against Defendants jointly and severally on the theory of alter ego liability. In that regard, that portion of the Motion is DENIED. The Cross–Motion is DENIED. (RE: related document(s)51 Motion for Summary Judgment filed by Defendant Arvind Walia, 53 Motion for Summary Judgment filed by Plaintiff Howard M Ehrenberg, 61 Response filed by Plaintiff Howard M Ehrenberg, 62 Affidavit in Support filed by Plaintiff Howard M Ehrenberg, 70 Reply filed by Defendant Arvind Walia). Signed on 4/22/2024 (ylr) (Entered: 04/23/2024) |
| 05/02/2024 | | 99 | Notice of Appeal to District Court. *of ORDER GRANTING AND DENYING IN PART PLAINTIFFS MOTION FOR SUMMARY JUDGMENT/SUMMARY ADJUDICATION AND DENYING DEFENDANTS ARVIND WALIA AND NIKNIM MANAGEMENT, INC. CROSSMOTION FOR SUMMARY JUDGMENT; RULING ON EVIDENTIARY OBJECTIONS; AND ESTABLISHING FACTS AS ADMITTED IN THE CASE PURSUANT TO FRCP 56(g) [Docket No. 97]..* Fee Amount $298 Filed by Eugene Ronald Scheiman, Sanford P Rosen on behalf of Niknim Management Inc. (RE: related document(s)97 |

| | | | |
|---|---|---|---|
| | | | Generic Order). Appellant Designation due by 05/16/2024. Transmission of Designation to District Court Due by 06/3/2024. (Rosen, Sanford) (Entered: 05/02/2024) |
| 05/02/2024 | | 100 | Amended Notice of Appeal to District Court: Attachment of order appealed from Filed by Eugene Ronald Scheiman, Sanford P Rosen on behalf of Niknim Management Inc. (RE: related document(s)99 Notice of Appeal filed by Defendant Niknim Management Inc.). (Attachments: # 1 ORDER GRANTING AND DENYING IN PART PLAINTIFFS MOTION FOR SUMMARY JUDGMENT/SUMMARY ADJUDICATION AND DENYING DEFENDANTS ARVIND WALIA AND NIKNIM MANAGEMENT, INC. CROSSMOTION FOR SUMMARY JUDGMENT; RULING ON EVIDENTIARY OBJECTIONS; AND ESTABLISHING FACTS AD)(Rosen, Sanford) (Entered: 05/02/2024) |
| 05/03/2024 | | 105 | Civil Cover Sheet Filed by Eugene Ronald Scheiman, Sanford P Rosen on behalf of Niknim Management Inc. (RE: related document(s)99 Notice of Appeal filed by Defendant Niknim Management Inc.). (Rosen, Sanford) (Entered: 05/03/2024) |
| 05/03/2024 | | 106 | Notice of Appeal to District Court. *Second Amended*. Fee Amount $298 Filed by Eugene Ronald Scheiman, Sanford P Rosen on behalf of Niknim Management Inc. (RE: related document(s)97 Generic Order). (Attachments: # 1 ORDER GRANTING AND DENYING IN PART PLAINTIFFS MOTION FOR SUMMARY JUDGMENT/SUMMARY ADJUDICATION AND DENYING DEFENDANTS ARVIND WALIA AND NIKNIM MANAGEMENT, INC. CROSSMOTION FOR SUMMARY JUDGMENT; RULING ON EVIDENTIARY OBJECTIONS; AND ESTABLISHING FACTS AD)(Rosen, Sanford) Modified on 5/6/2024 (one). (Entered: 05/03/2024) |
| 05/16/2024 | | 114 | Appellant Designation of Contents For Inclusion in Record On Appeal & Statement of Issues Filed by Eugene Ronald Scheiman, Sanford P Rosen on behalf of Niknim Management Inc. (RE: related document(s)99 Notice of Appeal filed by Defendant Niknim Management Inc., 100 Amended Notice of Appeal filed by Defendant Niknim Management Inc., 105 Civil Cover Sheet filed by Defendant Niknim Management Inc., 106 Notice of Appeal filed by Defendant Niknim Management Inc.). Appellee designation due by 05/30/2024. (Rosen, Sanford) (Entered: 05/16/2024) |

Ilan D. Scharf
Jeffrey P. Nolan (Pro Hac Vice Pending)
PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 34th Floor
New York, New York 10017-2024
Telephone:   (212) 561-7700
Facsimile:    (212) 561-7777
ischarf@pszjlaw.com
jnolan@pszjlaw.com

*Counsel for the Plaintiff,*
*Howard M. Ehrenberg in his capacity*
*as Liquidating Trustee of Orion Healthcorp, Inc., et al.,*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| ORION HEALTHCORP, INC.[1] | : | Case No. 18-71748 (AST) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

------------------------------------------------

| | | |
|---|---|---|
| HOWARD M. EHRENBERG IN HIS CAPACITY AS LIQUIDATING TRUSTEE OF ORION HEALTHCORP, INC., ET AL., | : | Adv. Pro. No. 20-08049 (AST) |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| ARVIND WALIA; NIKNIM MANAGEMENT INC., | : | |
| | : | |
| Defendants. | : | |

------------------------------------------------

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Orion Healthcorp, Inc. (7246); Constellation Healthcare Technologies, Inc. (0135); NEMS Acquisition, LLC (7378); Northeast Medical Solutions, LLC (2703); NEMS West Virginia, LLC (unknown); Physicians Practice Plus Holdings, LLC (6100); Physicians Practice Plus, LLC (4122); Medical Billing Services, Inc. (2971); Rand Medical Billing, Inc. (7887); RMI Physician Services Corporation (7239); Western Skies Practice Management, Inc. (1904); Integrated Physician Solutions, Inc. (0543); NYNM Acquisition, LLC (unknown) Northstar FHA, LLC (unknown); Northstar First Health, LLC (unknown); Vachette Business Services, Ltd. (4672); Phoenix Health, LLC (0856); MDRX Medical Billing, LLC (5410); VEGA Medical Professionals, LLC (1055); Allegiance Consulting Associates, LLC (7291); Allegiance Billing & Consulting, LLC (7141); New York Network Management, LLC (7168). The corporate headquarters and the mailing address for the Debtors listed above is 1715 Route 35 North, Suite 303, Middletown, NJ 07748.

DOCS_LA:328296.4 65004/003

**FIRST AMENDED COMPLAINT FOR AVOIDANCE AND RECOVERY**
**OF: (1) FRAUDULENT TRANSFERS; (2) PREFERENTIAL TRANSFERS;**
**(3) RECOVERY OF AVOIDED TRANSFERS; (4) OBJECTION TO CLAIM NO. 10067;**
**PURSUANT TO 11 U.S.C. §§ 502, 544, 547, 548 AND 550**

Plaintiff, Howard M. Ehrenberg in his capacity as Liquidating Trustee of Orion

Healthcorp, Inc., et al., (the "Plaintiff" or the Liquidating Trustee"), for the estates of the

above-captioned debtors (the "Debtors") in the above-captioned cases pending under chapter 11

of title 11 of the United States Code (the "Bankruptcy Code"), by and through its undersigned

counsel, as and for its *First Amended Complaint For Avoidance And Recovery Of: (1)*

*Fraudulent Transfers;(2) Preferential Transfers; (3) Recovery Of Avoided Transfers; And (4)*

*Objection To Claim No. 1067 Pursuant to 11 U.S.C. §§ 502, 544, 547 548 and 550* (the

"Complaint") against the above-captioned defendants (collectively, the "Defendant"), alleges as

follows:

**THE PARTIES**

1.      Plaintiff is the Liquidating Trustee under that certain Liquidating Trust

Agreement by and among Orion HealthCorp, Inc., Constellation Healthcare Technologies, Inc.

and certain of their affiliates.

2.      Upon information and belief, Defendant Arvind Walia ("Walia") is an

individual currently residing in the State of New York.  Defendant Walia is the former President,

and Chief Executive Officer, of the Debtor Orion Healthcorp, Inc.

3.       Upon information and belief, Defendant Niknim Management Inc. is

("Niknim") is a corporation formed under the laws of the State of New York with its principle

address at 27 Kettlepond Road, Jericho, New York.

4.      Plaintiff is informed and believes and thereon alleges that at all times

mentioned herein there existed a unity of interest in ownership between Defendant, Walia and

Defendant, Niknim such that the individuality and separateness between them ceased and that

Defendant, Niknim is the alter ego of Defendant, Walia in that, among other things: (a) Defendant Walia controlled, dominated, managed and operated Defendant Niknim as his alter ego; (b) Defendant Walia makes all decisions pertaining to Defendant Niknim; (c) there has been a failure to comply with or observe the formalities of corporate formation and/or operation; (d) Defendant Niknim was inadequately capitalized; and (e) that the individuality of said entity should be disregarded pursuant to the doctrine of piercing the corporate veil.

## **STANDING**

5.      On March 16, 2018, each of the Debtors except New York Network Management, LLC ("NYNM") filed a voluntary petition with the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court")under chapter 11 of the Bankruptcy Code and  NYNM commenced its voluntary petition on July 5, 2018 (collectively, the "Debtors").  The Debtors' cases are jointly administered for administrative purposes only [Docket Nos. 34 and 381].

6.      On February 26, 2019, the Honorable Alan S. Trust, United States Bankruptcy Judge for the Eastern District of New York, entered an order (the "Confirmation Order") [Docket No. 701] confirming the Debtors' Third Amended Joint Plan Of Liquidation (the "Plan").

7.      The Plan provides, among other things, for the formation of the Liquidating Trust and the appointment of the Liquidating Trustee on the Effective Date (as that term is defined in the Plan) to oversee distributions to holders of Allowed Claims and Allowed Interests and to pursue retained Causes of Action of the Debtors' Estates.  The Effective Date occurred on March 1, 2019.

8.      The Plan provides that the Liquidating Trustee shall have the authority and responsibility to, among other things, receive, manage, invest, supervise, and protect the Liquidating Trust Assets, including causes of action.

## JURISDICTION AND VENUE

9.      The Bankruptcy Court has jurisdiction over this adversary proceeding under the Bankruptcy Code pursuant to 28 U.S.C. §§ 157(a) and 1334(a).

10.      This proceeding is a core proceeding within the meaning of 28 U.S.C. § 157(b) and the Bankruptcy Court may enter final orders for the matters contained herein.

11.      Pursuant to Local Bankruptcy Rule 7008-1, the Plaintiff affirms his consent to the entry of final orders or judgments by the Bankruptcy Court if it is determined that the Bankruptcy Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

12.      Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409(a).

## BASIS FOR RELIEF REQUESTED

13.      This adversary proceeding is initiated pursuant to Rules 7001(1), (2) and (9) and 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") to avoid and recover, pursuant to sections 502, 544, 547, 548 and 550 of the Bankruptcy Code and sections 273, 274, 275 and 276 of the New York Debtor & Creditor Law (the "NY Debt & Cred L"), made applicable herein pursuant to section 544 of the Bankruptcy Code, certain avoidable transfers that were made by the Debtors to the Defendant prior to the Petition Date.

## FACTS

14.      The Debtors are a consolidated enterprise of several companies aggregated through a series of acquisitions, which operate the following businesses: (a) outsourced revenue cycle management for physician practices, (b) physician practice management, (c) group purchasing services for physician practices, and (d) an independent practice association business, which is organized and directed by physicians in private practice to negotiate contracts with

insurance companies on their behalf while such physicians remain independent and which also provides other services to such physician practices.

15.    Parmjit Parmar a/k/a Paul Parmar ("Parmar"), was the former Chief Executive Officer of the Debtor, Constellation Healthcare Technologies, Inc. ("CHT"), Sotirios Zaharis, a/k/a Sam Zaharis ("Zaharis"), was the former Chief Financial Officer of CHT, and Ravi Chivukula ("Chivukula") was the Controller and Secretary of CHT from approximately 2013 to 2017.  Parmar, Zaharis and Chivukula served on the board of directors of CHT.  Parmar, Zaharis and Chivukula, in combination with one another and with others, operating through various Debtors, moved money and established off-balance sheet accounts to redirect monies of the Debtors for their own personal use.  The Debtor, and the aforementioned associates, utilized a Wells Fargo IOLA account overseen by the law firm of Robinson, Brog, Leinwand, Greene, Genovese & Gluck, P.C. ("Robinson Brog").  Upon information and belief, Robinson Brog also represented Parmar, Zaharis and Chivukula personally in their business, litigation and private affairs.

16.    On or about 2018, Parmar, Zaharis and Chivukula were indicted by the United States Attorney's Office, District of New Jersey, for creating fictitious business entities, balance sheets, doctored bank statements, fabricating customers as well as generating fake income streams, and sham acquisitions in an effort to divert monies from the Debtors.  As alleged, Parmar, Zaharis and Chivukula diverted funds to enrich themselves, their friends, family and associates.

17.    In or about 2015 and earlier, Defendant Walia was the majority owner, managing member, and Chief Executive Officer of Portech Corporation, prior to its acquisition by the Debtors.

18.    On or about March 2015, the Debtor, Physicians Practice Plus, LLC, as represented by Robinson Brog, acquired Portech Corporation from Defendant Walia.  Pursuant

5

to the asset purchase agreement made and entered into as of March, 2015 ("Asset Purchase Agreement"), the sum of $12,800,000 was paid, including the right to subsequent payments and earn-outs over the course of the following years (the "Portech Acquisition").

19.     The Portech Acquisition was orchestrated through the network of entities arranged by Parmar such that funds could be diverted into off-balance sheet accounts.  The off-balance sheet accounts allowed funds to be transferred (a) to entities controlled by Parmar and his confederates, or (b) to commingle funds such that monies could be disbursed in a manner which best allowed Parmar to obfuscate his dealings and continue to maintain an illusion that the Debtors were solvent.

20.     On or about May 1, 2017, the Debtor Orion Healthcorp, Inc. and Defendant Walia, entered into an employment agreement wherein Defendant Walia would act as the President and CEO of the Debtor, Orion Healthcorp, Inc.  Walia would be paid an annual salary of $100,000 as paid in accordance with the Debtor's regular payroll practices.

21.     On or about May 1, 2017, the Debtor Orion Healthcorp, Inc. and Defendant Niknim Management, Inc., as represented by Defendant Walia, as the sole managing member, entered into a consulting agreement wherein Niknim would be paid a monthly fee by the Debtors for the prior month's work as a consultant.

**(A)**     **The Transfers:**

22.     During the one (1) year period prior to the commencement of the bankruptcy cases, the Debtors transferred property to or for the benefit of Defendants in an amount not less than $1,520,000.00, as identified in particular on Exhibit "A" which is incorporated herein by reference (the "One-Year Transfer").  Defendant Walia was an officer of the Debtors at all pertinent times therein.  During the two (2) year period prior to the commencement of the bankruptcy cases, the Debtors transferred property to or for the benefit of Defendants in an amount not less than $2,500,000.00, as identified in particular on Exhibit "A"

which is incorporated herein by reference (the "Two-Year Transfer")(collectively, the One-Year and Two-Year Transfer are referenced as "the Transfers").

**(B)** **Amounts Allegedly Owed To Defendant And Defendant's Proofs Of Claim:**

23.    On or about July 5, 2018, Defendant Walia filed a claim in the amount of $61,590.00, which the claims agent designated as claim no. 10067 (the "Filed Claim"), as attached hereto as Exhibit "B".

24.    Defendant Walia alleges in the Filed Claim that the Debtors failed to indemnify Walia for employee-related services.

**FIRST CLAIM FOR RELIEF**
**(For Avoidance and Recovery of Intentionally Fraudulent Transfers Under**
**11 U.S.C. § 548; NY Debt & Cred L § 276, *et al*., Against Defendants)**

25.    Plaintiff repeats and realleges the allegations contained in each preceding paragraph of the Complaint as though set forth fully herein.

26.    The Defendant received the Transfers from the Debtors which were through various concealed means including the off-balance sheet bank accounts as identified in particular on Exhibit "A".

27.    The Transfers were made by the Debtors with actual intent to hinder or delay or defraud their creditors insofar as the Transfers were orchestrated through a scheme to divert and redirect monies of the Debtors for the personal benefit of Parmar, his friends and associates, or in a manner to obfuscate the misuse of the Debtor.

28.    The Transfers were made to or for the benefit of Defendants.

29.    Accordingly, the Transfers are avoidable, and should be avoided, as intentionally fraudulent transfers pursuant to § 548(a)(1)(A) and NY Debt & Cred L § 276, and may be recovered from Defendant pursuant to § 548 and the NY Debt & Cred L.  Plaintiff is entitled to an order and judgment under 11 U.S.C. § 544 that the Transfers be avoided.

**SECOND CLAIM FOR RELIEF**
**(To Avoid Constructively Fraudulent Transfers Under**
**11 U.S.C. §§ 544(b) and 548(a)(1)(B) and NY Debt & Cred L**
**§§ 273-275, *et seq*., Against Defendants)**

30.     Plaintiff realleges and incorporates by reference each and every allegation in the above paragraphs, as though fully set forth herein.

31.     Plaintiff is informed and believes, and thereon asserts that at all relevant times, the Debtors:  (a) were insolvent, or became insolvent as a result of the Transfers; (b) were engaged in or was about to engage in a business or a transaction for which their remaining assets were unreasonably small in relation to the business or transaction; or (c) intended to incur, or believed or reasonably should have believed that they would incur, debts beyond their ability to pay as they became due; or (d) made such Transfers to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

32.     Plaintiff is informed and believes, and thereon asserts, that Defendant did not give the Debtors, and the Debtors did not otherwise receive, reasonably equivalent value for obligations incurred for the Transfers. As a result, the Debtors paid and received in value nothing from Defendant and or less than reasonably equivalent value.

33.     At all relevant times, the Transfers were avoidable pursuant to 11 U.S.C. § 548(a)(1)(B) and NY Debt & Cred L.  Plaintiff is entitled to an order and judgment that the Transfers are avoided.

**THIRD CLAIM FOR RELIEF**
**(Avoidance of Preferential Transfers Pursuant To 11 U.S.C. § 547(b)**
**Against Defendants)**

34.     Plaintiff realleges and incorporates by reference each and every allegation in the above paragraphs, as though fully set forth herein.

35.     During one-year prior to the petition, Defendant was a creditor and an insider of one or more of the Debtors.

DOCS_LA:328296.4 65004/003                                8

36.     The One-Year Transfer identified on Exhibit "A" hereto was made to or for the benefit of Defendant.

37.     The Transfer was made for or on account of an antecedent debt or debts owed by one or more of the Debtors before such Preferential Transfers were made.

38.     The Transfer was made during the One-Year Period in which Defendant Walia was an insider of the Debtor.

39.     The Transfer was made while the Debtors were insolvent.

40.     The Transfer enabled Defendant to receive more than Defendant would have received if (i) the Debtors' chapter 11 cases were instead cases under chapter 7 of the Bankruptcy Code; (ii) the transfers and/or payments had not been made; and (iii) Defendant received payment on account of the debt paid by the Preferential Transfers to the extent provided by the Bankruptcy Code.

41.     The Transfer constitutes an avoidable preference pursuant to Bankruptcy Code section 547(b).

## FOURTH CLAIM FOR RELIEF
### (For Recovery of Property -- 11 U.S.C. § 544(b), §550 and NY Debt & Cred L against Defendants)

42.     Plaintiff repeats and realleges the allegations contained in each preceding paragraph of the Complaint as though set forth fully herein.

43.     As the Defendants are the initial, immediate or mediate transferees of the Transfer, Plaintiff may recover for the benefit of the estate the property transferred or the value of such property from (a) the initial transferee of such transfer or the entity for whose benefit such transfer was made or (b) any immediate or mediate transferee of such initial transferee pursuant to pursuant to 11 U.S.C. § 550(a)

44.     As alleged above, Plaintiff is entitled to avoid the Transfers under 11 U.S.C. §§ 542, 547 and 548.  As Defendants are the initial, immediate or mediate transferee

of the Transfers, Plaintiff is entitled to receive for the Estate the proceeds or value of the Transfers under 11 U.S.C. § 550 of the Bankruptcy Code and NY Debt & Cred L.

**FIFTH CLAIM FOR RELIEF**
**(Objection to Claims against Defendant Walia)**

45.     Plaintiff repeats and realleges the allegations contained in each preceding paragraph of the Complaint as though set forth fully herein.

46.     After a thorough review of the Debtors' Books and Records and Claim No. 10067, the Plaintiff has determined that Claim No. 10067 does not comply with the Bankruptcy Rules, is without evidentiary support, and is contradicted by the Debtors' books and records.

47.     As alleged above, each Preferential or Fraudulent Transfer constitutes an avoidable transfer pursuant to 11 U.S.C. § 547 and/or 548 of the Bankruptcy Code, which is recoverable pursuant to Bankruptcy Code section 550.

48.     As a result of the above, Plaintiff moves to strike the Claim or alternatively,  pursuant to Bankruptcy Code section 502(d), Claim No. 10067 must be disallowed unless and until Defendant pays to the Plaintiff an amount equal to each preferential or fraudulent Transfer that is avoided including pre- and post-judgment interest on the avoided amount.

49.     As a result of the above, Plaintiff moves to strike the Claim.

**WHEREFORE**, Plaintiff prays for judgment as follows:

a.     For a determination that the Transfers are an avoidable fraudulent transfer under 11 U.S.C. §§ 544, and 548, of the Bankruptcy Code and Section 273-276 of NY Debt & Cred L, *et seq*, as applicable, and that the Plaintiff is entitled to recover the Transfers under 11 U.S.C. § 550 of the Bankruptcy Code;

b.    For a determination that the One-Year Transfers are avoidable transfers under 11 U.S.C. §§ 544 and 547, as applicable, and that the Plaintiff is entitled to recover the One-Year Transfers under 11 U.S.C. §§ 550 & 551 of the Bankruptcy Code;

c.    On its Claim for Objection to the Filed Claim, that the Defendant recover nothing by way of the Filed Claim;

d.    Awarding to the Plaintiff the costs of suit incurred herein, including pre- and post-judgment interest; and

e.    For such other and further relief as the Court may deem just and proper.

Dated:  New York, New York
      May 26, 2021

                                       */s/ Jeffrey P. Nolan* _____
                                       Ilan D. Scharf, Esquire
                                       Jeffrey P. Nolan, Esquire
                                       PACHULSKI STANG ZIEHL & JONES LLP
                                       780 Third Avenue, 36th Floor
                                       New York, New York 10017
                                       Telephone:    (212) 561-7700
                                       Facsimile:    (212) 561-7777

                                       Counsel for the Plaintiff,
                                       Howard M. Ehrenberg in his capacity
                                       as Liquidating Trustee of Orion Healthcorp, Inc.,
                                       et al.,

# EXHIBIT A

| Niknim Management, Inc.; Walia | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Posted Dt.** | **Doc Dt.** | **Name** | **Location** | **Segment** | **Curr** | **Txn Amt** | **Credit (USD)** |
| 4/15/2016 | 4/15/2016 | Constellation Healthcare | M&T | Corp | USD | $ 2,500,000.00 | $ 2,500,000.00 |
| 6/23/2017 | 6/23/2017 | Constellation Healthcare | IOLA | Corp | USD | $ 1,500,000.00 | $ 1,500,000.00 |
| 6/28/2017 | 6/28/2017 | Constellation Healthcare | IOLA | Corp | USD | $ 20,000.00 | $ 20,000.00 |
| | | | | | | Total | $ 4,020,000.00 |

Doc No. 336243

Case 8-20-08049-ast    Doc 22-1    Filed 05/28/24    Entered 05/28/24 16:11:59
Case 2:24-cv-03330-GRB    Document 4    Filed 06/03/24    Page 20 of 152 PageID #: 226

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NO.<br>20-08049 (AST) |
|---|---|

| PLAINTIFF(S)<br><br>HOWARD M. EHRENBERG IN HIS CAPACITY AS LIQUIDATING TRUSTEE OF ORION HEALTHCORP, INC., ET AL., | DEFENDANT(S)<br><br>ARVIND WALIA; NIKNIM MANAGEMENT INC., |
|---|---|
| ATTORNEY(S) (Firm Name, Address, Telephone No.)<br>Ilan D. Scharf, Esq.<br>Jeffrey P. Nolan, Esq. (*admitted pro hac vice*)<br>Pachulski Stang Ziehl & Jones LLP<br>780 Third Avenue, 34th Floor<br>New York, NY 10017<br>Telephone: (212) 561-7700 | ATTORNEY(S) (If Known) |

| PARTY (Check One Box Only)<br>☐ Debtor    ☐ U.S. Trustee<br>☐ Creditor    ☒ Trustee    ☐ Other | PARTY (Check One Box Only)<br>☐ Debtor    ☐ U.S. Trustee<br>☐ Creditor    ☐ Trustee    ☒ Other |
|---|---|

**CAUSE OF ACTION** (Write a brief statement of cause of action, including all U.S. statutes involved.)

Avoidance And Recovery of: (1) Fraudulent Transfers; (2) Preferential Transfers; (3) Recovery Of Avoided Transfers; (4) Objection To Claim No.10067; Pursuant To 11 U.S.C. §§ 502, 544, 547, 548 And 550

## NATURE OF SUIT
(Number up to 5 boxes with the lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) - Recovery of Money/Property**
☐ 11 - Recovery of money/property - § 542 turnover of property
☒ 12 - Recovery of money/property - § 547 preference
☒ 13 - Recovery of money/property § 548 fraudulent transfer
☒ 14 - Recovery of money/property - other

**FRBP 7001(2) - Validity, Priority or Extent of Lien**
☐ 21 - Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) - Approval of Sale of Property**
☐ 31 - Approval of sale of property of estate and of a co-owner - § 363(h)

**FRBP 7001(4) - Objection/Revocation of Discharge**
☐ 41 - Objection/revocation of discharge - § 727(c), (d), (e)

**FRBP 7001(5) - Revocation of Confirmation**
☐ 51 - Revocation of confirmation

**FRBP 7001(6) - Dischargeability**
☐ 66 - Dischargeability - § 523(a)(1), (14), (14A) priority tax claims
☐ 62 - Dischargeability - § 523(a)(2), false pretenses, false representation, actual fraud
☐ 67 - Dischargeability - § 523(a)(4), fraud as fiduciary, embezzlement, larceny
**(continued next column)**

**FRBP 7001(6) - Dischargeability (continued)**
☐ 61 - Dischargeability - § 523(a)(5), domestic support
☐ 68 - Dischargeability - § 523(a)(6), willful and malicious injury
☐ 63 - Dischargeability - § 523(a)(8), student loan
☐ 64 - Dischargeability-§ 523 (a)(15), divorce or separation obligation (other than domestic support)
☐ 65 - Dischargeability - other

**FRBP 7001(7) - Injunctive Relief**
☐ 71 - Injunctive relief - imposition of stay
☐ 72 - Injunctive relief - other

**FRBP 7001(8) - Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) - Declaratory Judgment**
☐ 91 - Declaratory judgment

**FRBP 7001(10) - Determination of Removed Action**
☐ 01 - Determination of removed claim or cause

**Other**
☐ SS-SIPA Case - 15 U.S.C. §§ 78aaa et seq.
☐ 02 - Other (e.g.,other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand: $4,020,000.00 |

Other Relief Sought:



American LegalNet, Inc.
www.FormsWorkFlow.com

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>ORION HEALTHCORP, INC, et al. | BANKRUPTCY CASE NO.<br>18-71748 (AST) | |
| DISTRICT IN WHICH CASE IS PENDING<br>EASTERN DISTRICT OF NEW YORK | DIVISION OFFICE<br>Central Islip | NAME OF JUDGE<br>Alan S. Trust |

| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
|---|---|---|
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY PROCEEDING IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br><br>/s/ Jeffrey P. Nolan | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>JEFFREY P. NOLAN | |
| DATE<br>May 28, 2021 | | |

### INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also complete and file Form 104, the Adversary Proceeding Cover Sheet. When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self - explanatory, must be completed by the plaintiff's attorney (or by the plaintiff, if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs and Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

American LegalNet, Inc.
www.FormsWorkFlow.com

**ROSEN & ASSOCIATES, P.C.**
*Counsel to Arvind Walia and*
  *Niknim Management Inc.*
747 Third Avenue
New York, NY 10017-2803
(212) 223-1100
Sanford P. Rosen
Paris Gyparakis

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>ORION HEALTHCORP, INC. *et al.*,<br><br>       Debtors. | Chapter 11<br><br>Case No. 18-71748 (AST) |
| HOWARD M. EHRENBERG, IN HIS CAPACITY AS LIQUIDATING TRUSTEE OF ORION HEALTHCORP, INC., ET AL.,<br><br>       Plaintiff,<br>v.<br><br>ARVIND WALIA; NIKNIM MANAGEMENT INC.,<br><br>       Defendants. | Adv. Proc. No. 20-08049 (AST) |

## ANSWER TO FIRST AMENDED COMPLAINT AND AFFIRMATIVE DEFENSES

     Defendants Arvind Walia ("**Mr. Walia**") and Niknim Management Inc. (collectively, "**Defendants**"), through their counsel, Rosen & Associates, P.C., as and for their answer (the "**Answer**") to the *First Amended Complaint for Avoidance and Recovery of: (1) Fraudulent Transfers; (2) Preferential Transfers; (3) Recovery of Avoided Transfers; (4) Objection to Claim No. 10067; Pursuant to 11 U.S.C. §§ 502, 544, 547, 548 and 550* dated May 26, 2020 [Adv. Proc. Doc. No. 22] (the "**Amended Complaint**"),[1] filed by Howard M. Ehrenberg,

---
[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Amended Complaint.

in his capacity as liquidating trustee of the estates of Orion HealthCorp, Inc., *et al.* ("**Plaintiff**"), respectfully represent as follows:

## AS TO THE PARTIES

1.      Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegation contained in paragraph "1" of the Amended Complaint.

2.      Defendants admit that Mr. Walia is an individual resident of the state of New York and deny the remaining allegation in paragraph "2" of the Amended Complaint.

3.      Defendants admit the allegations contained in paragraph "3" of the Amended Complaint.

4.      Defendants deny the allegations contained in paragraph "4" of the Amended Complaint.

## AS TO STANDING

5.      To the extent the allegations in paragraphs "5" through "8" purport to cite or summarize publicly filed documents, Defendants respectfully refer the Court to the actual cited documents for a complete and accurate statement of their contents. Otherwise, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraphs "5" through "8" of the Amended Complaint.

## AS TO JURISDICTION AND VENUE

6.      Defendants neither admit nor deny the allegations contained in paragraphs "9" through "12" of the Amended Complaint, as such allegations are legal conclusions to which no response is required; however, Defendants do not consent to the entry of final orders or judgments by this Court.

2

## AS TO BASIS FOR RELIEF REQUESTED

7.       Defendants admit that Plaintiff purports to have brought this action pursuant to the authority cited in paragraph "13" of the Amended Complaint. To the extent the allegations in paragraph "13" state legal conclusions, no responsive pleading is required. Otherwise, except as expressly admitted herein, Defendants deny the allegations contained in paragraph "13" of the Amended Complaint.

8.       Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "14" of the Amended Complaint.

9.       Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraphs "15" and "16" of the Amended Complaint.

10.      Defendants admit that, in or about 2015 or earlier, Mr. Walia was the majority shareholder and Chief Executive Officer of Porteck Corporation prior to its acquisition by Physicians Practice Plus, LLC. To the extent the term "Portech Corporation," as used in paragraph "17" of the Amended Complaint, was intended to refer to any entity other than Porteck Corporation, Defendants deny the allegations contained in paragraph "17" of the Amended Complaint.

11.      Defendants admit that, on or around March 2015, Porteck Corporation was acquired by Physicians Practice Plus, LLC. To the extent the term "Portech Corporation," as used in paragraph "18" of the Amended Complaint, was intended to refer to any entity other than Porteck Corporation, Defendants deny the allegations contained in paragraph "18" of the Amended Complaint and, except as expressly admitted herein, deny the remaining allegations contained in paragraph "18" of the Amended Complaint.

3

12.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "19" of the Amended Complaint.

13.     Defendants admit the allegations contained in paragraphs "20" and "21" of the Amended Complaint.

14.     Defendants admit the allegations contained in paragraph "22" of the Amended Complaint.

15.     Defendants admit the allegation in paragraph "23" that Mr. Walia filed a claim against the Debtors' estates.

16.     To the extent the allegations in paragraph "24" purport to cite or summarize publicly filed documents, Defendants respectfully refer the Court to the actual cited documents for a complete and accurate statement of their contents. Otherwise, Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph "24" of the Amended Complaint.

## AS TO FIRST CLAIM FOR RELIEF

17.     Defendants repeat, re-allege and incorporate by reference their responses to paragraphs "1" through "24" of the Amended Complaint as if fully set forth herein.

18.     Defendants deny the allegations contained in paragraphs "26" through "29" of the Amended Complaint.

## AS TO SECOND CLAIM FOR RELIEF

19.     Defendants repeat, re-allege and incorporate by reference their responses to paragraphs "1" through "29" of the Amended Complaint as if fully set forth herein.

20.     Defendants deny the allegations contained in paragraphs "31" through "33" of the Amended Complaint.

4

### AS TO THIRD CLAIM FOR RELIEF

21.     Defendants repeat, re-allege and incorporate by reference their responses to paragraphs "1" through "33" of the Amended Complaint as if fully set forth herein.

22.     Defendants deny the allegations contained in paragraphs "35" through "41" of the Amended Complaint.

### AS TO FOURTH CLAIM FOR RELIEF

23.     Defendants repeat, re-allege and incorporate by reference their responses to paragraphs "1" through "41" of the Amended Complaint as if fully set forth herein.

24.     Defendants deny the allegations contained in paragraphs "43" and "44" of the Amended Complaint.

### AS TO FIFTH CLAIM FOR RELIEF

25.     Defendants repeat, re-allege and incorporate by reference their responses to paragraphs "1" through "44" of the Amended Complaint as if fully set forth herein.

26.     Defendants deny the allegations contained in paragraphs "45" through "49" of the Amended Complaint.

### AS AND FOR DEFENDANTS' FIRST AFFIRMATIVE DEFENSE

27.     Plaintiff's claims and each purported cause of action contained in the Amended Complaint fail to state a claim upon which relief may be granted.

### AS AND FOR DEFENDANTS' SECOND AFFIRMATIVE DEFENSE

28.     The Amended Complaint should be dismissed on the basis that the transfers referenced in *Exhibit A* of the Amended Complaint are excepted from recovery under 11 U.S.C. § 547(c)(2).

5

## AS AND FOR DEFENDANTS' THIRD AFFIRMATIVE DEFENSE

29.     The Amended Complaint should be dismissed on the basis that the transfers referenced in *Exhibit A* of the Amended Complaint are excepted from recovery under 11 U.S.C. § 547(c)(4).

## AS AND FOR DEFENDANTS' FOURTH AFFIRMATIVE DEFENSE

30.     The Amended Complaint should be dismissed on the basis that the Debtors received reasonably equivalent value and fair consideration in exchange for the transfers referenced in *Exhibit A* of the Amended Complaint, such that they are not voidable under 11 U.S.C. § 548(a)(1)(B) and N.Y. Debt. & Cred. Law § 273.

## AS AND FOR DEFENDANTS' FIFTH AFFIRMATIVE DEFENSE

31.     Plaintiff's claims are barred for lack of personal jurisdiction over Defendants in this Court.

## AS AND FOR DEFENDANTS' SIXTH AFFIRMATIVE DEFENSE

32.     Plaintiff's claims are barred in whole or in part because Plaintiff lacks standing to assert the claims contained in the Amended Complaint.

## AS AND FOR DEFENDANTS' SEVENTH AFFIRMATIVE DEFENSE

33.     Plaintiff's claims are barred in whole or in part by the applicable statute of limitations.

## AS AND FOR DEFENDANTS' EIGHTH AFFIRMATIVE DEFENSE

34.     Plaintiff's claims are barred in whole or in part due to insufficiency of process.

**AS AND FOR DEFENDANTS' NINTH AFFIRMATIVE DEFENSE**

35.     Plaintiff's claims are barred in whole or in part due to insufficiency of service of process.

**AS AND FOR DEFENDANTS' TENTH AFFIRMATIVE DEFENSE**

36.     Plaintiff's claims must be dismissed based upon documentary evidence or lack thereof.

**AS AND FOR DEFENDANTS' ELEVENTH AFFIRMATIVE DEFENSE**

37.     Plaintiff's claims are barred by the doctrine of waiver.

**AS AND FOR DEFENDANTS' TWELFTH AFFIRMATIVE DEFENSE**

38.     Plaintiff's claims are barred in whole or in part by the doctrine of res judicata and/or collateral estoppel.

**AS AND FOR DEFENDANTS' THIRTEENTH AFFIRMATIVE DEFENSE**

39.     Plaintiff's claims are barred in whole or in part by the doctrine of laches and/or unclean hands.

**RESERVATION OF RIGHTS**

40.     Defendants reserve all rights to amend this Answer, raise any additional defenses, cross-claims, and third-party claims not asserted herein of which they may become aware through discovery or other investigation, as may be appropriate at a later time.

                    *                *                *

**WHEREFORE**, Defendants respectfully request that this Court enter an order:

(1)     dismissing the Amended Complaint with prejudice;

(2)     awarding Defendants all costs and expenses incurred in defending this action including attorneys' fees as permitted by law; and

(3)     granting such other and further relief as this Court deems just and proper.

7

Dated: New York, New York
   June 9, 2021

            **ROSEN & ASSOCIATES, P.C.**
            *Counsel to Arvind Walia and*
             *Niknim Management Inc.*

        By: /s/ *Sanford P. Rosen*
             Sanford P. Rosen
             Paris Gyparakis

        747 Third Avenue
        New York, NY 10017-2803
        (212) 223-1100

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>ORION HEALTHCORP, INC. *et al.*,<br><br>        Debtors.[1] | Chapter 11<br><br>Case No. 18-71748 (AST) |
| HOWARD M. EHRENBERG, IN HIS CAPACITY AS LIQUIDATING TRUSTEE OF ORION HEALTHCORP, INC., ET AL.,<br><br>        Plaintiff,<br><br>v.<br><br>ARVIND WALIA; NIKNIM MANAGEMENT INC.,<br><br>        Defendants. | Adv. Proc. No. 20-08049 (AST) |

## MOTION OF DEFENDANTS ARVIND WALIA AND NIKNIM MANAGEMENT INC. FOR PARTIAL SUMMARY JUDGMENT DISMISSING CLAIMS ASSERTED IN THE COMPLAINT UNDER 11 U.S.C. § 544

By this motion (the "**Motion**"), defendants Arvind Walia ("**Walia**") and Niknim

Management Inc. ("**Niknim**") (together, the "**Defendants**"), by their co-counsel, Rosen & Associates,

P.C, and the Law Offices of Eugene R. Scheiman, PLLC, move for entry of an order granting them partial

---

[1] The debtors in these chapter 11 cases are: Orion Healthcorp, Inc.; Constellation Healthcare Technologies, Inc.; NEMS Acquisition, LLC; Northeast Medical Solutions, LLC; NEMS West Virginia, LLC; Physicians Practice Plus Holdings, LLC; Physicians Practice Plus, LLC; Medical Billing Services, Inc.; Rand Medical Billing, Inc.; RMI Physician Services Corporation; Western Skies Practice Management, Inc.; Integrated Physician Solutions, Inc.; NYNM Acquisition, LLC; Northstar FHA, LLC; Northstar First Health, LLC; Vachette Business Services, Ltd.; Phoenix Health, LLC; MDRX Medical Billing, LLC; VEGA Medical Professionals, LLC; Allegiance Consulting Associates, LLC; Allegiance Billing & Consulting, LLC; and New York Network Management, LLC.

summary judgment dismissing the claims asserted in the complaint under 11 U.S.C. § 544, and in support of the Motion, Defendants respectfully state as follows:

<u>**JURISDICTION, VENUE, AND STATUTORY PREDICATE**</u>

1.      This Court has jurisdiction to hear and determine this Motion under 28 U.S.C. §§ 157 and 1334 and the standing orders of reference in effect in this district, and venue of this case in this district is proper under 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2.      The statutory predicate for the relief requested herein is Bankruptcy Code sections 105, 544, and Rule 7056 of the Federal Rules of Bankruptcy Procedure.

<u>**SUMMARY JUDGMENT STANDARD**</u>

3.      Pursuant to Rule 56 of the Federal Rules of Civil Procedure, applicable here by Rule 7056 of the Federal Rules of Bankruptcy Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The party seeking summary judgment bears the burden of proving that no genuine issue of material fact exists. *Rodriguez v. City of New York*, 72 F.3d 1051, 1060-61 (2d Cir. 1995). "A fact is material if it might affect the outcome of the suit under the governing law, and an issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Ramos v. Baldor Specialty Foods, Inc.*, 687 F.3d 554, 558 (2d Cir. 2012) (quotation omitted).

4.      At the summary judgment stage the court must determine only whether there is a genuine issue for trial, not weigh evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "When deciding whether a genuine dispute exists as to a material fact, all ambiguities must be resolved, and all reasonable inferences must be drawn, in favor of the nonmoving party." *Tolan v. Cotton*, 572 U.S.

2

31

650, 657 (2014); *see also McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007), *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000) ("Thus, although the court should review the records as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe.").

## **PROCEDURAL BACKGROUND**

5.     On March 13, 2020, Howard M. Ehrenberg, in his Capacity as Liquidating Trustee of Orion Healthcorp, Inc., et al. ("**Plaintiff**" or "**Liquidating Trustee**") filed the *Complaint for Avoidance and Recovery of (1) Fraudulent Transfers; (2) Preferential Transfers; (3) Recovery of Avoided Transfers, and (4) Objection to Claim No. 10067 Pursuant to 11 U.S.C. §§ 502, 544, 547, 548, and 550* [Dkt. No. 1] against Defendants.

6.     On June 17, 2020, Defendants filed their *Answer and Affirmative Defenses* to the Complaint [Dkt. No. 6].

7.     On May 21, 2021, the parties filed the *Stipulation and Order re: Filing of First Amended Complaint and Entering of Scheduling Order* [Dkt. No. 19], which was entered by the Court on May 26, 2021 [Dkt. No. 20].

8.     On May 28, 2021, Plaintiff filed the *First Amended Complaint for Avoidance and Recovery of (1) Fraudulent Transfers; (2) Preferential Transfers; (3) Recovery of Avoided Transfers, and (4) Objection to Claim No. 10067 Pursuant to 11 U.S.C. §§ 502, 544, 547, 548, and 550* [Dkt. No. 22] (the "**First Amended Complaint**").  A copy of the First Amended Complaint is annexed hereto as *Exhibit "A"*.

9.     On June 9, 2021, Defendants filed their *Answer to First Amended Complaint and Affirmative Defenses* [Dkt. No. 23] (the "**Answer**").  A copy of the Answer is annexed hereto as *Exhibit "B"*.

10.     On September 21, 2021, the parties filed the *Stipulation Requesting Amendment to Case Management and Discovery Plan* [Dkt. No. 26], which was entered by the Court on October 5, 2021. [Dkt. No. 27].

11.     On December 30, 2021, fact discovery closed.

12.     On January 10, 2022, Plaintiff designated experts pursuant to Rule 26(a)(2) of the Federal Rules of Civil Procedure and produced expert reports.   Pursuant to the above-referenced *Scheduling Order and Amendment to Case Management and Discovery Plan*, any rebuttal or responsive expert report was due not later than February 9, 2022.

13.     On or about January 25, 2022, the parties filed the *Stipulation to Attend Mediation and Toll Remaining Deadlines* [Dkt. No. 34], which was entered by the Court on March 7, 2022; however, mediation was not successful, and the parties are proceeding with the litigation of this adversary proceeding.

14.     A separate joint statement of non-disputed material facts as to which the Defendants contend there is no genuine issue to be tried and Defendants' statement of additional fact is annexed hereto as *Exhibit "C"*.

**THE PARTIES**

15.     On March 16, 2018, each of the above-captioned debtors (collectively, the "**Debtors**") except New York Network Management, LLC ("**NYNM**") filed voluntary petitions for relief with the United States Bankruptcy Court for the Eastern District of New York under chapter 11 of the Bankruptcy Code. NYNM filed its voluntary petition on July 5, 2018. The Debtors' cases were jointly consolidated for administrative purposes only.

16.     On February 26, 2019, the Honorable Alan S. Trust, Chief United States Bankruptcy Judge for the Eastern District of New York, entered an order [Dkt. No. 701] confirming the Debtors' Third Amended Joint Plan of Liquidation (the "**Plan**").

17.     The Plan provides, among other things, for the formation of a Liquidating Trust[2] and the appointment of a Liquidating Trustee on the Effective Date to oversee distributions to holders of Allowed Claims and Allowed Interests and to pursue retained Causes of Action of the Debtors' Estates. The Effective Date occurred on March 1, 2019.

18.     The Plan provides that the Liquidating Trustee shall have the authority and responsibility to, among other things, receive, manage, invest, supervise, and protect the Liquidating Trust Assets, including causes of action.

19.     Plaintiff is the Liquidating Trustee under that certain Liquidating Trust Agreement by and among Orion HealthCorp, Inc., Constellation Healthcare Technologies, Inc. ("**Constellation Healthcare**"), and their debtor affiliates.

20.     Defendant Walia is an individual residing in the State of New York.  Walia is the former President and Chief Executive Officer of Orion HealthCorp, Inc..

21.     Defendant Niknim is a corporation formed under the laws of the State of New York with its principal address at 27 Kettlepond Road, Jericho, New York.  Walia is the sole officer, director, and shareholder of Niknim.

## PLAINTIFF'S CLAIMS

**Background Allegations**

22.     In or about 2015 and earlier, Walia was the majority owner and Chief Executive Officer of Porteck Corporation ("**Porteck**").

23.     On or about March 2015, the Debtor Physicians Practice Plus, LLC ("**Physicians Practice**"), acquired the assets of Porteck pursuant to an asset purchase agreement made and entered into as of March 2015 (the "**Porteck Asset Purchase Agreement**").

---

[2]  Capitalized terms not otherwise defined herein shall have the meanings attributed to them in the Liquidating Trust and the Plan.

24.     Pursuant to Section 1.6(a) of the Porteck Asset Purchase Agreement, Physicians Practice agreed to pay a purchase price for the assets consisting of the sum of $12,800,000, of which sum $12,300,000 was paid by Physicians Practice at closing and $500,000 was deemed paid through Physicians Practice causing the cancellation of Porteck's obligation to Constellation Healthcare pursuant to that certain Promissory Note dated February 9, 2015.

25.     In addition, pursuant to Section 1.7 of the Porteck Asset Purchase Agreement, Physicians Practice agreed to pay the Post-Closing Payment, as such term is defined in the Porteck Asset Purchase Agreement.

26.     Section 1.6(e) of the Porteck Asset Purchase Agreement provides:

> "For the purpose of partially securing Seller's obligations pursuant, and without limiting Seller's obligations thereunder, the amount of two million five hundred thousand Dollars ($2,500,000) in cash (the "**Escrow Amount**") shall be delivered by Buyers [sic] at the Closing to the Escrow Agent by wire transfer of immediately available funds to an account (the "**Escrow Account**") to be designated and administered by the Escrow Agent pursuant to an escrow agreement substantially in the form of Exhibit A (the "**Escrow Agreement**"), which Escrow Agreement shall provide, among other things, that any amounts remaining in the Escrow Account shall be released to Seller twelve (12) months after the Closing, to the extent not subject to any claims made prior to that time. Seller and Buyer agree that for all Tax purposes, any amounts in the Escrow Account released to the Seller pursuant to this Section 2.7 [sic] shall be treated as additional purchase price, unless otherwise required by applicable Law. The Escrow Payment Working Capital Deficiency [sic]."[3]

27.     In or about June 2017, Walia owned membership interests in Objectech Holdings, LLC ("**Objectech**"). At about that time, Physicians Healthcare Network Management Solutions LLC ("**Physicians Healthcare**"), a non-debtor, acquired Walia's membership interests in Objectech pursuant to a Membership Interests Purchase Agreement made and entered into as of June 2017 (the "**Objectech Membership Purchase Agreement**").

28.     Section 1.1 of the Objectech Membership Purchase Agreement provides that:

---

[3] Upon information and belief, the Escrow Agreement was never prepared.

"On the Closing Date and subject to the terms and conditions set forth in this Agreement, [Walia] will sell, assign, and transfer to [Physicians Healthcare], and [Physicians Healthcare ] will purchase and acquire, all of the Interests, free and clear of all Liens, for and in consideration of (A) (1) the sum of those amounts actually paid to one or more of the Selling Parties and Selling Member Representative (i) as Closing Payment, (ii) any Earn-Out payments, and (iii) in respect of the adjustment of the Company's working capital in accordance with Section 1.5, less (B) any Required Repayments paid in accordance with Section 1.6 (collectively, the "Purchase Price")."

29.    Section 1.2 of the Objectech Membership Purchase Agreement provides that the Closing Payment of $1,520,000 (the "**Closing Payment**") shall be paid at the closing, as defined therein.

30.    Section 1.7 of the Objectech Membership Purchase Agreement provides for the payment of certain additional sums denominated as "Earn-Out Payments." However, no such Earn-Out Payments were ever made under the Objectech Membership Purchase Agreement.

The Transfer

31.    On or about June 23, 2017, within one (1) year prior to the commencement of the bankruptcy cases, certain of the Debtors[4] made two payments to Niknim; one for $1,500,000.00 and another for $20,000 (together, the "**One-Year Transfers**"), representing the Closing Payment pursuant to the terms of the Objectech Membership Purchase Agreement.

32.    On or about April 15, 2016, within two (2) years prior to the commencement of the bankruptcy cases, Constellation Healthcare, paid Niknim $2,500,000.00 (the "**Two-Year Transfer**") (together with the One-Year Transfers, the "**Transfers**") pursuant to Section 1.6(e) of the Porteck Asset Purchase Agreement.

**The Basis for Recovery of the Transfers**

---

[4] In fact, the One Year Transfers were made by the Debtors' counsel, Robinson Brog Leinwand Greene Genovese & Gluck P.C. from their IOLA Account, which the Plaintiff alleges were maintained for the Debtors without identifying a particular Debtor(s) for whose benefit the account was maintained.

First Claim for Relief

33.     Plaintiff alleges the Transfers were made by the Debtors[5] with actual intent to hinder or delay or defraud their creditors.  Accordingly, Plaintiff alleges the Transfers are avoidable as intentionally fraudulent transfers pursuant to section 548(a)(1)(A) of the Bankruptcy Code and section 276 of the New York Debtor and Creditor Law.

34.     Plaintiff alleges that at all relevant times, the Debtors: (a) were insolvent, or became insolvent as a result of the Transfers; (b) were engaged in or were about to engage in a business or a transaction for which their remaining assets were unreasonably small in relation to the business or transaction; (c) intended to incur, or believed or reasonably should have believed that they would incur, debts beyond their ability to pay as they became due; or (d) made such Transfers to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

Second Claim for Relief

35.     Plaintiff alleges that Defendants[6] did not give the Debtors, and the Debtors did not otherwise receive, reasonably equivalent value in exchange for the Transfers and that as a result, the Debtors paid and received either nothing of value  or less than reasonably equivalent value from Defendants.  Accordingly, Plaintiff alleges the Transfers are avoidable pursuant to section 548(a)(1)(B) of the Bankruptcy Code and section 276 of the New York Debtor and Creditor Law.

Third Claim for Relief

36.     Plaintiff alleges that the One-Year Transfers were preferential, and therefore avoidable under section 547(b) of the Bankruptcy Code.

Fourth Claim for Relief

---

[5] In fact, as mentioned, Constellation Healthcare made the Two-Year Transfers, not the Debtors.
[6] In fact, Defendant Niknim was the only transferee.

37.    Plaintiff alleges that because Defendants are the initial, immediate, or mediate transferees of the Transfers, Plaintiff may recover for the benefit of the estate the property transferred or the value of such property from (a) the initial transferee of each transfer or the entity for whose benefit each transfer was made or (b) any immediate or mediate transferee of such initial transferee pursuant to section 550(a) of the Bankruptcy Code and the New York Debtor and Creditor Law.

<u>Fifth Claim for Relief</u>

38.    Finally, Plaintiff seeks to (i) strike the Walia Claim, as defined in the Complaint because it was not filed with evidentiary support and is contradicted by the Debtors' books and records, or alternatively, (ii) disallow the Walia Claim pursuant to section 502(d) of the Bankruptcy Code unless and until Walia pays to the Plaintiff an amount equal to each preferential or fraudulent transfer that is avoided including pre- and post-judgment interest on the avoided amount.

<b><u>THE MOTION</u></b>

<u>As to the First, Second and Fourth Claims for Relief</u>

39.    Plaintiff's First, Second and Fourth Claims for Relief (alleging fraudulent conveyance) are predicated upon both the Bankruptcy Code and the New York Debtor and Creditor Law. Plaintiff invokes the New York Debtor and Creditor Law pursuant to section 544(b)(1) of the Bankruptcy Code, which provides:

> Except as provided in paragraph (2), the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

11 U.S.C. §544(b)(1).

40.    Section 544(b)(1) of the Bankruptcy Code grants a trustee the avoidance rights of an unsecured creditor <u>in existence</u> at the commencement of the case. The rights are limited to those of an

9

existing, unsecured creditor; they are "completely derivative of those of an actual unsecured creditor." *Lippe v. Bainco Corp.*, 225 B.R. 846, 852 (S.D.N.Y. 1998), *quoting, In re Wingspread Corp.*, 178 B.R. 938, 945 (Bkrtcy.S.D.N.Y.1995). Moreover, a plaintiff seeking recovery under section 544(b) will only be able to attack transfers "to the extent that a creditor with an allowable claim might avoid the transfer under applicable state or federal law" and "only if the benefits of the action inure to all creditors ratably." *Lippe v. Bairnco Corp.*, 225 B.R. at 852, *quoting*, *In re Colonial Realty Co.*, 168 B.R. 506, 510 (Bankr. D. Conn. 1994) (citation omitted).

41.    A trustee or debtor in possession seeking the rights which section 544(b) affords must plead the existence of a creditor who could have avoided the transfer at issue at the commencement of the bankruptcy case. *Leibowitz v. Parkway Bank & Trust Co.* (*In re Image Worldwide, Ltd.*), 139 F.3d 574, 577 (7th Cir. 1998); It is well established that "[b]efore a trustee is able to utilize applicable state or federal law referred to in Section 544(b), there must be an allegation and ultimately a proof of the existence of at least one unsecured creditor of the Debtor who at the time the transfer in question occurred could have, under applicable local law, attacked and set aside the transfer under consideration." *Young v. Paramount Commc'ns, Inc. (In re Wingspread Corp.),* 178 B.R. 938, 946 (Bankr. S.D.N.Y.1995) (citation omitted).

42.    Plaintiff, by the First Amended Complaint, fails to allege the existence of a creditor who could have attacked and set aside the Transfers.  Although Plaintiff's standing derives from and is dependent upon the rights of such a qualifying creditor, Plaintiff merely seeks relief pursuant to Section 544(b), and fails to allege the existence of any creditor into whose shoes Plaintiff intends to step.

43.    Therefore, Defendants respectfully submit that Plaintiff has no standing to assert the claims under the New York Debtor and Creditor Law and they must now be dismissed.

10

**NOTICE**

44.     Bankruptcy Rule 2002(a)(3) requires that notice of this Motion be given on 21 days' notice. In accordance therewith, Movant provided notice of this Motion to counsel to the Plaintiff.

45.     No previous application for the relief sought herein has been made to this or any other Court.

**CONCLUSION**

WHEREFORE, Defendants respectfully request that this Court (i) enter an order, substantially in the form annexed hereto as Exhibit "D", dismissing the claims asserted in the First Amended Complaint under 11 U.S.C. § 544; and (ii) grant them such other and further relief as is just and proper.

Dated: New York, NY
          January 18, 2023

Respectfully Submitted,
*Counsel to Arvind Walia and*
   *Niknim Management Inc.*

By: /s/ Sanford P. Rosen
          Sanford P. Rosen

747 Third Avenue
New York, NY 10017-2803
(212) 223-1100

**Law Offices of Eugene R. Scheiman, PLLC**
*Co-counsel to Arvind Walia and*
   *Niknim Management Inc.*
570 Lexington Avenue
Suite 1600
New York, NY 10022
(646) 280-9000

11

Ilan D. Scharf
Jeffrey P. Nolan (Pro Hac Vice Pending)
PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 34th Floor
New York, New York 10017-2024
Teliphone:   (212) 561-7700
Facsimile:   (212) 561-7777
ischarf@pszjlaw.com
jnolan@pszjlaw.com

*Counsel for the Plaintiff,*
*Howard M. Ehrenberg in his capacity*
*as Liquidating Trustee of Orion Healthcorp, Inc., et al.,*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| ORION HEALTHCORP, INC.[1] | : | Case No. 18-71748 (AST) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

------------------------------------------------

| | | |
|---|---|---|
| HOWARD M. EHRENBERG IN HIS CAPACITY AS LIQUIDATING TRUSTEE OF ORION HEALTHCORP, INC., ET AL., | : | Adv. Pro. No. 20-08049 (AST) |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| ARVIND WALIA; NIKNIM MANAGEMENT INC., | : | |
| | : | |
| Defendants. | : | |

------------------------------------------------

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Orion Healthcorp, Inc. (7246); Constellation Healthcare Technologies, Inc. (0135); NEMS Acquisition, LLC (7378); Northeast Medical Solutions, LLC (2703); NEMS West Virginia, LLC (unknown); Physicians Practice Plus Holdings, LLC (6100); Physicians Practice Plus, LLC (4122); Medical Billing Services, Inc. (2971); Rand Medical Billing, Inc. (7887); RMI Physician Services Corporation (7239); Western Skies Practice Management, Inc. (1904); Integrated Physician Solutions, Inc. (0543); NYNM Acquisition, LLC (unknown) Northstar FHA, LLC (unknown); Northstar First Health, LLC (unknown); Vachette Business Services, Ltd. (4672); Phoenix Health, LLC (0856); MDRX Medical Billing, LLC (5410); VEGA Medical Professionals, LLC (1055); Allegiance Consulting Associates, LLC (7291); Allegiance Billing & Consulting, LLC (7141); New York Network Management, LLC (7168). The corporate headquarters and the mailing address for the Debtors listed above is 1715 Route 35 North, Suite 303, Middletown, NJ 07748.

**FIRST AMENDED COMPLAINT FOR AVOIDANCE AND RECOVERY**
**OF: (1) FRAUDULENT TRANSFERS; (2) PREFERENTIAL TRANSFERS;**
**(3) RECOVERY OF AVOIDED TRANSFERS; (4) OBJECTION TO CLAIM NO. 10067;**
**PURSUANT TO 11 U.S.C. §§ 502, 544, 547, 548 AND 550**

Plaintiff, Howard M. Ehrenberg in his capacity as Liquidating Trustee of Orion

Healthcorp, Inc., et al., (the "Plaintiff" or the Liquidating Trustee"), for the estates of the

above-captioned debtors (the "Debtors") in the above-captioned cases pending under chapter 11

of title 11 of the United States Code (the "Bankruptcy Code"), by and through its undersigned

counsel, as and for its *First Amended Complaint For Avoidance And Recovery Of: (1)*

*Fraudulent Transfers;(2) Preferential Transfers; (3) Recovery Of Avoided Transfers; And (4)*

*Objection To Claim No. 1067 Pursuant to 11 U.S.C. §§ 502, 544, 547 548 and 550* (the

"Complaint") against the above-captioned defendants (collectively, the "Defendant"), alleges as

follows:

## THE PARTIES

1.      Plaintiff is the Liquidating Trustee under that certain Liquidating Trust

Agreement by and among Orion HealthCorp, Inc., Constellation Healthcare Technologies, Inc.

and certain of their affiliates.

2.      Upon information and belief, Defendant Arvind Walia ("Walia") is an

individual currently residing in the State of New York.  Defendant Walia is the former President,

and Chief Executive Officer, of the Debtor Orion Healthcorp, Inc.

3.       Upon information and belief, Defendant Niknim Management Inc. is

("Niknim") is a corporation formed under the laws of the State of New York with its principle

address at 27 Kettlepond Road, Jericho, New York.

4.      Plaintiff is informed and believes and thereon alleges that at all times

mentioned herein there existed a unity of interest in ownership between Defendant, Walia and

Defendant, Niknim such that the individuality and separateness between them ceased and that

Defendant, Niknim is the alter ego of Defendant, Walia in that, among other things: (a) Defendant Walia controlled, dominated, managed and operated Defendant Niknim as his alter ego; (b) Defendant Walia makes all decisions pertaining to Defendant Niknim; (c) there has been a failure to comply with or observe the formalities of corporate formation and/or operation; (d) Defendant Niknim was inadequately capitalized; and (e) that the individuality of said entity should be disregarded pursuant to the doctrine of piercing the corporate veil.

## STANDING

5.      On March 16, 2018, each of the Debtors except New York Network Management, LLC ("NYNM") filed a voluntary petition with the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court")under chapter 11 of the Bankruptcy Code and  NYNM commenced its voluntary petition on July 5, 2018 (collectively, the "Debtors").  The Debtors' cases are jointly administered for administrative purposes only [Docket Nos. 34 and 381].

6.      On February 26, 2019, the Honorable Alan S. Trust, United States Bankruptcy Judge for the Eastern District of New York, entered an order (the "Confirmation Order") [Docket No. 701] confirming the Debtors' Third Amended Joint Plan Of Liquidation (the "Plan").

7.      The Plan provides, among other things, for the formation of the Liquidating Trust and the appointment of the Liquidating Trustee on the Effective Date (as that term is defined in the Plan) to oversee distributions to holders of Allowed Claims and Allowed Interests and to pursue retained Causes of Action of the Debtors' Estates.  The Effective Date occurred on March 1, 2019.

8.      The Plan provides that the Liquidating Trustee shall have the authority and responsibility to, among other things, receive, manage, invest, supervise, and protect the Liquidating Trust Assets, including causes of action.

## JURISDICTION AND VENUE

9.      The Bankruptcy Court has jurisdiction over this adversary proceeding under the Bankruptcy Code pursuant to 28 U.S.C. §§ 157(a) and 1334(a).

10.     This proceeding is a core proceeding within the meaning of 28 U.S.C. § 157(b) and the Bankruptcy Court may enter final orders for the matters contained herein.

11.     Pursuant to Local Bankruptcy Rule 7008-1, the Plaintiff affirms his consent to the entry of final orders or judgments by the Bankruptcy Court if it is determined that the Bankruptcy Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

12.     Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409(a).

## BASIS FOR RELIEF REQUESTED

13.     This adversary proceeding is initiated pursuant to Rules 7001(1), (2) and (9) and 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") to avoid and recover, pursuant to sections 502, 544, 547, 548 and 550 of the Bankruptcy Code and sections 273, 274, 275 and 276 of the New York Debtor & Creditor Law (the "NY Debt & Cred L"), made applicable herein pursuant to section 544 of the Bankruptcy Code, certain avoidable transfers that were made by the Debtors to the Defendant prior to the Petition Date.

## FACTS

14.     The Debtors are a consolidated enterprise of several companies aggregated through a series of acquisitions, which operate the following businesses: (a) outsourced revenue cycle management for physician practices, (b) physician practice management, (c) group purchasing services for physician practices, and (d) an independent practice association business, which is organized and directed by physicians in private practice to negotiate contracts with

insurance companies on their behalf while such physicians remain independent and which also provides other services to such physician practices.

15.     Parmjit Parmar a/k/a Paul Parmar ("Parmar"), was the former Chief Executive Officer of the Debtor, Constellation Healthcare Technologies, Inc. ("CHT"), Sotirios Zaharis, a/k/a Sam Zaharis ("Zaharis"), was the former Chief Financial Officer of CHT, and Ravi Chivukula ("Chivukula") was the Controller and Secretary of CHT from approximately 2013 to 2017.  Parmar, Zaharis and Chivukula served on the board of directors of CHT.  Parmar, Zaharis and Chivukula, in combination with one another and with others, operating through various Debtors, moved money and established off-balance sheet accounts to redirect monies of the Debtors for their own personal use.  The Debtor, and the aforementioned associates, utilized a Wells Fargo IOLA account overseen by the law firm of Robinson, Brog, Leinwand, Greene, Genovese & Gluck, P.C. ("Robinson Brog").  Upon information and belief, Robinson Brog also represented Parmar, Zaharis and Chivukula personally in their business, litigation and private affairs.

16.     On or about 2018, Parmar, Zaharis and Chivukula were indicted by the United States Attorney's Office, District of New Jersey, for creating fictitious business entities, balance sheets, doctored bank statements, fabricating customers as well as generating fake income streams, and sham acquisitions in an effort to divert monies from the Debtors.  As alleged, Parmar, Zaharis and Chivukula diverted funds to enrich themselves, their friends, family and associates.

17.     In or about 2015 and earlier, Defendant Walia was the majority owner, managing member, and Chief Executive Officer of Portech Corporation, prior to its acquisition by the Debtors.

18.     On or about March 2015, the Debtor, Physicians Practice Plus, LLC, as represented by Robinson Brog, acquired Portech Corporation from Defendant Walia.  Pursuant

to the asset purchase agreement made and entered into as of March, 2015 ("Asset Purchase Agreement"), the sum of $12,800,000 was paid, including the right to subsequent payments and earn-outs over the course of the following years (the "Portech Acquisition").

19.    The Portech Acquisition was orchestrated through the network of entities arranged by Parmar such that funds could be diverted into off-balance sheet accounts. The off-balance sheet accounts allowed funds to be transferred (a) to entities controlled by Parmar and his confederates, or (b) to commingle funds such that monies could be disbursed in a manner which best allowed Parmar to obfuscate his dealings and continue to maintain an illusion that the Debtors were solvent.

20.    On or about May 1, 2017, the Debtor Orion Healthcorp, Inc. and Defendant Walia, entered into an employment agreement wherein Defendant Walia would act as the President and CEO of the Debtor, Orion Healthcorp, Inc. Walia would be paid an annual salary of $100,000 as paid in accordance with the Debtor's regular payroll practices.

21.    On or about May 1, 2017, the Debtor Orion Healthcorp, Inc. and Defendant Niknim Management, Inc., as represented by Defendant Walia, as the sole managing member, entered into a consulting agreement wherein Niknim would be paid a monthly fee by the Debtors for the prior month's work as a consultant.

**(A)    The Transfers:**

22.    During the one (1) year period prior to the commencement of the bankruptcy cases, the Debtors transferred property to or for the benefit of Defendants in an amount not less than $1,520,000.00, as identified in particular on Exhibit "A" which is incorporated herein by reference (the "One-Year Transfer"). Defendant Walia was an officer of the Debtors at all pertinent times therein. During the two (2) year period prior to the commencement of the bankruptcy cases, the Debtors transferred property to or for the benefit of Defendants in an amount not less than $2,500,000.00, as identified in particular on Exhibit "A"

DOCS_LA:328296.4 65004/003                    6

which is incorporated herein by reference (the "Two-Year Transfer")(collectively, the One-Year and Two-Year Transfer are referenced as "the Transfers").

**(B)**     **Amounts Allegedly Owed To Defendant And Defendant's Proofs Of Claim:**

23.     On or about July 5, 2018, Defendant Walia filed a claim in the amount of $61,590.00, which the claims agent designated as claim no. 10067 (the "Filed Claim"), as attached hereto as Exhibit "B".

24.     Defendant Walia alleges in the Filed Claim that the Debtors failed to indemnify Walia for employee-related services.

**FIRST CLAIM FOR RELIEF**
**(For Avoidance and Recovery of Intentionally Fraudulent Transfers Under**
**11 U.S.C. § 548; NY Debt & Cred L § 276, *et al*., Against Defendants)**

25.     Plaintiff repeats and realleges the allegations contained in each preceding paragraph of the Complaint as though set forth fully herein.

26.     The Defendant received the Transfers from the Debtors which were through various concealed means including the off-balance sheet bank accounts as identified in particular on Exhibit "A".

27.     The Transfers were made by the Debtors with actual intent to hinder or delay or defraud their creditors insofar as the Transfers were orchestrated through a scheme to divert and redirect monies of the Debtors for the personal benefit of Parmar, his friends and associates, or in a manner to obfuscate the misuse of the Debtor.

28.     The Transfers were made to or for the benefit of Defendants.

29.     Accordingly, the Transfers are avoidable, and should be avoided, as intentionally fraudulent transfers pursuant to § 548(a)(1)(A) and NY Debt & Cred L § 276, and may be recovered from Defendant pursuant to § 548 and the NY Debt & Cred L.  Plaintiff is entitled to an order and judgment under 11 U.S.C. § 544 that the Transfers be avoided.

## SECOND CLAIM FOR RELIEF
### (To Avoid Constructively Fraudulent Transfers Under
### 11 U.S.C. §§ 544(b) and 548(a)(1)(B) and NY Debt & Cred L
### §§ 273-275, *et seq*., Against Defendants)

30.     Plaintiff realleges and incorporates by reference each and every allegation in the above paragraphs, as though fully set forth herein.

31.     Plaintiff is informed and believes, and thereon asserts that at all relevant times, the Debtors:  (a) were insolvent, or became insolvent as a result of the Transfers; (b) were engaged in or was about to engage in a business or a transaction for which their remaining assets were unreasonably small in relation to the business or transaction; or (c) intended to incur, or believed or reasonably should have believed that they would incur, debts beyond their ability to pay as they became due; or (d) made such Transfers to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

32.     Plaintiff is informed and believes, and thereon asserts, that Defendant did not give the Debtors, and the Debtors did not otherwise receive, reasonably equivalent value for obligations incurred for the Transfers. As a result, the Debtors paid and received in value nothing from Defendant and or less than reasonably equivalent value.

33.     At all relevant times, the Transfers were avoidable pursuant to 11 U.S.C. § 548(a)(1)(B) and NY Debt & Cred L.  Plaintiff is entitled to an order and judgment that the Transfers are avoided.

## THIRD CLAIM FOR RELIEF
### (Avoidance of Preferential Transfers Pursuant To 11 U.S.C. § 547(b)
### Against Defendants)

34.     Plaintiff realleges and incorporates by reference each and every allegation in the above paragraphs, as though fully set forth herein.

35.     During one-year prior to the petition, Defendant was a creditor and an insider of one or more of the Debtors.

36.     The One-Year Transfer identified on Exhibit "A" hereto was made to or for the benefit of Defendant.

37.     The Transfer was made for or on account of an antecedent debt or debts owed by one or more of the Debtors before such Preferential Transfers were made.

38.     The Transfer was made during the One-Year Period in which Defendant Walia was an insider of the Debtor.

39.     The Transfer was made while the Debtors were insolvent.

40.     The Transfer enabled Defendant to receive more than Defendant would have received if (i) the Debtors' chapter 11 cases were instead cases under chapter 7 of the Bankruptcy Code; (ii) the transfers and/or payments had not been made; and (iii) Defendant received payment on account of the debt paid by the Preferential Transfers to the extent provided by the Bankruptcy Code.

41.     The Transfer constitutes an avoidable preference pursuant to Bankruptcy Code section 547(b).

### FOURTH CLAIM FOR RELIEF
**(For Recovery of Property -- 11 U.S.C. § 544(b), §550 and
NY Debt & Cred L against Defendants)**

42.     Plaintiff repeats and realleges the allegations contained in each preceding paragraph of the Complaint as though set forth fully herein.

43.     As the Defendants are the initial, immediate or mediate transferees of the Transfer, Plaintiff may recover for the benefit of the estate the property transferred or the value of such property from (a) the initial transferee of such transfer or the entity for whose benefit such transfer was made or (b) any immediate or mediate transferee of such initial transferee pursuant to pursuant to 11 U.S.C. § 550(a)

44.     As alleged above, Plaintiff is entitled to avoid the Transfers under 11 U.S.C. §§ 542, 547 and 548.  As Defendants are the initial, immediate or mediate transferee

of the Transfers, Plaintiff is entitled to receive for the Estate the proceeds or value of the

Transfers under 11 U.S.C. § 550 of the Bankruptcy Code and NY Debt & Cred L.

## FIFTH CLAIM FOR RELIEF
### (Objection to Claims against Defendant Walia)

45.     Plaintiff repeats and realleges the allegations contained in each preceding

paragraph of the Complaint as though set forth fully herein.

46.     After a thorough review of the Debtors' Books and Records and Claim

No. 10067, the Plaintiff has determined that Claim No. 10067 does not comply with the

Bankruptcy Rules, is without evidentiary support, and is contradicted by the Debtors' books and

records.

47.     As alleged above, each Preferential or Fraudulent Transfer constitutes an

avoidable transfer pursuant to 11 U.S.C. § 547 and/or 548 of the Bankruptcy Code, which is

recoverable pursuant to Bankruptcy Code section 550.

48.     As a result of the above, Plaintiff moves to strike the Claim or

alternatively,  pursuant to Bankruptcy Code section 502(d), Claim No. 10067 must be disallowed

unless and until Defendant pays to the Plaintiff an amount equal to each preferential or

fraudulent Transfer that is avoided including pre- and post-judgment interest on the avoided

amount.

49.     As a result of the above, Plaintiff moves to strike the Claim.

**WHEREFORE**, Plaintiff prays for judgment as follows:

a.     For a determination that the Transfers are an avoidable fraudulent

transfer under 11 U.S.C. §§ 544, and 548, of the Bankruptcy Code and Section 273-276 of NY

Debt & Cred L, *et seq*, as applicable, and that the Plaintiff is entitled to recover the Transfers

under 11 U.S.C. § 550 of the Bankruptcy Code;

b.      For a determination that the One-Year Transfers are avoidable transfers under 11 U.S.C. §§ 544 and 547, as applicable, and that the Plaintiff is entitled to recover the One-Year Transfers under 11 U.S.C. §§ 550 & 551 of the Bankruptcy Code;

c.      On its Claim for Objection to the Filed Claim, that the Defendant recover nothing by way of the Filed Claim;

d.      Awarding to the Plaintiff the costs of suit incurred herein, including pre- and post-judgment interest; and

e.      For such other and further relief as the Court may deem just and proper.

Dated: New York, New York
       May 26, 2021

                                    __/s/ Jeffrey P. Nolan_____
                                    Ilan D. Scharf, Esquire
                                    Jeffrey P. Nolan, Esquire
                                    PACHULSKI STANG ZIEHL & JONES LLP
                                    780 Third Avenue, 36th Floor
                                    New York, New York 10017
                                    Telephone:     (212) 561-7700
                                    Facsimile:     (212) 561-7777

                                    Counsel for the Plaintiff,
                                    Howard M. Ehrenberg in his capacity
                                    as Liquidating Trustee of Orion Healthcorp, Inc.,
                                    et al.,

# EXHIBIT A

EXHIBIT A

| | | Niknim Management, Inc.; Walia | | | | | |
|---|---|---|---|---|---|---|---|
| **Posted Dt.** | **Doc Dt.** | **Name** | **Location** | **Segment** | **Curr** | **Txn Amt** | **Credit (USD)** |
| 4/15/2016 | 4/15/2016 | Constellation Healthcare | M&T | Corp | USD | $ 2,500,000.00 | $ 2,500,000.00 |
| 6/23/2017 | 6/23/2017 | Constellation Healthcare | IOLA | Corp | USD | $ 1,500,000.00 | $ 1,500,000.00 |
| 6/28/2017 | 6/28/2017 | Constellation Healthcare | IOLA | Corp | USD | $ 20,000.00 | $ 20,000.00 |
| | | | | | | Total | $ 4,020,000.00 |

Doc No. 336243

**ROSEN & ASSOCIATES, P.C.**
*Counsel to Arvind Walia and*
*   Niknim Management Inc.*
747 Third Avenue
New York, NY 10017-2803
(212) 223-1100
Sanford P. Rosen
Paris Gyparakis

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>ORION HEALTHCORP, INC. *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 18-71748 (AST) |
| HOWARD M. EHRENBERG, IN HIS CAPACITY AS LIQUIDATING TRUSTEE OF ORION HEALTHCORP, INC., ET AL.,<br><br>Plaintiff,<br>v.<br><br>ARVIND WALIA; NIKNIM MANAGEMENT INC.,<br><br>Defendants. | Adv. Proc. No. 20-08049 (AST) |

<u>**ANSWER TO FIRST AMENDED COMPLAINT AND AFFIRMATIVE DEFENSES**</u>

Defendants Arvind Walia ("**Mr. Walia**") and Niknim Management Inc. (collectively, "**Defendants**"), through their counsel, Rosen & Associates, P.C., as and for their answer (the "**Answer**") to the *First Amended Complaint for Avoidance and Recovery of: (1) Fraudulent Transfers; (2) Preferential Transfers; (3) Recovery of Avoided Transfers; (4) Objection to Claim No. 10067; Pursuant to 11 U.S.C. §§ 502, 544, 547, 548 and 550* dated May 26, 2020 [Adv. Proc. Doc. No. 22] (the "**Amended Complaint**"),[1] filed by Howard M. Ehrenberg,

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Amended Complaint.

in his capacity as liquidating trustee of the estates of Orion HealthCorp, Inc., *et al.* ("**Plaintiff**"), respectfully represent as follows:

### AS TO THE PARTIES

1.      Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegation contained in paragraph "1" of the Amended Complaint.

2.      Defendants admit that Mr. Walia is an individual resident of the state of New York and deny the remaining allegation in paragraph "2" of the Amended Complaint.

3.      Defendants admit the allegations contained in paragraph "3" of the Amended Complaint.

4.      Defendants deny the allegations contained in paragraph "4" of the Amended Complaint.

### AS TO STANDING

5.      To the extent the allegations in paragraphs "5" through "8" purport to cite or summarize publicly filed documents, Defendants respectfully refer the Court to the actual cited documents for a complete and accurate statement of their contents. Otherwise, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraphs "5" through "8" of the Amended Complaint.

### AS TO JURISDICTION AND VENUE

6.      Defendants neither admit nor deny the allegations contained in paragraphs "9" through "12" of the Amended Complaint, as such allegations are legal conclusions to which no response is required; however, Defendants do not consent to the entry of final orders or judgments by this Court.

2

## AS TO BASIS FOR RELIEF REQUESTED

7.    Defendants admit that Plaintiff purports to have brought this action pursuant to the authority cited in paragraph "13" of the Amended Complaint. To the extent the allegations in paragraph "13" state legal conclusions, no responsive pleading is required. Otherwise, except as expressly admitted herein, Defendants deny the allegations contained in paragraph "13" of the Amended Complaint.

8.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "14" of the Amended Complaint.

9.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraphs "15" and "16" of the Amended Complaint.

10.    Defendants admit that, in or about 2015 or earlier, Mr. Walia was the majority shareholder and Chief Executive Officer of Porteck Corporation prior to its acquisition by Physicians Practice Plus, LLC. To the extent the term "Portech Corporation," as used in paragraph "17" of the Amended Complaint, was intended to refer to any entity other than Porteck Corporation, Defendants deny the allegations contained in paragraph "17" of the Amended Complaint.

11.    Defendants admit that, on or around March 2015, Porteck Corporation was acquired by Physicians Practice Plus, LLC. To the extent the term "Portech Corporation," as used in paragraph "18" of the Amended Complaint, was intended to refer to any entity other than Porteck Corporation, Defendants deny the allegations contained in paragraph "18" of the Amended Complaint and, except as expressly admitted herein, deny the remaining allegations contained in paragraph "18" of the Amended Complaint.

3

12.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "19" of the Amended Complaint.

13.    Defendants admit the allegations contained in paragraphs "20" and "21" of the Amended Complaint.

14.    Defendants admit the allegations contained in paragraph "22" of the Amended Complaint.

15.    Defendants admit the allegation in paragraph "23" that Mr. Walia filed a claim against the Debtors' estates.

16.    To the extent the allegations in paragraph "24" purport to cite or summarize publicly filed documents, Defendants respectfully refer the Court to the actual cited documents for a complete and accurate statement of their contents. Otherwise, Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph "24" of the Amended Complaint.

### AS TO FIRST CLAIM FOR RELIEF

17.    Defendants repeat, re-allege and incorporate by reference their responses to paragraphs "1" through "24" of the Amended Complaint as if fully set forth herein.

18.    Defendants deny the allegations contained in paragraphs "26" through "29" of the Amended Complaint.

### AS TO SECOND CLAIM FOR RELIEF

19.    Defendants repeat, re-allege and incorporate by reference their responses to paragraphs "1" through "29" of the Amended Complaint as if fully set forth herein.

20.    Defendants deny the allegations contained in paragraphs "31" through "33" of the Amended Complaint.

4

## AS TO THIRD CLAIM FOR RELIEF

21.     Defendants repeat, re-allege and incorporate by reference their responses to paragraphs "1" through "33" of the Amended Complaint as if fully set forth herein.

22.     Defendants deny the allegations contained in paragraphs "35" through "41" of the Amended Complaint.

## AS TO FOURTH CLAIM FOR RELIEF

23.     Defendants repeat, re-allege and incorporate by reference their responses to paragraphs "1" through "41" of the Amended Complaint as if fully set forth herein.

24.     Defendants deny the allegations contained in paragraphs "43" and "44" of the Amended Complaint.

## AS TO FIFTH CLAIM FOR RELIEF

25.     Defendants repeat, re-allege and incorporate by reference their responses to paragraphs "1" through "44" of the Amended Complaint as if fully set forth herein.

26.     Defendants deny the allegations contained in paragraphs "45" through "49" of the Amended Complaint.

## AS AND FOR DEFENDANTS' FIRST AFFIRMATIVE DEFENSE

27.     Plaintiff's claims and each purported cause of action contained in the Amended Complaint fail to state a claim upon which relief may be granted.

## AS AND FOR DEFENDANTS' SECOND AFFIRMATIVE DEFENSE

28.     The Amended Complaint should be dismissed on the basis that the transfers referenced in *Exhibit A* of the Amended Complaint are excepted from recovery under 11 U.S.C. § 547(c)(2).

5

**AS AND FOR DEFENDANTS' THIRD AFFIRMATIVE DEFENSE**

29.     The Amended Complaint should be dismissed on the basis that the transfers referenced in *Exhibit A* of the Amended Complaint are excepted from recovery under 11 U.S.C. § 547(c)(4).

**AS AND FOR DEFENDANTS' FOURTH AFFIRMATIVE DEFENSE**

30.     The Amended Complaint should be dismissed on the basis that the Debtors received reasonably equivalent value and fair consideration in exchange for the transfers referenced in *Exhibit A* of the Amended Complaint, such that they are not voidable under 11 U.S.C. § 548(a)(1)(B) and N.Y. Debt. & Cred. Law § 273.

**AS AND FOR DEFENDANTS' FIFTH AFFIRMATIVE DEFENSE**

31.     Plaintiff's claims are barred for lack of personal jurisdiction over Defendants in this Court.

**AS AND FOR DEFENDANTS' SIXTH AFFIRMATIVE DEFENSE**

32.     Plaintiff's claims are barred in whole or in part because Plaintiff lacks standing to assert the claims contained in the Amended Complaint.

**AS AND FOR DEFENDANTS' SEVENTH AFFIRMATIVE DEFENSE**

33.     Plaintiff's claims are barred in whole or in part by the applicable statute of limitations.

**AS AND FOR DEFENDANTS' EIGHTH AFFIRMATIVE DEFENSE**

34.     Plaintiff's claims are barred in whole or in part due to insufficiency of process.

**AS AND FOR DEFENDANTS' NINTH AFFIRMATIVE DEFENSE**

35.    Plaintiff's claims are barred in whole or in part due to insufficiency of service of process.

**AS AND FOR DEFENDANTS' TENTH AFFIRMATIVE DEFENSE**

36.    Plaintiff's claims must be dismissed based upon documentary evidence or lack thereof.

**AS AND FOR DEFENDANTS' ELEVENTH AFFIRMATIVE DEFENSE**

37.    Plaintiff's claims are barred by the doctrine of waiver.

**AS AND FOR DEFENDANTS' TWELFTH AFFIRMATIVE DEFENSE**

38.    Plaintiff's claims are barred in whole or in part by the doctrine of res judicata and/or collateral estoppel.

**AS AND FOR DEFENDANTS' THIRTEENTH AFFIRMATIVE DEFENSE**

39.    Plaintiff's claims are barred in whole or in part by the doctrine of laches and/or unclean hands.

**RESERVATION OF RIGHTS**

40.    Defendants reserve all rights to amend this Answer, raise any additional defenses, cross-claims, and third-party claims not asserted herein of which they may become aware through discovery or other investigation, as may be appropriate at a later time.

*                    *                    *

**WHEREFORE**, Defendants respectfully request that this Court enter an order:

(1)    dismissing the Amended Complaint with prejudice;

(2)    awarding Defendants all costs and expenses incurred in defending this action including attorneys' fees as permitted by law; and

(3)    granting such other and further relief as this Court deems just and proper.

7

Dated: New York, New York
      June 9, 2021

                                  **ROSEN & ASSOCIATES, P.C.**
                                  *Counsel to Arvind Walia and*
                                      *Niknim Management Inc.*

                            By:  */s/ Sanford P. Rosen*
                                    Sanford P. Rosen
                                    Paris Gyparakis

                            747 Third Avenue
                            New York, NY 10017-2803
                            (212) 223-1100

8

***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30-page limit do not apply.

### U.S. Bankruptcy Court

### Eastern District of New York

Notice of Electronic Filing

The following transaction was received from Sanford P Rosen entered on 6/9/2021 at 10:15 AM EDT and filed on 6/9/2021

**Case Name:**      Ehrenberg v. Arvind Walia et al
**Case Number:**      8-20-08049-ast
**Document Number:** 23

**Docket Text:**
Answer to Complaint *Answer to First Amended Complaint and Affirmative Defenses* Filed by Sanford P Rosen on behalf of Arvind Walia, Niknim Management Inc. (Rosen, Sanford)

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**Answer to First Amended Complaint.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=979333796 [Date=6/9/2021] [FileNumber=24113663-0]
[2e87920ec7e4553eb024b11df507431b284ee3c328248c0bd3745a4ec1324d844bf3
64490d4294600431ccd457733b7ff262fcad7df45df7c6472f6c706d4c4d]]

**8-20-08049-ast Notice will be electronically mailed to:**

Paris Gyparakis on behalf of Defendant Arvind Walia
pgyparakis@rosenpc.com, gyparakispr81087@notify.bestcase.com

Paris Gyparakis on behalf of Defendant Niknim Management Inc.
pgyparakis@rosenpc.com, gyparakispr81087@notify.bestcase.com

Jeffrey P Nolan on behalf of Plaintiff Howard M Ehrenberg
jnolan@pszjlaw.com, lcanty@pszjlaw.com

Sanford P Rosen on behalf of Defendant Arvind Walia
srosen@rosenpc.com, RosenSR81087@notify.bestcase.com

Sanford P Rosen on behalf of Defendant Niknim Management Inc.
srosen@rosenpc.com, RosenSR81087@notify.bestcase.com

Ilan D Scharf on behalf of Plaintiff Howard M Ehrenberg
ischarf@pszyjw.com, lcanty@pszjlaw.com

**8-20-08049-ast Notice will not be electronically mailed to:**

Jeffrey Norlan on behalf of Plaintiff Howard M Ehrenberg

Case 8-20-08049-ast    Doc 512-2    Filed 05/18/23    Entered 05/18/23 16:54:38

Pachulski Stang Ziehl & Jones LLP
780 Third Avenue
34th Floor
New York, NY 10017

Case 8-20-08049-ast    Doc 512-2    Filed 05/18/23    Entered 05/18/23 16:54:38

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>ORION HEALTHCORP, INC. *et al.*,[1]<br><br>           Debtors. | Chapter 11<br><br>Case No. 18-71748 (AST) |
| HOWARD M. EHRENBERG, IN HIS CAPACITY AS LIQUIDATING TRUSTEE OF ORION HEALTHCORP, INC., ET AL.,<br><br>           Plaintiff,<br>v.<br><br>ARVIND WALIA; NIKNIM MANAGEMENT INC.,<br><br>           Defendants. | Adv. Proc. No. 20-08049 (AST) |

**JOINT STATEMENT OF NON-DISPUTED**
**MATERIAL FACTS AND DEFENDANTS' STATEMENT OF ADDITIONAL FACT**
**PURSUANT TO LOCAL BANKRUPTCY RULE 7056-1**

Pursuant to Rule 7056-1 of the Local Rules for the United States Bankruptcy Court for the Eastern District of New York, Defendants Arvind Walia ("**Walia**") and Niknim Management Inc. ("**Niknim**") (together, "**Defendants**"), by and through their counsel, Rosen & Associates, P.C., and The Law Office of Eugene R. Scheiman, PLLC, respectfully submit this joint statement of non-disputed material facts and Defendants' statement of additional fact.

**I.    THE FOLLOWING IS A LIST OF MATERIAL FACTS AS TO WHICH THERE DOES NOT EXIST A GENUINE ISSUE TO BE TRIED:**

**PROCEDURAL BACKGROUND**

---

[1] The debtors in these chapter 11 cases are: Orion Healthcorp, Inc.; Constellation Healthcare Technologies, Inc.; NEMS Acquisition, LLC; Northeast Medical Solutions, LLC; NEMS West Virginia, LLC; Physicians Practice Plus Holdings, LLC; Physicians Practice Plus, LLC; Medical Billing Services, Inc.; Rand Medical Billing, Inc.; RMI Physician Services Corporation; Western Skies Practice Management, Inc.; Integrated Physician Solutions, Inc.; NYNM Acquisition, LLC; Northstar FHA, LLC; Northstar First Health, LLC; Vachette Business Services, Ltd.; Phoenix Health, LLC; MDRX Medical Billing, LLC; VEGA Medical Professionals, LLC; Allegiance Consulting Associates, LLC; Allegiance Billing & Consulting, LLC; and New York Network Management, LLC.

1.      On March 13, 2020, Howard M. Ehrenberg, in his capacity as Liquidating Trustee of Orion Healthcorp, Inc., et al. ("**Plaintiff**") filed the *Complaint for Avoidance and Recovery of (1) Fraudulent Transfers; (2) Preferential Transfers; (3) Recovery of Avoided Transfers, and (4) Objection to Claim No. 10067 Pursuant to 11U.S.C. §§502, 544, 547, 548, and 550* [Dkt. No. 1] against Defendants.

2.      On June 17, 2020, Defendants filed their *Answer and Affirmative Defenses* to the Complaint [Dkt. No. 6].

3.      On May 21, 2021, the parties filed the *Stipulation and Order re Filing of First Amended Complaint; And Entering of Scheduling Order* [Dkt. No. 19], which was entered by the Court on May 26, 2021 [Dkt. No. 20].

4.      On May 28, 2021, Plaintiff filed the *First Amended Complaint for Avoidance and Recovery of (1) Fraudulent Transfers; (2) Preferential Transfers; (3) Recovery of Avoided Transfers, and (4) Objection to Claim No. 10067 Pursuant to 11U.S.C. §§502, 544, 547, 548, and 550* [Dkt. No. 22].

5.      On June 9, 2021, Defendants filed their *Answer to First Amended Complaint and Affirmative Defenses* [Dkt. No. 23].

6.      On September 21, 2021, the parties filed the *Stipulation Requesting Amendment to Case Management and Discovery Plan* [Dkt. No. 26], which was entered by the Court on October 5, 2021. [Dkt. No. 27].

7.      On December 30, 2021, fact discovery closed.

## THE PARTIES

8.      On March 16, 2018, each of the above-captioned Debtors except New York Network Management, LLC ("**NYNM**") filed a voluntary petition for relief with the United States Bankruptcy Court for the Eastern District of New York under chapter 11 of the Bankruptcy Code.

9.      NYNM filed its voluntary petition on July 5, 2018.

10.     The Debtors' cases were jointly administered for administrative purposes only.

11.     On February 26, 2019, the Honorable Alan S. Trust, Chief United States Bankruptcy Judge for the Eastern District of New York, entered an order [Docket No. 701] confirming the Debtors' Third Amended Joint Plan of Liquidation (the "**Plan**").

12.     The Plan provides, among other things, for the formation of a Liquidating Trust and the appointment of a Liquidating Trustee on the Effective Date to oversee distributions to holders of Allowed Claims and Allowed Interests and to pursue retained Causes of Action of the Debtors' Estates.

13.     The Effective Date occurred on March 1, 2019.

14.     The Plan provides that the Liquidating Trustee shall have the authority and responsibility to, among other things, receive, manage, invest, supervise, and protect the Liquidating Trust Assets, including causes of action.

15.     Plaintiff is the Liquidating Trustee under that certain Liquidating Trust Agreement by and among Orion HealthCorp, Inc. ("**Orion**"), Constellation Healthcare Technologies, Inc. ("**Constellation Healthcare**") and their debtor affiliates.

16.     Walia is the former President and Chief Executive Officer of Orion.

17.     Defendant Niknim Management Inc. ("**Niknim**") is a corporation formed under the laws of the State of New York.

18.     Walia is the sole officer, director, and shareholder of Niknim.

**The Transfers**

19.     On June 23, 2017, and June 28, 2017, one or more of the Debtors  transferred via wire a total of $1,520,000 from the Debtors' Robinson Brog IOLA account to the JP Morgan Chase bank account of NIKNIM.

20.     On or about April 15, 2016, within two (2) years prior to the commencement of the bankruptcy cases, Constellation Healthcare paid Niknim $2,500,000.00.

**First and Second Claims for Relief**

21.     Plaintiff's First and Second Claims for Relief (for fraudulent conveyance) are predicated upon both the Bankruptcy Code and the New York Debtor and Creditor Law ("**NYDCL**")

22.     Plaintiff has invoked the New York Debtor and Creditor Law based upon section 544(b)(1) of the Bankruptcy Code and NYDCL.

II.     **THE FOLLOWING IS A LIST OF DEFENDANTS' STATEMENT OF ADDITIONAL FACT MATERIAL FACTS:**

23.     Plaintiff's First Amended Complaint does not contain an allegation that either transfer at issue is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of the Bankruptcy Code or that is not allowable only under section 502(e) of the Bankruptcy Code.

Dated:  New York, New York
   January 18, 2023

         **ROSEN & ASSOCIATES, P.C.**
         *Counsel to Arvind Walia and Niknim*
         *Management, Inc.*

         By: /s/ Sanford P. Rosen
           Sanford P. Rosen

         747 Third Avenue
         New York, NY 10017-2803
         Tel: (212) 223-1100

         And

         **The Law Office of Eugene R. Scheiman, PLLC**
         *Co-Counsel for Arvind Walia and Niknim*
         *Management, Inc.*
         570 Lexington Avenue, Suite 1600
         New York, NY 10022-6837
         Tel: (646) 280-9000

**PACHULSKI STANG ZIEHL & JONES LLP**
*Counsel to Plaintiff Howard M. Ehrenberg, in his*
*capacity of Liquidating Trustee of Orion Healthcorp, Inc., et al.*

By: /s/ Jeffery P. Nolan
   Jeffery P. Nolan
   780 Third Avenue, 34th Floor
   New York, NY 10017
   Tel: (212) 561-7700

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>ORION HEALTHCORP, INC. *et al*.,<br><br>               Debtors. | Chapter 11<br><br><br>Case No. 18-71748 (AST) |
| HOWARD M. EHRENBERG, IN HIS CAPACITY AS LIQUIDATING TRUSTEE OF ORION HEALTHCORP, INC., ET AL.,<br><br>               Plaintiff,<br><br>v.<br><br>ARVIND WALIA; NIKNIM MANAGEMENT INC.,<br><br><br>               Defendants. | Adv. Proc. No. 20-08049 (AST) |

**ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY**
**JUDGMENT DISMISSING CLAIMS ASSERTED UNDER 11 U.S.C. § 544**

        Upon the motion dated January 18, 2023 (the "**Motion**")[1] of defendants Arvind Walia and Niknim Management Inc. ("**Movants**"), seeking entry of an order granting them partial summary judgment dismissing the claims asserted in Plaintiff's First Amended Complaint under 11 U.S.C. § 544 and such other and further relief as to this Court seems just and proper; and this Court having jurisdiction to consider the Motion and the relief requested therein; and the consideration of the Motion and relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and the Court having determined that the legal and factual bases set forth in the

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

Motion establish just cause for the relief granted herein; and upon all of the proceedings before the Court and after due deliberation and sufficient cause appearing therefor; it is

**ORDERED,** that all unresolved objections to the Motion, if any, are hereby overruled; and it is further

**ORDERED,** the claims asserted in Plaintiff's First Amended Complaint under 11 U.S.C. § 544 be, and the same hereby are, dismissed with prejudice; and it is further,

**ORDERED,** that the Bankruptcy Court shall retain jurisdiction with respect to any issues arising from the implementation of this Order.

**Objection Deadline: February 22, 2023**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| ORION HEALTHCORP, INC.[1] | : | Case No. 18-71748 (AST) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

------------------------------------------------

| | | |
|---|---|---|
| HOWARD M. EHRENBERG IN HIS CAPACITY | : | Adv. Pro. No. 20-08049 (AST) |
| AS LIQUIDATING TRUSTEE OF ORION | : | |
| HEALTHCORP, INC., ET AL., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| ARVIND WALIA; NIKNIM MANAGEMENT, INC., | : | |
| | : | |
| Defendants. | : | |
| | : | |

------------------------------------------------

**NOTICE OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, OR
IN THE ALTERNATIVE, SUMMARY ADJUDICATION AS AGAINST
<u>DEFENDANTS ARVIND WALIA AND NIKNIM MANAGEMENT, INC.</u>**

**PLEASE TAKE NOTICE THAT** Plaintiff, Howard M. Ehrenberg in his capacity as

Liquidating Trustee of Orion Healthcorp, Inc., *et al.*, (the "<u>Plaintiff</u>" or the "<u>Liquidating

Trustee</u>"), for the estates of the above-captioned debtors ("<u>Plaintiff</u>"), by and through his

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification
number, are: Orion Healthcorp, Inc. (7246); Constellation Healthcare Technologies, Inc. (0135); NEMS Acquisition,
LLC (7378); Northeast Medical Solutions, LLC (2703); NEMS West Virginia, LLC (unknown); Physicians Practice
Plus Holdings, LLC (6100); Physicians Practice Plus, LLC (4122); Medical Billing Services, Inc. (2971); Rand
Medical Billing, Inc. (7887); RMI Physician Services Corporation (7239); Western Skies Practice Management, Inc.
(1904); Integrated Physician Solutions, Inc. (0543); NYNM Acquisition, LLC (unknown) Northstar FHA, LLC
(unknown); Northstar First Health, LLC (unknown); Vachette Business Services, Ltd. (4672); Phoenix Health, LLC
(0856); MDRX Medical Billing, LLC (5410); VEGA Medical Professionals, LLC (1055); Allegiance Consulting
Associates, LLC (7291); Allegiance Billing & Consulting, LLC (7141); New York Network Management, LLC
(7168). The corporate headquarters and the mailing address for the Debtors listed above is 1715 Route 35 North,
Suite 303, Middletown, NJ 07748.

attorneys, Pachulski Stang Ziehl & Jones LLP, hereby files *Plaintiff's Motion For Summary Judgment, or in the Alternative, Summary Adjudication as Against Defendants Arvind Walia and NIKNIM Management, Inc*.

      **PLEASE TAKE FURTHER NOTICE THAT** that any responses or objections ("Objections") to the relief requested in the Motion, if any, must conform with the Bankruptcy Code and the Bankruptcy Rules, shall be in writing, shall set forth the nature of the objector's interest in the Debtors' Estates and the reasons and legal basis for the objection, and be served upon counsel for the Plaintiff, Pachulski Stang Ziehl & Jones LLP, 780 Third Avenue, 34th Floor, New York, New York 10017-2024 (Attn.: Jeffrey P. Nolan, Esq.), no later than **February 22, 2023** (the "Objection Deadline").

      **PLEASE TAKE FURTHER NOTICE THAT IF NO RESPONSES TO THE MOTION ARE TIMELY FILED, SERVED AND RECEIVED IN ACCORDANCE WITH THIS NOTICE, THE BANKRUPTCY COURT MAY ENTER THE RELIEF REQUESTED BY THE MOTION WITHOUT FURTHER NOTICE OR HEARING.**

Dated:  January 18, 2023        PACHULSKI STANG ZIEHL & JONES LLP

                      By:    */s/ Jeffrey P. Nolan*
                             Ilan D. Scharf, Esq.
                             Jeffrey P. Nolan, Esq. (admitted *pro hac vice*)
                             780 Third Avenue, 34th Floor
                             New York, New York 10017
                             Telephone:   (212) 561-7700
                             Facsimile:   (212) 561-7777

                             Counsel for the Plaintiff,
                             Howard M. Ehrenberg in his capacity as
                             Liquidating Trustee of Orion Healthcorp, Inc.,
                             *et al*.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑

| | |
|---|---|
| In re: | : Chapter 11 |
| | : |
| ORION HEALTHCORP, INC.[1] | : Case No. 18-71748 (AST) |
| | : |
| Debtors. | : (Jointly Administered) |
| | : |

‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑

| | |
|---|---|
| | : Adv. Pro. No. 20-08049 (AST) |
| | : |
| HOWARD M. EHRENBERG IN HIS CAPACITY AS | : [Joint Separate Statement of |
| LIQUIDATING TRUSTEE OF ORION | : Uncontroverted & Additional Facts; |
| HEALTHCORP, INC., ET AL., | : Plaintiff's Separate Statement of |
| | : Additional Facts; Affidavits of Edith |
| Plaintiff, | : Wong, Frank Lazarra, and Jeffrey |
| | : Nolan; and Request For Judicial |
| v. | : Notice Filed Concurrently Herewith] |
| | : |
| ARVIND WALIA; NIKNIM MANAGEMENT, INC., | : |
| | : |
| Defendants. | : |
| | : |

‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑

## BRIEF IN SUPPORT OF PLAINTIFF'S
## MOTION FOR SUMMARY JUDGMENT, OR IN THE
## ALTERNATIVE, SUMMARY ADJUDICATION AS AGAINST
## <u>DEFENDANTS ARVIND WALIA AND NIKNIM MANAGEMENT, INC.</u>

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Orion Healthcorp, Inc. (7246); Constellation Healthcare Technologies, Inc. (0135); NEMS Acquisition, LLC (7378); Northeast Medical Solutions, LLC (2703); NEMS West Virginia, LLC (unknown); Physicians Practice Plus Holdings, LLC (6100); Physicians Practice Plus, LLC (4122); Medical Billing Services, Inc. (2971); Rand Medical Billing, Inc. (7887); RMI Physician Services Corporation (7239); Western Skies Practice Management, Inc. (1904); Integrated Physician Solutions, Inc. (0543); NYNM Acquisition, LLC (unknown) Northstar FHA, LLC (unknown); Northstar First Health, LLC (unknown); Vachette Business Services, Ltd. (4672); Phoenix Health, LLC (0856); MDRX Medical Billing, LLC (5410); VEGA Medical Professionals, LLC (1055); Allegiance Consulting Associates, LLC (7291); Allegiance Billing & Consulting, LLC (7141); New York Network Management, LLC (7168). The corporate headquarters and the mailing address for the Debtors listed above is 1715 Route 35 North, Suite 303, Middletown, NJ 07748.

# TABLE OF CONTENTS

**Pages**

I.    SUMMARY OF ARGUMENT ......................................................................1

II.   STANDING ...........................................................................................3

III.  PROCEDURAL STATEMENT .................................................................4

IV.   STATEMENT OF FACTS ........................................................................5

    A.    The Parties ...................................................................................5

    B.    The March 2015 Acquisition Of Porteck By The Debtor Misstated The
        Purchase Price In Order To Divert 3MM To Parmar ...............................6

    C.    The April 15, 2016 Transfer Of $2,500,000 To Defendants Based on An
        Email Between Two Insiders .............................................................8

    D.    The June 23, 2017 Transfer Of $1,520,000 To Defendants For The Sale of
        Objecttech To A Non-Debtor Based On A Fabricated Purchase Agreement ............9

    E.    The Debtors CHT And Orion Moved Millions Of Dollars Into The Debtors'
        IOLA Account Including Funds From The CHT Go-Private Transaction ..............11

    F.    At The Time Defendants Received In Excess Of 4MM, Claimants, Lawsuits
        And Judgment Creditors Existed Against The Debtors Orion and CHT Who
        Remained Unpaid At The Petition Date .............................................11

V.    LEGAL STANDARD ON SUMMARY JUDGMENT OR ADJUDICATION ..................12

    A.    The Transfers Were A Diversion Of Funds Of The Debtors And Which
        Could Have Been Used To Pay Judgment Creditors ...............................13

VI.   BOTH THE FIRST AND SECOND TRANSFER ARE AVOIDABLE PURSUANT
    TO §548(A)(1)(A) AND NYDCL AS INTENTIONALLY FRAUDULENT
    CONVEYANCES AS THE BASIS FOR EACH TRANSACTION WERE
    FALSIFIED DOCUMENTS DESIGNED TO MISLEAD CREDITORS ..........................15

    A.    The APA Executed By Parmar and Walia in 2015 Was A Fraudulent
        Document, And The First Transfer Was Designed to Divert Millions To
        The Insiders ...............................................................................18

    B.    The Second Transfer, Resulting In Payment Of $1,520,000 To Defendant
        Walia In 2017, Is An Intentionally Fraudulent Conveyance As The Evidence
        Demonstrates Walia Sold To A Non-Debtor, A Defunct Company, With No
        Earnings As Supported By A Fictitious Purchase Agreement .........................23

    C.    Walia's Refusal To Produce Financial Documents For The Company He
        Claims The Second Transfer Purchased Triggers The Application Of The
        Adverse Inference Doctrine ...........................................................26

VII.    THE TRANSFERS VIOLATE NYDCL §273-A AS CONSTRUCTIVELY
FRAUDULENT TRANSFERS AS JUDGMENT CREDITORS EXISTED BEFORE
THE TRANSFERS AND THE TRANSFERS WERE TO AN OFFICER AND
INSIDER ......................................................................................................................... 27

    A.    The First And Second Transfers Were Not Made For Fair Consideration As
Transfers To Insiders Violate NYDCL 273-a As A Matter Of Law ........................ 29

VIII.   JUDGMENT IS PROPER AGAINST DEFENDANTS WALIA AND NIKNIM AND
BOTH OF THEM ............................................................................................................ 31

    A.    Defendants Walia And NIKNIM Are The Alter Ego Of One Another And
Equity Demands They Be Held Jointly And Severally Responsible For Any
Judgment .................................................................................................................... 32

IX.    CONCLUSION ............................................................................................................... 36

**TABLE OF AUTHORITIES**

<u>Pages</u>

**Cases**

*Adelphia Recovery Trust v. Bank of Am., N.A.*
   624 F. Supp. 2d 292 (S.D.N.Y. 2009) ..................................................... 18

*Adickes v. S.H. Kress & Co.*
   398 U.S. 144, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970) ........................... 13

*Am. Media, Inc. v. Bainbridge & Knight Labs., LLC*
   135 AD3d 477, 22 N.Y.S.3d 437 (1st Dept 2016 ..................................... 30

*Anderson v. Liberty Lobby, Inc.*
   477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) ......................... 13

*Andrew Velez Constr., Inc. v. Consol. Edison Co. of N.Y., Inc. (In re Andrew Velez
   Constr., Inc.)*
   373 B.R. 262 (Bankr. S.D.N.Y. 2007) .................................................... 17

*Angelo Tomasso, Inc. v. Armor Construction & Paving, Inc.*
   187 Conn. 544, 447 A.2d 406 (1982) ...................................................... 34

*Anstine v. Carl Zeiss Meditec AG (In re U.S. Medical, Inc.)*
   531 F.3d 1272 (10th Cir. 2008) ............................................................... 30

*AQ Asset Mgt. LLC v. Levine*
   2013 N.Y. Misc. LEXIS 2054, *28 (N.Y. Sup. Ct., Mar. 28, 2013) .......... 21

*Austin Powder Co. v. McCullough*
   216 A.D.2d 825, 628 N.Y.S.2d 855 (N.Y. App. Div. 1995) ..................... 35

*Baby Phat Holding Co., LLC v Kellwood Co.*
   123 AD3d 405, 997 N.Y.S.2d 67 .................................................... 32, 34

*Balmer v. 1716 Realty LLC*
   No. 05 CV 839 (NG)(MDG), 2008 U.S. Dist. LEXIS 38113, 2008 WL 2047888
   (E.D.N.Y. May 9, 2008) .......................................................................... 35

*Bayou Accredited Fund, LLC v. Redwood Growth Partners, L.P. (In re Bayou Group, LLC)*
   396 B.R. 810 (Bankr. S.D.N.Y. 2008) .................................................... 17

*Begier v. IRS*
   496 U.S. 53, 110 S. Ct. 2258, 110 L. Ed. 2d 46 (1990) ........................... 14

*Berlenbach v. Bischoff*
   137 Misc. 719, 244 N.Y.S. 369, 371 (N.Y.Sup.Ct. Spec. Term 1930) ...... 19

*Berman v. Pavano (In re Michael S. Goldberg, LLC)*
   2020 Bankr. LEXIS 2314, 22 (Bankr. Conn. 2020 ................................. 29

*Berner Trucking, Inc. v. Brown*

    281 AD2d 924, 722 N.Y.S.2d 656 (1st Dept. 2001) ...................................................29

*Boyer v. Carlton, Fields, Ward, Emmanuel, Smith & Cuter, P.A.*
    *(In re USA Diversified Prods., Inc.)*
    100 F.3d 53 (7th Cir. 1996) ......................................................................................14

*Brown v. Dellinger (In re Brown)*
    734 F.2d 119 (2d Cir. 1984) .....................................................................................14

*Bruno Mach. Corp. v. Troy Die Cutting Co. (In re Bruno Mach. Corp.)*
    435 B.R. 819 (N.D. NY, 2010) .................................................................................17

*Cadle Co. v. Newhouse*, No. 01 CIV. 1777 (DC), 2002 U.S. Dist. LEXIS 15173, 2002 WL 1888716
    (S.D.N.Y. Aug. 16, 2002), aff'd, 74 F. App'x 152 (2d Cir. 2003) .............................28

*Christian Bros. High Sch. Endowment v. Bayou No Leverage Fund, LLC*
    *(In re Bayou Group, LLC)*
    439 B.R. 284 (S.D.N.Y. 2010) .................................................................................16

*City of Almaty v. Ablyazov*
    2019 U.S. Dist. LEXIS 55183, *14 (Bankr. S.D.N.Y. 2019) ....................................32

*Consove v. Cohen (In re Roco Corp.)*
    701 F.2d 978 (1st Cir. 1983) .....................................................................................31

*DER Travel Servs. v. Dream Tours & Adventures*
    No. 99 Civ. 2231 (HBP), 2005 U.S. Dist. LEXIS 25861, 2005 WL 2848939
    (S.D.N.Y. Oct. 28, 2005) ..........................................................................................35

*Deutsche Financial Services Corp. v. Osborne (In re Osborne)*
    257 B.R. 14 (Bankr. C.D. Cal. 2000) .......................................................................26

*Dixie Yarns, Inc. v. Forman*
    906 F. Supp. 929 (S.D.N.Y. 1995) ...........................................................................28

*EAC of N.Y., Inc. v. Capri 400, Inc.*
    49 AD3d 1006, 853 N.Y.S.2d 419 (3d Dept. 2008) .................................................30

*East Hampton Union Free School Dist. v Sandpebble Bldrs., Inc.*
    66 AD3d 122, 884 NYS2d 94 (2009) .......................................................................32

*Employees' Ret. Sys. of Gov't of the Virgin Islands v. Blanford*
    794 F.3d 297 (2d Cir. 2015) .....................................................................................18

*Farm Stores, Inc. v. Sch. Feeding Corp.*
    102 A.D.2d 249, 477 N.Y.S.2d 374 (2d Dept.1984) ................................................30

*FBI Wind Down Inc. Liquidating Trust v. All Am. Poly Corp. (In re FBI Wind Down, Inc.)*
    581 B.R. 116 (Bankr. DE, 2018) ..............................................................................15

*First Horizon Bank v. Moriarty-Gentile*
    2015 U.S. Dist. LEXIS 165695, *20 (Bankr. E.D.N.Y, 2015) ..................................33

DOCS_LA:346945.4 65004/003
         iv
         77

*Friehling v. Nielson (In re F & C Servs., Inc.)*
  44 B.R. 863 (Bankr. S.D. Fla. 1984) ...................................................................31

*Gardiners Bay Landscape v. Postiglione (In re Postiglione)*
  2019 Bankr. LEXIS 1887, *10 (Bankr. E.D.N.Y 2019)...........................................34

*Geltzer v. Soshkin (In re Brizinova)*
  588 B.R. 311 (Bankr. EDNY, 2018) ....................................................................15

*Golden State Bottling Co. v. NLRB*
  414 U.S. 168, 94 S.Ct. 414, 38 L.Ed.2d 388 (1973)................................................26

*Gonzales v. Albuquerque Tortilla Co. (In re Furrs Supermarkets, Inc.)*
  2008 Bankr. LEXIS 946,*26 (Bankr. N.M. 2008) ..................................................26

*Grace v. BankLeumi Trust Co. of N.Y.*
  443 F.3d 180 (2d Cir. 2006) ..............................................................................27

*Greenidge v. HRH Constr. Corp.*
  279 A.D.2d 400, 720 N.Y.S.2d 46 (1st Dept. 2001) ...............................................35

*HBE Leasing Corp. v. Frank*
  48 F.3d 623 (2d Cir. 1995) ................................................................................30

*HBE Leasing Corp. v. Frank*
  61 F.3d 1054 (2d Cir. 1995) ..............................................................................17

*In re Actrade Fin. Techs. Ltd.*
  337 B.R. 791 (Bankr. SDNY 2005)......................................................................22

*In re Bruce*
  2005 Bankr. LEXIS 3085, *45 (Bankr. Mon. 2005) ...............................................26

*In re Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*
  2017 Bankr. LEXIS 4145 ..................................................................................15

*Keller v. Keller (In re Keller)*
  185 B.R. 796 (9th Cir. BAP 1995) ......................................................................14

*Kiobel v. Royal Dutch Petroleum*
  621 F.3d 111 (2d Cir. 2010) ..............................................................................32

*Korea Deposit Ins. Corp. v. Mina Jung*
  59 Misc. 3d 442 (Sup. Ct., New York County, 2017)..............................................21

*Kramer v. Mahia (In re Khan)*
  2014 Bankr. LEXIS 4205 (Bankr. E.D.N.Y. 2016)..................................................28

*Krohn v. Orta*
  153 B.R. 391 (E.D.N.Y., 1993) ..........................................................................20

*Leonard v. Coolidge, (In re Nat'l Audit Def. Network)*
  367 B.R. 220 (Bankr. S.D.N.V, 2022)..................................................................31

*Lyman Commerce Solutions, Inc. v. Lung*
  2015 U.S. Dist. LEXIS 51447, 2015 WL 1808693, at *5
  (S.D.N.Y. Apr. 20, 2015)..................................................................................................27, 29

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
  475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).....................................13

*Matter of Morris v New York State Dept. of Taxation & Fin.*
  82 NY2d 135, 623 NE2d 1157, 603 NYS2d 807 (1993)................................................32

*Mellon Bank v. Official Comm. of Unsecured Creditors (In re R.M.L., Inc.)*
  92 F.3d 139 (3d Cir. 1996) ............................................................................................22

*Millennium Constr., LLC v Loupolover*
  44 AD3d 1016, 1016-1017, 845 NYS2d 110 (2007).....................................................32

*Mitchell v. Garrison Protective Servs., Inc.*
  579 F. App'x 18 (2d Cir. 2014).......................................................................................28

*New York Dist. Council of Carpenters Pension Fund v. KW Const., Inc.*
   2008 U.S. Dist. LEXIS 40517, 2008 WL 2115225 ......................................................25

*Nisselson v. Salim (In re Big Apple Volswagen, LLC)*
  2016 Bankr. LEXIS 834, *29 (Bankr. S.D.N.Y, 2016)...........................................13, 14

*Orr v. Kinderhill Corp.*
  991 F.2d 31 (2d Cir. 1993) .............................................................................................16

*P.R. Mallory Co. v. NLRB*
  400 F.2d 956 (7th Cir.1968), cert. denied, 394 U.S. 918,
  89 S.Ct. 1191, 22 L. Ed. 2d 432, 22 L.Ed.2d 452 (1969)............................................26

*People v. Hankin*
  175 Misc. 2d 83, Ft 4 (Crim Ct Kings County 1997) ...................................................21

*Picard v. Merkin (In re Bernard L. Madoff Inv. Secs. LLC)*
  2011 U.S. Dist. LEXIS 97647 (S.D.N.Y. 2011)............................................................16

*Picard v. Taylor (In re Park S. Secs., LLC)*
  326 B.R. 505 (Bankr. S.D.N.Y. 2005)...........................................................................17

*Prabir v. Bukhara Indian Cuisine, Inc.*
  2018 U.S. Dist. LEXIS 94563, *9 (S.D.N.Y. 2018).....................................................23

*Priestley v. Panmedix Inc.*,
  18 F. Supp. 3d 486, 497 (S.D.N.Y. 2014) .....................................................................27

*Rovo by Ravo v. Rogatnick*
  70 N.Y.2d 305, 514 N.E.2d 1104, 520 N.Y.S.2d 533, 538 (1987)...............................35

*Salim v. VW Credit, Inc.*
  577 B.R. 615 (E.D.N.Y. 2017) ......................................................................................20

*Salomon v. Kaiser (In re Kaiser)*
    722 F.2d 1574 (2d Cir. 1983). ................................................. 21

*Sardis v. Frankel*
    113 AD3d 135, 978 N.Y.S.2d 135 (1st Dept 2014 ................................. 29

*Schnelling v. Crawford (In re James River Coal Co.)*
    360 B.R. 139, 2007 Bankr. LEXIS 159, 2007 Westlaw 438244, at 13
    (Bankr. E.D. Va., Feb. 8, 2007) ................................................ 31

*Sharp Int'l Corp. v. State St. Bank & Trust Co.*
    403 F.3d 43 (2d Cir. 2005) ................................................... 30

*State Farm Mut. Auto Ins. Co. v. Grafman,*
    No. 04-cv-2609(NG) (SMG), 2017 US Dist. LEXIS 154290,
    2017 WL 4217122 (E.D. N.Y. Sept. 221, 2017 ................................... 14

*Tronox v. Anadarko Petroleum (In re Tronox Inc.)*
    429 B.R. 73 (Bankr. S.D.N.Y. 2010) ........................................... 22

*U.S. v. Spencer*
    2012 U.S. Dist. LEXIS 142195, 2012 WL 4577927 at *7 ......................... 23

*United States v. McCombs*
    30 F.3d 310 (2d Cir. 1994) ................................................... 21

*Wells Fargo Bank, N.A. v. Nat'l Gasoline, Inc.*
    577 Fed. Appx. 58, 60 (2nd Cir. 2014) ................................... 35

*Westchester Cnty. v. Welton Becket Assocs.*
    102 A.D.2d 34, 478 N.Y.S.2d 305, 315 (2d Dep't 1984) ......................... 35

*Wimbledon Fin. Master Fund v. Wimbledon Fund, SPC*
    2016 N.Y. Misc. LEXIS 4805, *16, 2017 WL 3024259 ............................. 22

## Statutes

11 U.S.C. §101(31)(B) .............................................................. 30

11 U.S.C. §502 ..................................................................... 5

11 U.S.C. §541(a)(1) .............................................................. 13

11 U.S.C. §544 ............................................................. 5, 14, 16

11 U.S.C. §547 ............................................................. 5, 14, 17

11 U.S.C. §548 .............................................................. passim

11 U.S.C. §550 ............................................................... 5, 16

11 U.S.C. §551 .................................................................. 16

## Other Authorities

13 Romualdo P. Eclavea, Carmody-Wait 2d New York Practice with Forms
§§ 85-29 & 85-30 (2002) .......................................................................................... 19

N.Y. Debt. & Cred. Law § 273 ............................................................................... passim

N.Y. Debt. & Cred. Law §276 ........................................................................ 16, 21, 36

N.Y. Debt. & Cred. Law 272 ........................................................................................ 30

N.Y. Jud. Law § 497(1) ................................................................................................. 14

## Rules

Fed R. Civ. Proc. 56 .................................................................................................. 1, 12

Fed. R. Bankr. P. 2056 ............................................................................................... 5, 12

This Brief is filed pursuant to Fed R. Civ. Proc. 56 (a) and (d), by Plaintiff, Howard M. Ehrenberg in his capacity as Liquidating Trustee of Orion Healthcorp, Inc., *et al.* (the "Plaintiff" or the "Liquidating Trustee"), in support of Plaintiff's Motion For Summary Judgment, Or In The Alternative, Summary Adjudication (the "Motion"), with supporting documents filed concurrently herewith as against Defendants Arvind Walia and NIKNIM Management, Inc. (the "Defendants").

**I.**

**SUMMARY OF ARGUMENT**

1.     In March 2015, as part of selling his solely controlled company, Porteck Corporation ("Porteck") to the Debtor, Defendant Arvin Walia ("Walia") agreed to misstate the purchase price which enabled Paul Parmar ("Parmar") to divert $3,000,000 to himself.   As long as Walia got what he was owed for Porteck, which was $6,800,000 for assets with a stated acquisition value of $1,824,000, Walia admits he was good with looking the other way.  One year later on April 15, 2016, Walia installed by Parmar as the CEO of the Debtor OrionHealth Corp. Inc. ("Orion") and the Chief Technology Officer of Constellation Health Technologies, Inc. ("CHT") received another payment this time for $2,500,000 (the "First Transfer").  The Trustee challenges the First Transfer as an intentionally fraudulent conveyance as the purchase agreement from 2015 was designed to conceal and mislead creditors.  Walia claims he was owed the First Transfer in satisfaction of an antecedent debt outlined in Section 1.6(e) of the same fraudulent asset purchase agreement he executed with Parmar in 2015.  Section 1.6(e) required an escrow be established and funded on condition of certain events occurring.  However, the facts are not in dispute that no escrow was established, no funds deposited into escrow, and the First Transfer made the same day as Parmar advised Walia, the CEO of Orion, that he would forward payment if Walia would again

look the other way.  The explanation proffered by Walia is refuted by the documents and does not support the claim of an antecedent debt.

2.      The Motion also seeks to recover a payment of $1,520,000, made on June 23 and June 28, 2017 (collectively the "Second Transfer"), as an intentionally fraudulent conveyance, based off yet another fraudulent purchase agreement entered between Parmar and Walia.  The purchase agreement contained fabricated asset, earnings and capital schedules.  A due diligence report to support the sale prepared by Walia and Parmar was filled with fictitious figures which the duo never completed.  In fact, the deal was conceived so hastily, Parmar asked Walia only weeks prior for the identity of the company and what it produced.  The Debtor paid for membership interests of a shell company owned by Walia, Objecttech Holdings, LLC ("Objecttech"), which was given to a non-debtor third party.

3.      With respect to both Transfers, the Debtors' books and records evidence no legitimate debt, no satisfaction of an antecedent debt, or increase in net assets as a result of the Transfers. Preparation of false and misleading documents or the reckless indifference to the truth of what was prepared is intentional fraud in New York and under federal law.  Walia's explanation that Parmar was to blame is not a legally cognizable defense especially in light of Defendants' participation in both schemes and enrichment.

4.      During the time frame of 2016 and 2017, the Debtors were subject to multiple lawsuits wherein legitimate creditors were forced to sue CHT and Orion to obtain judgments. These lawsuits and judgments went unsatisfied as they were stayed after the filing of the petition in bankruptcy by the debtors.

5.      The Trustee also challenges both Transfers as constructively fraudulent conveyances.  Insiders are not allowed to elevate their interests above legitimate creditors. New York Debt and Creditor Law ("NYDCL") stigmatizes as constructively fraudulent under NYDCL §273-a, conveyances made between a Debtor and its officers/insiders where lawsuits and judgment creditors exist at the time of the transfer.  It is an undisputed fact Walia was an insider and an officer of both Orion and CHT.  Transfers to officers/insiders are not made in "good faith" when lawsuits and judgments exist and the Transfers are constructively fraudulent as a matter of law.

6.      Defendants' myriad of twisting self-serving explanations are not a cognizable defense.   Documents that are the basis for the Transfers are replete with mistruths and inaccuracies designed to conceal Parmar's diversion of millions of dollars from the estate.  The Motion is ripe for determination.

## II.

## STANDING

7.      On March 16, 2018, each of the Debtors except New York Network Management, LLC ("NYNM") filed a voluntary petition (the "Petition Date") with the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court") under chapter 11 of the Bankruptcy Code (NYNM commenced its voluntary petition on July 5, 2018) (collectively, the "Debtors).  The Debtors' cases are jointly administered for administrative purposes only.  [Dkt. Nos. 34 and 381]

8.      On February 26, 2019, the Honorable Alan S. Trust, United States Bankruptcy Judge for the Eastern District of New York, entered an order (the "Confirmation

Order") [Dkt. No. 701] confirming the Debtors' Third Amended Joint Plan Of Liquidation (the "Plan").

9.     The Plan provides, among other things, for the formation of the Liquidating Trust and the appointment of the Liquidating Trustee on the Effective Date (as that term is defined in the Plan) to oversee distributions to holders of Allowed Claims and Allowed Interests and to pursue retained Causes of Action of the Debtors' Estates.  The Effective Date occurred on March 1, 2019.

10.     The Plan provides that the Liquidating Trustee shall have the authority and responsibility to, among other things, receive, manage, invest, supervise, and protect the Liquidating Trust Assets, including causes of action, of the Debtors as well as making distributions to creditors with Allowed claims.  (Plan, §6.3)

### III.

### PROCEDURAL STATEMENT

11.     Plaintiff filed the complaint (the "Complaint") in this action on March 13, 2020.  [Dkt. No. 1]  The Complaint sought to recover alleged intentional and constructively fraudulent transfers under applicable provisions of the Bankruptcy Code and New York Debt and Creditor Law ("NYDCL").

12.     On May 21, 2021 the Parties filed the Stipulation and Order re: Filing of First Amended Complaint; And Entering of Scheduling Order [Dkt. No. 19], which was entered by the Court on May 26, 2021. [Dkt. No. 20]

13.     On May 28, 2021, Plaintiff filed its First Amended Complaint For Avoidance and Recovery of (1) Fraudulent Transfers; (2) Preferential Transfers; (3) Recovery of Avoided

Transfers, and (4) Objection to Claim No. 10067 Pursuant to 11 U.S.C. §§502, 544, 547, 548, and 550.  [Dkt. No. 22]  On June 9, 2021, Defendants filed their Answer to First Amended Complaint and Affirmative Defenses.  [Dkt. No. 23]

14.    On September 21, 2021 the Parties filed the Stipulation Requesting Amendment to Case Management and Discovery Plan [Dkt. No. 26], which was entered by the Court on October 5, 2021. [Dkt. No. 27] On December 30, 2021, fact discovery closed.

15.    The parties participated in mediation but did not reach a resolution. [Dkt. No. 41]  Expert discovery closed on October 10, 2022. [Dkt. No. 41]

16.    Pursuant to 7056-1(a), Plaintiff requested permission from the Court to file a motion for summary judgment or summary adjudication. [Dkt. No. 45]  At the Pre-trial Hearing, the Court heard and granted Plaintiff's request to move for summary judgment on certain causes of action.

### IV.

### <u>STATEMENT OF FACTS</u>

17.    Based upon the affidavits attached to the Motion, the documents submitted herewith, the Request for Judicial Notice and the pleadings in this case, there is no genuine issue concerning the following material facts:

**A.    The Parties**

18.    The Debtors were a consolidated enterprise of several companies aggregated through a series of acquisitions which operated in the healthcare sector primarily in revenue and practice management for physician practices.  (*See* Joint Statement of Uncontroverted Facts ("<u>JSOF</u>") #1)

19.     Defendant Walia resides in the State of New York and does business in New

York.  Defendant NIKNIM Management, Inc. ("NIKNIM") is a Limited Liability Corporation.

NIKNIM was incorporated in 2015, and at all times Walia owned, managed and acted as the sole

employee of NIKNIM for the purpose of investing Walia's monies and the monies of his family

trust.  (JSOF #8, 9) NIKNIM's principle place of business is Walia's residence. (JSOF #5)

**B.      The March 2015 Acquisition Of Porteck By The Debtor Misstated The Purchase Price
          In Order To Divert 3MM To Parmar**

20.     Parmar and Defendant Walia met in 2011 at Parmar's Colts Neck residence

years prior to the Transfers at issue in the Complaint.  (JSOF #25) According to Walia, in late 2014,

Parmar was looking to acquire a medical billing company and interested in purchasing Porteck.

(JSOF #26)  Porteck was a technology services company in the healthcare industry incorporated,

owned and controlled by Walia who acted as its CEO. (JSOF #27)  Porteck consisted of two

business lines: (a) AHMS and (b) PC Advantage ("PCA"), both medical billing companies Porteck

acquired prior to 2015. (JSOF #40)

21.     On December 1, 2014, Parmar characterized Porteck as "a joke" to his broker

as Porteck had acquired PCA only one month prior to December and a portion of its revenue was

from India. See Additional Statement of Fact ("ASOF"), #84)  At the time of the acquisition of

Porteck, the net asset value of AHMS was **1.35MM** as calculated by total assets of $2,350,000 less

a 1MM liability (a promissory note) paid off by the Debtor at acquisition.  (JSOF #41)  The value of

acquired total assets of PCA in 2014 was equal to $2,546,246.55. (JSOF #43)  However, Porteck

funded the acquisition of PCA with 1.9MM in loans which loans the Debtor paid off or took over

payment of at the time of acquisition in 2015. (JSOF #44)  The net asset value of PCA recorded at

time of purchase by the Debtor was **$474,000.** (JSOF #45)  The recorded value of Porteck in February 2015 was $1,824,000.

22.    Walia retained a broker, Abstract Business Advisors ("Abstract"), to sell Porteck. (JSOF #29) Notwithstanding the comment of Parmar, the Debtor acquired Porteck in February 2015. On February 20, 2015, Abstract documented the sale of Porteck to the Debtor as a purchase price of **7.8MM**, with 5.5MM to be paid in cash to Defendants at closing. (JSOF #30) According to Walia, the purchase price of Porteck to the Debtor was **10.8 MM**.  (JSOF# 32)  On March 2015, Walia on behalf of the sellers, Walia, the Walia Trust and the Janaminder Trust, sold Porteck to the Buyer, Debtor, Physicians Practice Plus, LLC, and ("PPP") as executed by Paul Parmar. (JSOF #33)   As memorialized by the Asset Purchase Agreement ("APA"), the purchase price is reflected as **12.8MM**. (JSOF #35) The Walia Trust never signed the APA. (JSOF #34)

23.    Walia testified that Parmar misstated the purchase price to Abstract because Parmar told Walia "he could get a better deal for us". (JSOF #31) Walia testified that Parmar told him he needed to add 2MM in additional deal fees to the APA. (JSOF #36) Representing the purchase price as 12.8MM rather than 10.8MM did not concern Walia as long as Walia's share of the purchase price did not change. (JSOF #37)

24.    Bank records memorialize the wire in of **9.8MM** by the Debtor CHT to the IOLA Account for the closing of the Porteck sale.  (ASOF #85) According to the IOLA Account, 3MM of the purchase price was paid to First United Health ("FUH"), a Parmar controlled entity, and 6.8MM was disbursed to Walia in accordance with the closing documents. (ASOF #86, 87 )

Approximately 7MM in total consideration was disbursed to the sellers of Porteck at the closing. (JSOF #39)

25.    Following the acquisition of Porteck, Walia served as the Chief Executive Officer ("CEO") of the Debtors' main operating company, Orion, and the Chief Technology Officer ("CTO") of the Debtor CHT from June 2015 until his departure in the Fall of 2018. (JSOF #4)

26.    During Wala's tenure as an officer of CHT and Orion, CHT purportedly acquired MDRX Medical Billing, LLC ("MDRX") and its businesses for 28MM on February 10, 2016.  (JSOF #20) MDRX was a sham transaction as it had no assets, employees, and conducted no business.  (JSOF #21)  Ted Brindamour ("Brindamour") of Sage Consulting, a company owned by Parmar's brother-in-law Salil Sharma, prepared the due diligence reports to support each acquisitions by the Debtors.  (JSOF #53) Brindamour prepared the due diligence reports to support the two acquisitions in the present adversary. (JSOF ##52-54)

**C.    The April 15, 2016 Transfer Of $2,500,000 To Defendants Based on An Email Between Two Insiders**

27.    On April 15, 2016, one year later, Parmar issued an email to Walia stating, "I am willing to give you 3.5MM in return for you to allow me to structure it properly internally which requires I close the file with a 2M payment." (ASOF #90)

28.    On April 15, 2016, the Debtor CHT transferred 2.5MM via wire from the M&T bank account of CHT to the JP Morgan Chase bank account of Defendant NIKNIM at the direction of Walia (the "First Transfer"). (JSOF ##6, 17)

29.    Walia asserts the 2.5MM Transfer was paid to him by CHT pursuant to section 1.6(e) of the APA. (JSOF #47) Section 1.6(e) of the APA references the establishment of an

escrow account, escrow agreement and monies to be deposited into escrow in 2015. (See Aff. of

Wong, §9, Ex. F)  No escrow was established in 2015 by the parties to the APA and no monies

deposited in escrow. (JSOF #48)  No escrow agreement was executed by Walia and Parmar and no

discussion between Walia and Parmar to select an escrow. (JSOF #48, 49)  According to Section

1.6(b), all sums owed to Defendant were to be disbursed at closing (JSOF #46)

     30.    At year-end, December 31, 2015, the Debtors' books and records did not

evidence a 2.5MM antecedent debt owed to any of the sellers of Porteck. (ASOF #88) The Debtors'

books and records do not evidence the satisfaction of an antecedent debt or increase in net assets as

a result of the Debtors' payment of 2.5MM to Defendants on April 15, 2016. (ASOF #89)

**D.    The June 23, 2017 Transfer Of $1,520,000 To Defendants For The Sale of Objecttech
To A Non-Debtor Based On A Fabricated Purchase Agreement**

     31.    According to Walia, he agreed in 2017 to sell Parmar a software company he

owned, AllRad Direct, LLC ("AllRad"). (JSOF #50)   Objecttech, a shell company owned by

Walia, allegedly controlled AllRad. (JSOF #50)

     32.    On May 17, 2017, Brindamour forwarded to Parmar and Walia a draft Due

Diligence Findings Report ("Due Diligence Report") dated May 18, 2017 which was incomplete.

(JSOF #52)  Brindamour wanted Walia to insert the factual information with respect to AllRad, its

operations and assets. (JSOF #54)

     33.    On May 31, 2017, Walia emailed Parmar to push forward the acquisition of

Objecttech. (JSOF #55)  Parmar responded and asked Walia "who was the company to be acquired

and what product did it make". (JSOF #56)  On the same day, Walia forwarded to Parmar the draft

Due Diligence Report and asked for a contract. (JSOF #57)   Parmar responded that "accurate

figures" be inputted into the Due Diligence Report. (JSOF #58)  Parmar reached out to the law firm of Robinson Brog same day and directed they quickly create a shell company. (ASOF #93)  Neither Parmar nor Defendant considered any other competing software or put the contract out for a competitive bid.  (JSOF #70)

34.     On June 8, 2017, Walia advised Parmar he may need to convert the agreement to an asset purchase agreement as he was meeting his accountants.  (JSOF #63)

35.     On June 15, 2017, Walia advised Parmar the price for the acquisition was 1.52MM. (JSOF #64) Walia was attempting to maximize the price the Debtor would have to pay for AllRad. (JSOF #65)  The sale was memorialized by a Membership Interests Purchase Agreement ("MIPA') dated June 2017, between Objecttech, seller, and Physicians Healthcare Network Management Solutions, LLC ("PHNMS"), the buyer.  (JSOF #51)  PHNMS is a non-debtor entity. (JSOF #67)  The various schedules referenced throughout the MIPA for the acquisition of AllRad were never completed or attached to the MIPA. (JSOF ##61-62)  No revenue projections, working capital, balance sheets or statement of assets and liabilities referenced in the MIPA were attached. (JSOF ##62, 68)  The Orion board of directors' resolution approving the sale, as required by the MIPA, was never obtained. (JSOF #69)  The Due Diligence report was never finalized. (JSOF #60)

36.     On June 23, 2017, and June 28, 2017, the Debtors transferred via wire $1,520,000 from its Robinson Brog IOLA account (the "IOLA Account") to the JPMorgan Chase bank account of NIKNIM (collectively the "Second Transfer"). (JSOF #7)[2]

37.     For 2017, the Debtor's books and records do not evidence a $1,520,000 antecedent debt owed to Defendants to acquire Objecttech or AllRad. (ASOF #91) In 2017, the

---

[2] The First Transfer and the Second Transfer are referenced collectively as "the Transfers."

Debtor's books and records do not evidence the satisfaction of any antecedent debt or increase in net assets through the acquisition of an asset such as Objecttech, AllRad or PHNMS for $1,520,000. (ASOF #92)

**E.      The Debtors CHT And Orion Moved Millions Of Dollars Into The Debtors' IOLA Account Including Funds From The CHT Go-Private Transaction**

38.      For the fiscal year 2014, the 23MM borrowed by Orion was deposited and appeared in the IOLA Account which debt was reflected in the audited Consolidated Financial Statements of the Debtors as "net proceeds from long term debt". (ASOF #78)  On February 19, 2016, $5,058,408.81, was transferred out of the Debtor CHT's bank account and deposited into the IOLA Account (ASOF #79)   On August 10, 2016, $12,740,000 was transferred out of the Debtor CHT's bank account and deposited into the IOLA Account. (ASOF #80)  To fund the Go-Private Transaction, a Credit Agreement was entered into with BOFA wherein BOFA advanced 130MM to the Debtors.  (JSOF #22) The Credit Agreement with BOFA was executed by all the Debtors and was secured by substantially all the Debtors' assets.  (JSOF #23)  BOFA is the Debtors' largest creditor with an outstanding secured claim in the amount of $158,200,710.89.  (JSOF #24)  On March 10, 2017, $5,590,000 was transferred out of the Debtor Orion's bank account to the IOLA Account. (ASOF #81)

39.      On January 30, 2017, approximately 46MM that resulted from the CHT Go-Private Transaction was transferred into the Debtors' IOLA Account and listed under a line item that states "Constellation Health/CHT Closing".  (ASOF #82)

**F.    At The Time Defendants Received In Excess Of 4MM, Claimants, Lawsuits And Judgment Creditors Existed Against The Debtors Orion and CHT Who Remained Unpaid At The Petition Date**

40.    On December 16, 2015, the United States District Court for the Southern District of Texas issued a Judgment in the amount of $194,185 against Debtor Orion in favor of former employees Jack McBride and Alan Nottingham for unpaid deferred compensation.  (JSOF #73)  The Judgment was filed as a proof of claim in Case 8-18-71748, and assigned claim no. 10001.  (JSOF #73)  The filed claim remained unsatisfied as of the Petition Date.  (JSOF #73)

41.    On February 29, 2016, Plaintiff Cockerell Dermatopathology filed a complaint, case no. DC-16-02365, against the Debtors Medical Billing Services, Inc. and Orion in the District Court of Dallas County, Texas for monetary relief in excess of 1MM. (JSOF #71) On March 23, 2018, a Suggestion of Bankruptcy of the Debtors was filed in the District Court of Dallas County, Texas advising of the triggering of the automatic stay of the proceedings. (JSOF #72)

42.    On March 9, 2016, a lawsuit was initiated in the Supreme Court of the State of New York by Criterions, LLC, against Debtors PPP and CHT.  (JSOF #74)  Judgment was entered on November 30, 2017, against Debtors PPP and CHT in the amount of $77,767.26.  (JSOF #75)  On March 23, 2018, a Suggestion of Bankruptcy was filed by the Debtors to stay the proceedings in state court.  (JSOF #76)

## V.

## LEGAL STANDARD ON SUMMARY JUDGMENT OR ADJUDICATION

43.    Pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure, Rule 56 of the Federal Rules of Civil Procedure is applicable to this adversary proceeding.  Under Rule 56, summary judgment shall be granted "if the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law.  The moving party

bears the burden of demonstrating the absence of any genuine issue of material fact, and all

inferences to be drawn from the underlying facts must be viewed in the light most favorable to the

party opposing the motion".  *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L.

Ed. 2d 142 (1970).  However, once there is a showing of the absence of an issue of fact, the

opposing party must produce specific evidence that raises a genuine issue.  *Matsushita Elec. Indus.*

*Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).  A

fact is "material" if it might affect the outcome of the suit under the governing substantive law, and

"summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*

*v. Liberty Lobby, Inc*., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

44.    Summary judgment is designed to pierce the pleadings and expose arguments

not supported by the law or lacking evidentiary support.  The Motion is ripe for determination.

**A.    The Transfers Were A Diversion Of Funds Of The Debtors And Which Could Have Been Used To Pay Judgment Creditors**

45.    Monies in the CHT and Orion bank accounts transferred into the IOLA

Account prior to the Transfers could have satisfied legitimate creditors forced to file lawsuits and

obtain judgments.  Instead, these monies went to insiders such as Defendant who now proffer

fairy-tale explanations for receiving the funds.

46.    Section 541(a)(1) of the Bankruptcy Code's broad definition of "[p]roperty of

the estate" includes "all legal and equitable interests of the debtor in property *wherever located or*

*by whomever held*." [Emphasis added] 11 U.S.C. §541(a)(1); *Nisselson v. Salim (In re Big Apple*

*Volkswagen, LLC)*, 2016 Bankr. LEXIS 834, *29 (Bankr. S.D.N.Y, 2016). "The phrase 'all legal or equitable interests of the debtor in property' has been given the broadest possible interpretation and the term equitable interest has generally not been interpreted as limited to a debtor's equity in property." See *Brown v. Dellinger (In re Brown)*, 734 F.2d 119, 123 (2d Cir. 1984). The §544(b) requirement of a transfer of "an interest of the debtor in property," which is a phrase common to §§544(b), 547, and 548, refers to property that would have been part of the estate had it not been transferred before bankruptcy. See, *Begier v. IRS*, 496 U.S. 53, 58, 110 S. Ct. 2258, 110 L. Ed. 2d 46 (1990); *Keller v. Keller (In re Keller)*, 185 B.R. 796, 799 (9th Cir. BAP 1995).

47.     It is not disputed that the Debtors' property was involved in both Transfers. (JSOF 6, 7)  The First Transfer of 2.5 MM, was paid directly to Defendants from the Debtor CHT's bank account in 2016. (JSOF 6)  Money in a bank account in the name of a debtor is presumed to be property of the bankruptcy estate. *Nisselson v. Salim (In re Big Apple Volkswagen, LLC)*, 2016 Bankr. LEXIS 834, *30 (Bankr. S.D.N.Y. 2016); *Boyer v. Carlton, Fields, Ward, Emmanuel, Smith & Cuter, P.A. (In re USA Diversified Prods., Inc.)*, 100 F.3d 53, 55 (7th Cir. 1996) ("Property of the debtor . . . includes the interest that a depositor debtor has in the money in his account . . .").

48.     The Second Transfer was issued from the Debtors' IOLA Account at Robinson Brog.  (JSOF #7)  An Interest on Lawyers Account is an unsegregated interest-bearing deposit account… for the deposit by an attorney of "qualified funds".  N.Y. Jud. Law §497(1). "Qualified funds" are monies received by an attorney in a fiduciary capacity from a client or beneficial owner.  The debtor's funds sitting in an IOLA account are the funds of the debtor as they are not property of the law firm who has no dominion or control over them.  See *State Farm Mut.*

*Auto Ins. Co. v. Grafman*, No. 04-cv-2609(NG) (SMG), 2017 US Dist. LEXIS 154290, 2017 WL 4217122 (E.D. N.Y. Sept. 221, 2017).  See *In re Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 2017 Bankr. LEXIS 4145, pg. 11 [law firm was not free to use the client's funds in escrow for its own benefit, and had it done so, the guilty attorneys undoubtedly would have been disciplined and possibly prosecuted for stealing client funds. Hence, the law firm was not a transferee].  *Id*.  In the present case, the Debtors' Orion and CHT deposited from their bank accounts millions of dollars directly into the IOLA Account only months before the Second Transfer. (ASOF ##79-81)  Funds of CHT and Orion deposited into the IOLA Account do not lose their color simply because they are transferred into the IOLA Account.  See *Geltzer v. Soshkin (In re Brizinova)*, 588 B.R. 311, 326 (Bankr. E.D.N.Y, 2018) ( the change in an asset's form from one type, such as real estate or shares of a corporation, to another, such as cash, should not lead to a change in whether it is a part of a debtor's bankruptcy estate).  Once a trustee establishes that a transfer was made from a debtor-owned account over which the debtor normally exercises control, the trustee "makes a preliminary showing of an avoidable transfer 'of an interest of the debtor'." *FBI Wind Down Inc. Liquidating Trust v. All Am. Poly Corp. (In re FBI Wind Down, Inc.),* 581 B.R. 116, 130 (Bankr. DE, 2018).  CHT and Orion were the only Debtors to deposit monies directly in the IOLA Account.  (ASOF #83)  Both the First and Second Transfer would have been part of the estate.  The facts establish the IOLA Account as "an interest of property" of each Debtor CHT and Orion which funds could have satisfied creditors of CHT or Orion.

## VI.

### BOTH THE FIRST AND SECOND TRANSFER ARE AVOIDABLE PURSUANT TO §548(A)(1)(A) AND NYDCL AS INTENTIONALLY FRAUDULENT CONVEYANCES AS THE BASIS FOR EACH TRANSACTION WERE FALSIFIED DOCUMENTS DESIGNED TO MISLEAD CREDITORS

49.    In its <u>First Claim for Relief</u>, Plaintiff seeks: to avoid the intentionally fraudulent transfer of the Debtors' funds to Defendants totaling $4,020,000, pursuant to 11 U.S.C. §§544, 548 and 550 and NYDCL §276, *et seq.*, or recover the value thereof, and preserve the Transfer for the benefit of the Debtors' estate pursuant to 11 U.S.C. §551.  Section 548(a)(1)(B) of the Bankruptcy Code permits a trustee to avoid, *inter alia*, "any transfer . . . of an interest of the debtor in property . . . that was made within 2 years before the date of filing of the Petition. §548(a)(1)(B).  Fraudulent conveyance claims under New York State law is generally subject to a six year statute of limitations.  *Orr v. Kinderhill Corp.*, 991 F.2d 31, 35 (2d Cir. 1993) (citations omitted).  The First Transfer occurred twenty three (23) months prior to the Petition Date, and the Second Transfer occurred approximately eight (8) months prior to the Petition Date.  Both Sections 11 U.S.C. §§548 and 550 and NYDCL §276, *et seq*., are applicable.

50.    For a transfer to be avoidable, §548(a)(1)(A) requires that a plaintiff prove that the transfer was made "with actual intent to hinder, delay, or defraud" present or future creditors of the debtor.  Section 548(a)(1)(A) is drafted in the disjunctive.  Whether a conveyance is fraudulent under Section 548(a)(1)(A), it is thus determined by reference to the intent of the debtor-transferor in making the transfer:  "the state of mind of the transferee is irrelevant." *Picard v. Merkin (In re Bernard L. Madoff Inv. Secs. LLC)*, 2011 U.S. Dist. LEXIS 97647, p. 12 (S.D.N.Y. 2011) citing to *Christian Bros. High Sch. Endowment v. Bayou No Leverage Fund, LLC (In re Bayou Group, LLC)*, 439 B.R. 284, 304 (S.D.N.Y. 2010).  Similarly, the weight of legal authority in New York interpreting NYDCL §276 finds that §276 also focuses on the fraudulent intent of the transferor, not the transferee. *Id*. at pp. 12-13.  (The Second Circuit has stated that "[t]o prove actual

fraud under §276, a creditor must show intent to defraud on the part of the transferor. Where actual intent to defraud is proven, the conveyance will be set aside regardless of the adequacy of the consideration given." *Sharp*, 403 F.3d at 56 (quoting *HBE Leasing Corp. v. Frank*, 61 F.3d 1054, 1059, n.5 (2d Cir. 1995)); *Andrew Velez Constr., Inc. v. Consol. Edison Co. of N.Y., Inc. (In re Andrew Velez Constr., Inc.)*, 373 B.R. 262, 269 (Bankr. S.D.N.Y. 2007) and cases cited therein; *Picard v. Taylor (In re Park S. Secs., LLC)*, 326 B.R. 505, 517 (Bankr. S.D.N.Y. 2005). In this sense Section 548 serves the same policy function as Section 547, which allows the trustee to avoid preferential payments made within ninety days of the bankruptcy to protect innocent creditors who were legally entitled to be paid. Both sections represent an equitable determination by Congress that under limited circumstances creditors must share equally in the insolvency, or, in the case of Section 548, the fraud. Section 548 is not a punitive provision designed to punish the transferee, but is instead an equitable provision that places the transferee in the same position as other similarly situated creditors who did not receive fraudulent conveyances. See *Bayou Accredited Fund, LLC v. Redwood Growth Partners, L.P. (In re Bayou Group, LLC)*, 396 B.R. 810, 826-827 Bankr. S.D.N.Y. 2008). Pursuant to §548(a)(1)(A), a transfer may be avoided as actually fraudulent if (1) the debtor had an interest in the property transferred; (2) the transfer occurred within two years of the petition date; and (3) the transfer was made with actual intent to hinder, delay or defraud a creditor. See 11 U.S.C. §548(a)(1)(A) (2004). *Bruno Mach. Corp. v. Troy Die Cutting Co. (In re Bruno Mach. Corp.)*, 435 B.R. 819, 852-53 (N.D. NY, 2010).

     51.    Plaintiff meets each of the three elements of an intentional fraud claim as the Transfers represent yet another text-book illustration of deception and diversion of monies by

Parmar on the heels of the fake acquisition of MDRX. (JSOF ##20-21) With respect to the First Transfer, there is no dispute the first two elements are met as the money was wired directly from the Debtor's bank account at CHT. (See JSOF #6) With respect to the Third element, Walia admits the APA was intentionally misstated by Parmar to add millions of dollars in "deal fees". (JSOF ##32, 35, 36) $3,000,000 was paid directly FUH, a Parmar controlled entity. (ASOF ##85-87) Walia was complicit in this scheme.

**A.      The APA Executed By Parmar and Walia in 2015 Was A Fraudulent Document, And The First Transfer Was Designed to Divert Millions To The Insiders**

52.      False statements, misrepresentations and backdating documents is evidence of intent to defraud as an effort to make an illegitimate transaction appear legitimate. See *United States v. Maciejewski*, 70 F. Supp. 2d 129, 134 (Bankr. N.D.N.Y, 1999) A "strong inference" of fraud may be established by alleging facts showing either (1) a "motive and opportunity to commit the fraud"; or (2) "strong circumstantial evidence of conscious misbehavior or recklessness." *Employees' Ret. Sys. of Gov't of the Virgin Islands v. Blanford*, 794 F.3d 297, 306 (2d Cir. 2015) (securities law); *see also Adelphia Recovery Trust v. Bank of Am., N.A.*, 624 F. Supp. 2d 292, 308 (S.D.N.Y. 2009) (applying "motive and opportunity" test to the pleading of a §548 claim).

53.      On February 20, 2015, Abstract, the broker retained by Defendant Walia, documented the sale of Porteck as a purchase price of **7.8MM**. (JSOF #30) According to Walia, the purchase price of Porteck to the Debtor was **10.8MM.** (JSOF #32)  Yet, the APA, executed by the Parmar and Walia reflected a purchase price of **12.8MM** for the sale of Porteck. (JSOF #35) Walia misrepresented the purchase price as 12.8MM, rather than 10.8MM.  The misrepresentation did not concern Walia as long as "his share" did not change, a reference to receiving 7MM for an asset

(Porteck) that had a stated value at acquisition of $1,824,000. (JSOF ##37, 41-45)  However, the damage was in fact far worse to legitimate creditors of the estate.  The IOLA Account reflecting sums disbursed by the Debtor on March 5, 2015 (the Closing Date) memorialized a total disbursement of **9.8MM**. (ASOF #85)  $3,000,000 was disbursed to First United Health (a Parmar controlled entity), not 2MM as Walia testified to in deposition. (JSOF #36)  The facts suggest Defendant had a motive to look the other way, as he was in fact receiving 7MM from the Debtor for a company with a stated value at acquisition of only $1,824,000.  Parmar labelled Porteck a "joke" only two months earlier.  (ASOF #84)  "Actual fraudulent intent" under NYDCL §278(2) has been construed such that it is satisfied if a "transferee participated or acquiesced in the transferor's fraudulent design." 13 Romualdo P. Eclavea, Carmody-Wait 2d New York Practice with Forms §§85-29 & 85-30 (2002) (emphasis added); *Berlenbach v. Bischoff*, 137 Misc. 719, 244 N.Y.S. 369, 371 (N.Y.Sup.Ct. Spec. Term 1930).  On these admissions, summary judgment is proper.

54.     Other circumstances also support an inference of fraud as Defendants' explanation is refuted by the documents.  In opposition to the Trustee's claims of intentional fraud, Walia asserts that the First Transfer was made in accordance with Section 1.6(e) of the APA. (JSOF #47) The language of the APA does not support such claim.

55.     Section 1.6(e) of the APA references establishing an escrow in 2015, executing an escrow agreement and 2.5MM being set aside in escrow to address certain events in the future.  (See APA attached to Aff. of Wong. as Ex. F)  Yet, it is an undisputed fact <u>no</u> escrow was established, <u>no</u> escrow agreement executed, and <u>no</u> funds deposited into escrow.  (JSOF ##48-49) Similarly, the closing documents from 2015 refute Walia's claim of monies being set

aside to satisfy any future condition in 2016.  After Walia received his 6.8MM, the IOLA Account

memorializes that the balance of 3MM transferred to Parmar at FUH on the same day, not set aside

for future events. (ASOF #86-87)  See *Salim v. VW Credit, Inc.*, 577 B.R. 615, 621 (E.D.N.Y.

2017) (The nonmoving party cannot avoid summary judgment by "rely[ing] on conclusory

allegations or unsubstantiated speculation," but must offer "some hard evidence showing that its

version of the events is not wholly fanciful.)  Similarly, the Debtors' books and records from 2015

and 2016 refute the existence of an antecedent debt of 2.5MM owed to either Defendant Walia or

NIKNIM for the First Transfer.  (ASOF #88-89)  Lastly, the email exchange between the insiders

<u>on the day</u> the First Transfer was effectuated belittles Walia's explanation he was owed any

legitimate sum under the APA.  Parmar's remark that "I am willing to give you 3.5MM in return for

you to allow me to structure it properly internally which requires I close the file with a 2MM

payment" evidences that whatever the duo was up to, it was not an arm's length transaction made in

the ordinary course of business. (ASOF #90)

56.    Even assuming arguendo the language of the APA supported Walia's claim

of an antecedent debt, the Court should deny the invitation to interpret a contract which was

intentionally designed to misstate and misrepresent the consideration owed by the Debtor. Courts

should refuse to be a party to illegal contracts especially where enforcement would benefit the

perpetrator of the unlawful deed. See *Krohn v. Orta*, 153 B.R. 391, 398 (E.D.N.Y., 1993) citing to

21 N.Y. Jur.2d Contracts §176.  It is improper to make the court serve as a referee and arbitrate a

contract based upon illegal consideration. [3]Such a result is intolerable. *Id.* citing to See *Di Tomasso*,

---

[3] *See* <u>Stone v. Freeman,</u> 298 N.Y. 268, 82 N.E.2d 571 (1948) (agreement in which agent would spend funds to bribe
purchasing agent was illegal and principal could not recover the balance of funds which agent diverted to his own
interests).

250 A.D. 206, 293 N.Y.S. at 916 (courts will not recognize contracts which rest upon illegal consideration).  The purchase price of Porteck in the APA was intentionally misstated by Parmar and Walia, to allow Parmar to divert multiple millions of dollars to FUH.  See *AQ Asset Mgt. LLC v. Levine*, 2013 N.Y. Misc. LEXIS 2054, *28 (N.Y. Sup. Ct., Mar. 28, 2013) (Regardless of whether Levine was complicit in this scheme, if it was agreed that the funds would be deposited with Levine under false pretenses, the agreement between sellers and Levine would be unenforceable. No cause of action can arise from an agreement which has been documented falsely for an illegal purpose).  Falsifying business records is a first degree Class E Felony and in the second degree, a class A misdemeanor in violation of New York Penal Law §175.05. See *People v. Hankin*, 175 Misc. 2d 83, Ft 4 (Crim Ct Kings County 1997).  Here, it is undisputed fact that the APA was documented falsely, Defendants knew of such fact, and $3,000,000 was diverted to Parmar.  Under such blatantly fraudulent circumstances, a claim the APA supports <u>a furthe</u>r 2.5MM Transfer cannot raise a material fact as such contention seeks to make the Court a party to the fraud.

57.    NYDCL §276 provides that "[e]very conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors." NYDCL §276.  Intent to evade creditors amounts to a fraudulent conveyance regardless of insolvency.  *Korea Deposit Ins. Corp. v. Mina Jung*, 59 Misc. 3d 442, 449 (Sup Ct, New York County, 2017); See *United States v. McCombs*, 30 F.3d 310, 327-28 (2d Cir. 1994).  As the Second Circuit explained:

> "Due to the difficulty of proving actual intent to hinder, delay, or defraud creditors, the pleader is allowed to rely on 'badges of fraud' to support his case, i.e.,

circumstances so commonly associated with fraudulent transfers that their presence gives rise to an inference of intent."

Courts in New York look to the badges of fraud commonly associated with fraudulent transfers that raise an inference of fraudulent intent *Salomon v. Kaiser (In re Kaiser)*, 722 F.2d 1574, 1582-83 (2d Cir. 1983). *See Tronox v. Anadarko Petroleum (In re Tronox Inc.)*, 429 B.R. 73, 95 (Bankr. S.D.N.Y. 2010) ("The existence of several badges of fraud can constitute clear and convincing evidence of actual intent." (quoting *In re Actrade Fin. Techs. Ltd.*, 337 B.R. 791 at 809)).

58.     The Trustee has submitted direct evidence of intent by both Parmar and

Walia, to divert multiple millions of dollars of the Debtor, CHT's funds for no legitimate business

purpose. The "badges of fraud" also confirm the First Transfer was made with fraudulent intent to

divert monies to insiders. "The badges of fraud include circumstances such as 'a close relationship

between the parties to the alleged fraudulent transaction; a questionable transfer not in the usual

course of business; inadequacy of the consideration; the transferor's knowledge of the creditor's

claim and the inability to pay it; and retention of control of the property by the transferor after the

conveyance. *Wimbledon Fin. Master Fund v. Wimbledon Fund, SPC*, 2016 N.Y. Misc. LEXIS

4805, *16, 2017 WL 3024259.

59.     The undisputed facts establish Parmar and Walia were both officers and

insiders at the time of the First Transfer. Parmar was the CEO of CHT, and Walia the CTO of CHT,

and the CEO of the Debtor, Orion.  (JSOF #4) The two knew each other prior to 2015.  (JSOF #25)

The email exchange on the day of the First Transfer reference a quid pro quo between the insiders.

(ASOF #83) The facts establish their involvement on both sides of the transaction and not an arm's-

length routine commercial transaction. This factor is established.

60.     Before determining whether the value was "reasonably equivalent" to what

the debtor gave up, the court must make an express factual determination as to whether the debtor

received any value at all. *Mellon Bank v. Official Comm. of Unsecured Creditors (In re R.M.L., Inc.)*, 92 F.3d 139, 149 (3d Cir. 1996)  The Debtors' books and records evidence no antecedent debt satisfied concurrently by the First Transfer. (ASOF ##88, 89)  The email exchanged suggest an illegitimate side agreement between Parmar and Walia. (ASOF #90).  The APA does not corroborate that the payment was made in accordance with Section 1.6(e).  Lastly, the metrics of the deal; payment of a further 2.5MM in additional to the 7MM already paid for an asset with a stated value of $1,824,000, is evidence the First Transfer was for not for reasonably equivalent value.

61.    Lastly, Walia knew about the creditors of CHT and Orion in existence and unsatisfied. A judgment was entered in 2015 against Orion.  On March 9, 2016, CHT was sued and Walia named personally as a Defendant in a lawsuit that resulted in a judgment against CHT. (See Req. For Jud. Notice, Judgment, Ex. 3) Rather than pay their debts, Walia received 2.5MM in exchange for Walia allowing Parmar to conceal his misdeeds from creditors. Plaintiff submits prima facie evidence satisfying multiple badges of fraud.  *U.S. v. Spencer*, 2012 U.S. Dist. LEXIS 142195, 2012 WL 4577927 at *7. ("A single [badge of fraud] may stamp the transaction as fraudulent and, when several are found in combination, strong and clear evidence on the part of the upholder of the transaction will be required to repel the conclusion of fraud.") [4]

**B.    The Second Transfer, Resulting In Payment Of $1,520,000 To Defendant Walia In 2017, Is An Intentionally Fraudulent Conveyance As The Evidence Demonstrates Walia Sold To A Non-Debtor, A Defunct Company, With No Earnings As Supported By A Fictitious Purchase Agreement**

62.    The Evidence supporting the fraudulent nature of the Second Transfer is irrefutable.  In 2017, Walia, an insider, agreed to sell Parmar, an insider, a shell company which he

---

[4] Other badges of fraud includes whether it was a secret and hasty transfer not in the usual course of business. *Prabir v. Bukhara Indian Cuisine, Inc*., 2018 U.S. Dist. LEXIS 94563, *9 (S.D.N.Y. 2018)  Here, the "side-deal" struck between Parmar and Walia dated April 15, 2016, is the same day as the First Transfer.  (See JSOF #6; ASOF #90)

owned, that controlled a defunct company, AllRad Direct, LLC ("AllRad").  (JSOF ##4, 50) The

sale was memorialized by a Membership Interests Purchase Agreement ("MIPA') dated June 2017

transferring all interests to a non-debtor, PHNMS.  (JSOF ##51, 67)  Walia claims the MIPA

memorialized a legitimate antecedent debt owed by the Debtors.  The claim is baseless.

      63.     First, the undisputed facts evidence the MIPA was a deceptively prepared

agreement.  Various schedules evidencing the value of AllRad as referenced throughout the

executed MIPA were never completed or attached to the MIPA. (JSOF #62) No revenue

projections, working capital, balance sheets or statement of assets and liabilities as referenced in the

MIPA were attached. (JSOF ##61, 68)  A resolution of Orion board of directors approving the sale

as required by the MIPA was never obtained. (JSOF #69)  Neither Parmar nor Defendant, as senior

executives of the Debtors, considered any other competing software or put the contract out to others

for a competitive bid. (JSOF #70)  Additional documents also support an outright fraud.  The Due

Diligence report Walia references to support his receipt of $1,520,000 was prepared by Walia and

Brindamour yet never completed.  On May 17, 2017, Brindamour forwarded to Walia a draft due

diligence report. (JSOF 52). Brindamour prepared the due diligence reports for the earlier fabricated

acquisitions of MDRX.  (JSOF ##20, 21, 53)  Brindamour wanted Walia to insert the factual

information with respect to the acquired company, its operations and assets. (JSOF #54)  On May

31, 2017, Walia emailed Parmar to push forward the acquisition of his company.  (JSOF #55)  At

this point, Parmar did not even know what was being purchased.  Parmar requested "accurate

figures" be inserted in the due diligence report. (JSOF #58)  The Due Diligence Report was never

completed.  (JSOF #60)

64.     Not until June 15, 2017, did Walia advise Parmar the price to purchase Objecttech was 1.52MM.  On June 19, 2017 demanded the deal be finalized ASAP for reasons he would not elaborate.  Four days later, Defendants received 1.52MM. (JSOF #7)

65.     The MIPA, the Due Diligence Report, emails and outrageous nature of the transaction are *prima facie* evidence of fraud, i.e. intentional misrepresentations.  The Debtors' funds were used to purchase a shell company, Objecttech, in which Walia the owner admits he participated in the preparation of the misleading MIPA.  Walia participated in drafting the buyer's Due Diligence Report, inserted fictitious revenue statements, and never bothered to finalize the document.  The Debtor paid for a company with fictional assets, fictional liabilities and fictional working capital.  Two senior executives hastily put together the transaction with Walia asserting on June 19, 2017, he wanted to finalize ASAP "for one reason which I will talk to you about today". (See Deposition, Ex. 25,  attached to Aff. of Wong as Ex. 3)  See *New York Dist. Council of Carpenters Pension Fund v. KW Const., Inc., supra.*, 2008 U.S. Dist. LEXIS 40517, 2008 WL 2115225 at *4 ("a questionable transfer not in the ordinary course of business" and "secrecy in the transfer" are considered "badges of fraud"); see also *DLJ Mortg. Capital, Inc. v. Kontogiannis*, *supra*, 594 F. Supp. 2d at 325 (defendants secretly encumbering properties with mortgages that were never recorded supports inference of fraudulent intent).

66.     With respect to the issue of "reasonably equivalent value", there is no reasonable dispute that the percipient documents evidence the Debtors received nothing as a result of the Second Transfer.  It is an undisputed fact that whatever was purchased, it was transferred by the duo to a third party non-debtor PHNMS. (JSOF ##51, 67)  In 2017, the Debtors' books and

records do not evidence the satisfaction of an antecedent debt or increase in net assets through the acquisition of an asset such as Objecttech, AllRad or PHNMS for $1,520,000.  (ASOF ##91, 92) Defendants produced no evidence during discovery that Objecttech or AllRad had any operations or value.

**C.   Walia's Refusal To Produce Financial Documents For The Company He Claims The Second Transfer Purchased Triggers The Application Of The Adverse Inference Doctrine**

67.   A party's failure to produce evidence which, under the circumstances would be expected, leads to an inference that the evidence not produced would not have buttressed the party's position and indeed would have undercut it.  *In re Bruce,* 2005 Bankr. LEXIS 3085, *45 (Bankr. Mon. 2005), citing to *Golden State Bottling Co. v. NLRB*, 414 U.S. 168, 174, 94 S.Ct. 414, 420, 38 L.Ed.2d 388 (1973); See also *P.R. Mallory Co. v. NLRB*, 400 F.2d 956, 959 (7th Cir.1968), cert. denied, 394 U.S. 918, 89 S.Ct. 1191, 22 L. Ed. 2d 432, 22 L.Ed.2d 452 (1969) "[F]ailure to produce evidence, which under the circumstances would be expected, gives rise to a presumption against the party failing to produce it.").  The adverse inference rule is triggered by the failure of a party to provide evidence peculiarly available to that party and supports an inference that the truth would be damaging to that party.  *Gonzales v. Albuquerque Tortilla Co. (In re Furrs Supermarkets, Inc.*), 2008 Bankr. LEXIS 946,*26 (Bankr. N.M. 2008) citing to *Deutsche Financial Services Corp. v. Osborne (In re Osborne)*, 257 B.R. 14, 19, n.7 (Bankr. C.D. Cal. 2000).

68.   Walia was the owner and President of both Objecttech and AllRad entities he solely controlled.  (ASOF #94)  The Trustee requested and Walia did not produce the tax records for either entity during the course of discovery.  (ASOF #94, 95) The failure to produce documents which by its very nature are in his control triggers the *adverse inference rule* and an evidentiary

presumption that such documents, if produced, would confirm the Trustee's contention of the utter lack of any value attributable to AllRad or Objecttech.

## VII.

### THE TRANSFERS VIOLATE NYDCL §273-A AS CONSTRUCTIVELY FRAUDULENT TRANSFERS AS JUDGMENT CREDITORS EXISTED BEFORE THE TRANSFERS AND THE TRANSFERS WERE TO AN OFFICER AND INSIDER

69.    NYDCL §273-a provides: "Every conveyance made without fair consideration when the person making it is a defendant in an action for money damages or a judgment in such an action has been docketed against him, is fraudulent as to the plaintiff in that action without regard to the actual intent of the defendant if, after final judgment for the plaintiff, the defendant fails to satisfy the judgment." NYDCL §273-a (McKinney 2002).  Thus, to prevail on a claim under §273-a, a plaintiff must establish that: (1) the conveyance was made without fair consideration; (2) at the time of transfer, the transferor was a defendant in an action for money damages or a judgment in such action had been docketed against him; and (3) a final judgment has been rendered against the transferor that remains unsatisfied.  *Priestley v. Panmedix Inc*., 18 F. Supp. 3d 486, 497 (S.D.N.Y. 2014); *Grace v. BankLeumi Trust Co. of N.Y.*, 443 F.3d 180, 188 (2d Cir. 2006).  The Court need not address a determination of solvency if the Court finds a lawsuit was pending, or, a judgment existed against the Debtors at the time of the Transfer and the judgment was left unsatisfied.  Under such circumstances the transfer *per se* violates §273-a, is constructively fraudulent and the solvency or insolvency of the Debtor is irrelevant.  *Lyman Commerce Solutions, Inc. v. Lung*, 2015 U.S. Dist. LEXIS 51447, 2015 WL 1808693, at *5 (S.D.N.Y. Apr. 20, 2015) citing to NYDCL §273-a (McKinney 2002).  As noted by the court in *Lyman,* "Sections 273 and 273-a thus provide alternate theories of fraud: §273 "applies to transfers that render a debtor

insolvent, and the existence of an action or judgment is irrelevant," while § 273-a "applies where there is an action pending or a judgment already docketed, but there is no requirement that the transfer rendered the debtor insolvent." *Cadle Co. v. Newhouse*, No. 01 CIV. 1777 (DC), 2002 U.S. Dist. LEXIS 15173, 2002 WL 1888716, at \*5-6 (S.D.N.Y. Aug. 16, 2002), aff'd, 74 F. App'x 152 (2d Cir. 2003) (emphasis added). In effect, §273-a "substitutes the requirement of an unpaid judgment (or a pending action) for the requirement of insolvency." *Mitchell v. Lyons Prof'l Servs., Inc.*, No. 09 CIV. 1587 BMC, 2013 U.S. Dist. LEXIS 124937, 2013 WL 4710431, at \*3 (E.D.N.Y. Sept. 1, 2013) vacated and remanded on other grounds, *Mitchell v. Garrison Protective Servs., Inc.*, 579 F. App'x 18 (2d Cir. 2014); see also *Dixie Yarns, Inc. v. Forman*, 906 F. Supp. 929, 938 (S.D.N.Y. 1995) ("a claimant under §273-a need not demonstrate the insolvency of the judgment debtor.[5] It is sufficient to support the claim that the judgment has not been satisfied; and if, as here, it has not, the question of insolvency is irrelevant to the considerations at hand.")

70.     Here, there is no dispute under §273-a, that the second and third elements of liability are met.  The First Transfer as made by CHT occurred on April 15, 2016.  (JSOF #6)  The Second Transfer made from the Debtors' IOLA Account which included bank deposits from the Debtors CHT and Orion, occurred on June 23, 2017, and June 28, 2017.  Judgments and/or lawsuits were pending against CHT and Orion prior to the First and Second Transfers.  The Southern District Court of Texas issued a judgment in the amount of $194,185, against the Debtor Orion on December 16, 2015.  On February 29, 2016, Plaintiff Cockerell Dermatopathology filed a

---

[5] Under NYDCL §273, there is a long-recognized presumption of insolvency where the debtor makes a conveyance without fair consideration. See *Kramer v. Mahia (In re Khan)*, 2014 Bankr. LEXIS 4205, citing to *Geron v. Schulman (In re Manshul Constr. Corp.)*, 2000 U.S. Dist. LEXIS 12576, 2000 WL 1228866 at \*53 (S.D.N.Y. Aug. 20, 2000); (trustee met his burden on summary judgment. There is no genuine issue of fact where Debtor transferred property for less than fair consideration or reasonably equivalent value, not on account of antecedent debt, and for intra-family transfer).

complaint, case no. DC-16-02365 against the Debtors Medical Billing Services and Orion in the

District Court of Dallas County Texas for monetary relief in excess of 1MM.  On March 9, 2016, a

lawsuit was initiated in the Supreme Court of the State of New York, against the Debtors PPP and

CHT and judgment issued on November 30, 2017.  The lawsuits were pending as of the Petition

Date and/or a judgment obtained and a proof of claim filed in the bankruptcy case.  (JSOF ##71-76)

**A.**    **The First And Second Transfers Were Not Made For Fair Consideration As Transfers To Insiders Violate NYDCL 273-a As A Matter Of Law**

71.    NYDCL §273 defines "fair consideration" for purposes of §273-a, and

provides that:

> Fair consideration is given for property, or obligation,
>
> a.  When in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or
>
> b.  When such property, or obligation, is *received in good faith* to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained.

*Lyman Commerce Solutions, Inc. v. Lung*, 2015 U.S. Dist. LEXIS 51447, 21(S.D.N.Y, 2015)[6]

72.    Even if there is fair consideration, a transfer is still constructively fraudulent

in the absence of good faith on the part "of both the transferor and the transferee." *Id.* at 303

(emphasis added), quoting *Berner Trucking, Inc. v. Brown*, 281 AD2d 924, 925, 722 N.Y.S.2d 656

(1st Dept. 2001); see *Sardis v. Frankel*, 113 A.D.3d 135, 142, 978 N.Y.S.2d 135 (1st Dept. 2014)

("'Fair consideration' ... is not only a matter of whether the amount  given for the transferred

property was a 'fair equivalent' or 'not disproportionately small,' but whether the transaction is made

'in good faith,' an obligation that is imposed on both the transferor and the transferee.").

---

[6] Section 548(c) requires both value and good faith and in the absence of either, the defense fails. *Berman v. Pavano (In re Michael S. Goldberg, LLC)*, 2020 Bankr. LEXIS 2314, 22 (Bankr. Conn. 2020).

Importantly, "**[a]n insider** payment is not in good faith, regardless of whether or not it was paid on account of an antecedent debt." [Emphasis added] *Am. Media, Inc. v. Bainbridge & Knight Labs., LLC*, 135 A.D.3d 477, 478, 22 N.Y.S.3d 437 (1st Dept. 2016), citing *EAC of N.Y., Inc. v. Capri 400, Inc.*, 49 A.D.3d 1006, 1007, 853 N.Y.S.2d 419 (3d Dept. 2008)  Here, it is an undisputed fact that Walia was an insider at the time of both Transfers.  The term insider includes "a person in control of the debtor" or an "officer of the debtor".  11 U.S.C. §101(31)(B) (ii) and (iii).  An "insider" is one who has a sufficiently close relationship with the debtor that his conduct is made subject to closer scrutiny than those dealing at [arm's] length with the debtor." *Anstine v. Carl Zeiss Meditec AG (In re U.S. Medical, Inc.)*, 531 F.3d 1272, 1277 (10th Cir. 2008) "In ascertaining insider status, courts have looked to the closeness of the relationship between the parties and to whether any transactions between them were conducted at arm's length."  *In re Krehl,* 86 F.3d 737, 742 (7th Cir. 1996). Here the emails between Parmar and Walia, his title as an officer of CHT and Orion, and his conduct with both transactions confirm his status as an officer and an insider worthy of additional scrutiny.  Defendants fail both tests for Fair Consideration under NYDCL §272.

73.    Under these facts Defendants cannot establish "good faith" which is required to find "fair consideration."  New York courts have recognized that where the transferee is an officer, director, or major shareholder of the transferor, good faith is lacking as a matter of law.  See *Sharp Int'l Corp. v. State St. Bank & Trust Co.*, 403 F.3d 43, 54 (2d Cir. 2005); *Farm Stores, Inc. v. Sch. Feeding Corp.,* 102 A.D.2d 249, 477 N.Y.S.2d 374 (2d Dep't 1984). When preferences are given to a debtor corporation's shareholders, officers, or directors, such transfers are *per se* violations of the good faith requirement. *Id.* (citing *HBE Leasing Corp. v. Frank*, 48 F.3d 623, 634

(2d Cir. 1995)).  The Transfers are a *per se* violation of the good faith requirement enumerated under the NYDCL.  Here, Defendant Walia served as the CEO of the Debtors' main operating company, Orion, and the CTO of CHT from June 2015 until his departure in the Fall of 2018. (JSOF #4) Summary judgment is proper as the Transfers between the Debtor and its officers lack good faith as a matter of law.

## VIII.

### JUDGMENT IS PROPER AGAINST DEFENDANTS WALIA AND NIKNIM AND BOTH OF THEM

74.     A corporation, being an entity created by law, is incapable of formulating or acting with intent. Thus, for the purpose of recovering impermissibly transferred corporate assets and thereby facilitating creditor recovery, the intent of the officers and directors may be imputed to the corporation." [1] See *Leonard v. Coolidge, (In re Nat'l Audit Def. Network)* 367 B.R. 220, 221 (Bankr. S.D.N.V, 2022) citing to *Schnelling v. Crawford (In re James River Coal Co.)*, 360 B.R. 139, 2007 Bankr. LEXIS 159, 2007 Westlaw 438244, at 13 (Bankr. E.D. Va., Feb. 8, 2007). See also *Consove v. Cohen (In re Roco Corp.)*, 701 F.2d 978, 984 (1st Cir. 1983) (imputing to corporation fraudulent intent of corporate officer and sole shareholder); *Friehling v. Nielson (In re F & C Servs., Inc.)*, 44 B.R. 863, 872 (Bankr. S.D. Fla. 1984) (noting that "where the transferee is in a position to dominate or control the Debtor's disposition of his property, the transferee's intent to hinder, delay or defraud creditors may be imputed to the Debtor.'). In *Leonard v. Coolidge, infra*, the court was persuaded that the party executing the transaction, signing the check, authorizing the wire transfer, acted on behalf of the corporate entity.  *Id*, at 221.  Here, it is undisputed fact that NIKNIM operates through its sole employee, officer and shareholder, Walia.  (JSOF #8)  As the

undisputed facts memorialize, Walia executed, the APA and the MIPA and controlled the bank

account of NIKNIM.  Walia personally directed that the Transfers identified in the Complaint be

deposited into the NIKNIM bank account at JP Morgan Chase. (JSOF ##15-16).  The acts of

Defendant NIKNIM are a direct reflection of the intent of its sole shareholder.

**A.    Defendants Walia And NIKNIM Are The Alter Ego Of One Another And Equity Demands They Be Held Jointly And Severally Responsible For Any Judgment**

75.    Alter ego liability exists under New York law "when a parent or owner uses

the corporate form to achieve fraud, or when the corporation has been so dominated by an

individual or another corporation . . . that its separate identity so disregarded that it primarily

transacted the dominator's business rather than its own." *City of Almaty v. Ablyazov*, 2019 U.S. Dist.

LEXIS 55183, *14 (Bankr. S.D.N.Y. 2019); *Kiobel v. Royal Dutch Petroleum*, 621 F.3d 111, 195

(2d Cir. 2010) (internal quotation marks and citation omitted).  "Factors to be considered in

determining whether the owner has 'abused the privilege of doing business in the corporate form'

include whether there was a 'failure to adhere to corporate formalities, inadequate capitalization,

commingling of assets, and use of corporate funds for personal use'." (*East Hampton Union Free

School Dist. v Sandpebble Bldrs., Inc.*, 66 AD3d 122, 127, 884 NYS2d 94 (2009),

quoting *Millennium Constr., LLC v Loupolover*, 44 AD3d 1016, 1016-1017, 845 NYS2d 110

(2007)).[7]  The undisputed facts evidence the factors outlined above warrant that any finding of

liability for receipt of the Transfers by NIKNIM is similarly extended against Walia since he

personally executed the operative documents, made the representations and engineered the

---

[7] Because a decision to pierce the corporate veil in any given instance will necessarily depend on the attendant facts and equities, there are no definitive rules governing the varying circumstances when this power may be exercised. *Baby Phat Holding Co., LLC v. Kellwood Co.*, 123 AD3d 405, 407, 997 N.Y.S.2d 67, citing to (*Matter of Morris v New York State Dept. of Taxation & Fin.*, 82 NY2d 135, 141, 623 NE2d 1157, 603 NYS2d 807 [1993]).

Transfers with Parmar.

## NIKNIM's Lack of Business Purpose

76.    NIKNIM was incorporated in 2015 and at all times had a single employee, officer, and shareholder who was Walia.  NIKNIM was formed to manage Walia's consulting work, his personal investments, and that of his family trust. (JSOF #9)  NIKNIM was paid by the Debtor as a personal accommodation to Walia for tax purposes. (JSOF #12)

## Commingling of Funds

77.    Walia was receiving monies from Orion in 2017 which he would deposit at his convenience into either his personal checking account or that of NIKNIM. (JSOF #15)  In 2016-2017, Walia would deposit monies from his other investments, family trust, and his wife's accounts into the NIKNIM bank account as well. (JSOF #16)

## NIKNIM's Deposits To Pay Walia's Personal Expenses:

78.    Use of a corporation's bank account for personal use is evidence of a lack of separation between the individual and the corporation.  See *First Horizon Bank v. Moriarty-Gentile*, 2015 U.S. Dist. LEXIS 165695, *20 (Bankr. E.D.N.Y, 2015) (The evidence shows that defendant treated the HPLP bank account as her own, diverted funds to pay her personal bills, commingled and failed to segregate funds, used HPLP as a conduit for defendant's acting business, and failed to maintain arm's-length transactions with HPLP by making continuous and frequent transfers between the HPLP bank account and her personal account.)  Here, it is not disputed that Walia used the NIKNIM account to pay his personal expenses such as pool maintenance, purchase of suits, salon treatments, voice lessons, homeowner's dues, automobile payments for he and his wife as

well as large withdrawals of cash. (ASOF #97)  The bank account of NIKNIM was utilized by

Walia for his personal use.

### The Failure To Maintain Adequate Corporate Minutes Or Records

79.    NIKNIM followed no corporate formalities and maintained no resolutions of

shareholders or minutes. (JSOF #13)

### Domination Or Control Of The Corporation By The Stockholder

80.    Domination, especially with respect to the transaction attacked, and such

domination used to commit the fraud or wrong against a plaintiff is the essence of the inquiry.

*Gardiners Bay Landscape v. Postiglione (In re Postiglione)* 2019 Bankr. LEXIS 1887, *10 (Bankr.

E.D.N.Y 2019) citing to *Baby Phat Holding Co. LLC*, 123 A.D. 3d 405 (N.Y App. Div 2014)   A

key factor in any decision to disregard the separate corporate entity is the element of control or

influence exercised by the individual sought to be held liable over corporate affairs." *Angelo

Tomasso, Inc. v. Armor Construction & Paving, Inc.,* 187 Conn. 544, 556-57, 447 A.2d 406 (1982)

Both transactions and related Transfers were dominated by Walia who orchestrated and directed the

flow of funds.  Walia even filed a proof of claim listing himself as the creditor for alleged monies

owed under the Porteck sale. (See ASOF, #96)

### Capitalization

81.    NIKNIM was capitalized with a small sum of one or two thousand dollars.

(JSOF #14)  The sum in dispute is in excess of 4MM, evidencing the amount of capitalization of

NIKNIM was entirely inadequate.  (JSOF #17)

### Use Of A Single Address

82.    Defendant NIKNIM is a corporation formed under the laws of the State of

New York with its principle place of business at Walia's residence. (JSOF #5)

### Inequitable Result

83.    A plaintiff may be considered "injured" by the defendant's actions when "a

company is rendered unable to pay the claims pending against it by third parties because of another

company or individual's domination of the business." See *Balmer v. 1716 Realty LLC*, No. 05 CV

839 (NG)(MDG), 2008 U.S. Dist. LEXIS 38113, 2008 WL 2047888, at *6 (E.D.N.Y. May 9, 2008)

(citing *Austin Powder Co. v. McCullough*, 216 A.D.2d 825, 827, 628 N.Y.S.2d 855 (N.Y. App. Div.

1995)). Actual or common law fraud need not be proven. See *DER Travel Servs. v. Dream Tours &*

*Adventures*, No. 99 Civ. 2231 (HBP), 2005 U.S. Dist. LEXIS 25861, 2005 WL 2848939, at *9

(S.D.N.Y. Oct. 28, 2005).  In the present case, the undisputed facts are that Walia was the sole actor

and directed the funds be deposited into the account of Defendant NIKNIM.  NIKNIM as the initial

transferee is strictly liable for the return of the fraudulent conveyances.  Walia as the controlling

individual behind NIKNIM and given his personal involvement in the Transfers, is equally liable

for the acts and conduct at issue before the Court.  Under New York law, joint and several liability

is a question of law that is not related to the factual apportionment of fault among defendants. See

*Rovo by Ravo v. Rogatnick*, 70 N.Y.2d 305, 313, 514 N.E.2d 1104, 520 N.Y.S.2d 533, 538 (1987).

See *Wells Fargo Bank, N.A. v. Nat'l Gasoline, Inc.*, 577 Fed. Appx. 58, 60 (2nd Cir. 2014)

("principles of joint and several liability require that a party with even minimal culpability be held

responsible to an innocent tort victim." *Greenidge v. HRH Constr. Corp.*, 279 A.D.2d 400, 402, 720

N.Y.S.2d 46, 48-49 (1st Dep't 2001); see also *Westchester Cnty. v. Welton Becket Assocs.*, 102

A.D.2d 34, 48, 478 N.Y.S.2d 305, 315 (2d Dep't 1984) ("An injured party is free to seek a 100%

recovery against any individual wrongdoer among joint wrongdoers.").  Walia has been subject to various lawsuits and had judgments outstanding against him personally at the time of the Petition. (See Req. For Judicial Notice, Ex. 3).  Under the circumstances, it would be inequitable for the Trustee and creditors to be forced to expend further legal fees to pursue only one Defendant. Judgment is proper against both Defendants.

**IX.**

**<u>CONCLUSION</u>**

**WHEREFORE**, the Trustee requests that this Court enter an order substantially in the form as attached to the Affidavit of Jeffrey Nolan, as **Exhibit 7**:

(1)    Avoiding the Transfers as an intentionally fraudulent transfer pursuant to the Bankruptcy Code 11 U.S.C. §548 and NYDCL §276;

(2)    Avoiding the Transfers as a constructively fraudulent transfer pursuant to the Bankruptcy Code 11 U.S.C. §548 and NYDCL §273;

(3)    Awarding judgment in favor of the Trustee as against Defendants joint and severally; and

(4)    Awarding costs and/or fees by motion and according to proof.

Dated:  January 18, 2023                      Respectfully submitted,

PACHULSKI STANG ZIEHL & JONES LLP

 */s/ Jeffrey P. Nolan*
Ilan D. Scharf, Esq.
Jeffrey P. Nolan, Esq. *(admitted pro hac vice)*
PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 34th Floor
New York, New York 10017
Telephone:(212) 561-7700
Facsimile: (212) 561-7777

Counsel For Plaintiff, the Liquidating Trustee

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------

| | |
|---|---|
| In re: | : Chapter 11 |
| ORION HEALTHCORP, INC[1]. | : Case No. 18-71748 (AST) |
| Debtors. | : (Jointly Administered) |
| HOWARD M. EHRENBERG IN HIS CAPACITY AS LIQUIDATING TRUSTEE OF ORION HEALTHCORP, INC., ET AL., | : Adv. Pro. No. 20-08049 (AST) |
| Plaintiff, | : |
| v. | : |
| ARVIND WALIA, NIKNIM MANAGEMENT, INC | : |
| Defendants. | : |

---------------------------------------------

## JOINT STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION; PLAINTIFF'S ADDITIONAL STATEMENT OF FACTS

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Orion Healthcorp, Inc. (7246); Constellation Healthcare Technologies, Inc. (0135); NEMS Acquisition, LLC (7378); Northeast Medical Solutions, LLC (2703); NEMS West Virginia, LLC (unknown); Physicians Practice Plus Holdings, LLC (6100); Physicians Practice Plus, LLC (4122); Medical Billing Services, Inc. (2971); Rand Medical Billing, Inc. (7887); RMI Physician Services Corporation (7239); Western Skies Practice Management, Inc. (1904); Integrated Physician Solutions, Inc. (0543); NYNM Acquisition, LLC (unknown) Northstar FHA, LLC (unknown); Northstar First Health, LLC (unknown); Vachette Business Services, Ltd. (4672); Phoenix Health, LLC (0856); MDRX Medical Billing, LLC (5410); VEGA Medical Professionals, LLC (1055); Allegiance Consulting Associates, LLC (7291); Allegiance Billing & Consulting, LLC (7141); New York Network Management, LLC (7168). The corporate headquarters and the mailing address for the Debtors listed above is 1715 Route 35 North, Suite 303, Middletown, NJ 07748.

DOCS_LA:346578.5 65004/003

Comes now, the Parties, and submit the agreed on Joint Separate Statement of
Uncontroverted Facts with respect to Plaintiff's Motion for Summary Judgment;

## I.     JOINT STATEMENT OF UNCONTROVERTED FACTS

| | Statement of Fact | Evidentiary Support |
|---|---|---|
| 1. | The Debtors were an enterprise of several companies aggregated through a series of acquisitions which operated in the healthcare sector primarily in revenue and practice management for physician practices. | Stipulated Fact |
| 2. | Defendant Arvind Walia ("Walia") is an individual residing at 27 Kettlepond Road, Jericho, New York | Stipulated Fact |
| 3. | Walia filed a proof of claim, Claim No. 10067, in the amount of $61,590, in case no. 18-71753, asserting monies owed under the Asset Purchase Agreement and Employment Agreement, each dated March 2015, executed  between Debtor and Porteck Corporation. | Stipulated Fact |
| 4. | Defendant Walia served as the Chief Executive Officer of the Debtors' main operating company, Orion Healthcorp., Inc. and the Chief Technology Officer of Constellation Healthcare Technologies, Inc. from June 2015 until his departure in the Fall of 2018. | Stipulated Fact |
| 5. | Defendant NIKNIM Management, Inc. ("NIKNIM") is a corporation formed under the laws of the State of New York with its principle place of business at Walia's residence at 27 Kettlepond Road, Jericho, New York. | Stipulated Fact |
| 6. | On April 15, 2016, $2,500,000 was transferred via wire from the M&T bank account of the Debtor Constellation Healthcare Technologies, Inc. ("CHT") to the JP Morgan Chase bank account of NIKNIM (the "First Transfer"). | Stipulated Fact |

| Statement of Fact | Evidentiary Support |
|---|---|
| 7. On June 23, 2017, and June 28, 2017, one or more of the Debtors transferred via wire a total of $1,520,000 from the Debtors' Robinson Brog IOLA account to the JP Morgan Chase bank account of NIKNIM (collectively the "Second Transfer") | Stipulated Fact |
| 8. NIKNIM was incorporated in 2015, and at all times Walia owned and managed NIKNIM as the sole employee, officer, and shareholder. | Stipulated Fact |
| 9. NIKNIM is an S corp. formed by Walia to manage his consulting work, personal investments, and that of his family trust. | Stipulated Fact |
| 10. Walia established a family trust, the *Janaminder Virk Irrecovable Trust* in 2012 (the "Janaminder Trust"), where he acts as the Trustee and his daughters the beneficiaries. | Stipulated Fact |
| 11. Walia established the *Arvin Walia Irrevocable Trust* (the "Walia Trust") as part of his estate planning where his wife acts as the Trustee. | Stipulated Fact |
| 12. NIKNIM was paid part of Walia's annual salary from the Debtor as a personal accommodation to Walia for tax purposes. | Stipulated Fact |
| 13. NIKNIM followed no corporate formalities and maintained no resolutions of shareholders or minutes. | Stipulated Fact |
| 14. NIKNIM was capitalized with a small amount of one or two thousand dollars. | Stipulated Fact |
| 15. Walia was receiving monies from Orion in 2017 which he would deposit at his convenience into either the NIKNIM or his personal checking account. | Stipulated Fact |

| Statement of Fact | | Evidentiary Support |
|---|---|---|
| 16. | In 2016-2017, Walia would deposit monies from his other investments, family trust, and his wife's accounts into the NIKNIM bank account. | Stipulated Fact |
| 17. | Walia personally directed that the Transfers identified in the Complaint be deposited into the NIKNIM bank account at JP Morgan Chase. | Stipulated Fact |
| 18. | FTI Consulting, Inc. ("FTI") was appointed in September 2017 to conduct a forensic examination of the Debtors' business following questions raised as to CHT's financial condition. | Stipulated Fact |
| 19. | Timothy J. Dragelin served as the Debtors' CEO and CRO shortly after the resignation of executives Parmar, and termination of Sam Zaharis, and Ravi Chivukula on September 29, 2017, and through the filing of the Petition, restructuring and sale of the Debtors' assets. | Stipulated Fact |
| 20. | On February 10, 2016, CHT acquired MDRX Medical Billing, LLC ("MDRX") for 28MM. | Stipulated Fact |
| 21. | MDRX had no customers, assets, employees, conducted no business and was a sham transaction with fake revenue. | Stipulated Fact |
| 22. | Pursuant to the Credit Agreement, Bank of America ("BOFA") advanced to the Debtors $130,000,000 in debt to fund the Go-Private Transaction. | Stipulated Fact |
| 23. | The Credit Agreement with BOFA was executed by the Debtors and secured by all of the Debtors' assets. | Stipulated Fact |
| 24. | BOFA is the largest creditor in the bankruptcy case with an outstanding secured claim in the amount of $158,200,710.89. | Stipulated Fact |

| Statement of Fact | Evidentiary Support |
|---|---|
| 25. | Walia was introduced to Paul Parmar at his residence in Colts Neck, NJ in approximately 2009 or 2011. | Stipulated Fact |
| 26. | Parmar was looking to acquire a medical billing company. | Stipulated Fact |
| 27. | Porteck Corporation ("Porteck") was a technology services company in the healthcare industry incorporated, owned and controlled by Walia who acted as its CEO. | Stipulated Fact |
| 28. | In October or November 2014, Parmar and Walia met again as Parmar was interested in purchasing Porteck. | Stipulated Fact |
| 29. | Walia retained a broker, Abstract Business Advisors ("Abstract"), to sell Porteck. | Stipulated Fact |
| 30. | On February 20, 2015, Abstract documented the sale of Porteck Corporation as a purchase price of 7.8MM, with 5.5MM to be paid in cash to Defendants at closing, and 2.3MM earn-out paid in 12 months. | Stipulated Fact |
| 31. | Walia believes Parmar misstated the purchase price or the commission earned to Abstract because Parmar told him "he could get a better deal for us". | Stipulated Fact |
| 32. | According to Walia, the purchase price of Porteck to the Debtor was 10.8 MM. | Stipulated Fact |
| 33. | The Asset Purchase Agreement ("APA") dated March 2015, is signed by Walia on behalf of the Sellers, Porteck, and the Janaminder Trust, to the Buyer, Physicians Practice Plus, LLC, ("PPP") as executed by Paul Parmar. | Stipulated Fact |
| 34. | The Walia Trust did not execute the APA. | Stipulated Fact |

| | Statement of Fact | Evidentiary Support |
|---|---|---|
| 35. | The APA, reflects a purchase price of 12.8MM for the sale of Porteck. | Stipulated Fact |
| 36. | Parmar told Walia he needed to add an additional 2MM to the APA as "deal fees". | Stipulated Fact |
| 37. | Representing the purchase price as 12.8MM rather than 10.8MM did not concern Defendant as long as Defendant's share of the purchase price did not change. | Stipulated Fact |
| 38. | Abstract was paid by the Debtor a commission of $192,500. | Stipulated Fact |
| 39. | On March 3, 2015, pursuant to the Disbursement Authorization and Itemization form, the closing cash or total consideration of 7MM was disbursed to the Sellers on account of the sale of Porteck. | Stipulated Fact |
| 40. | Porteck consisted of two components at the time of Acquisition by the Debtor: AHMS and PC Advantage ("PCA") which were both medical billing companies Porteck acquired prior to 2015. | Stipulated Fact |
| 41. | The net asset value of AHMS in 2015 was roughly **1.35MM** as calculated by total assets of $2,350,000 less a 1MM liability, a promissory note paid off by the Debtor at acquisition. | Stipulated Fact |
| 42. | Porteck records reflect the entity PCA had customer lists and contracts of $865,000. | Stipulated Fact |
| 43. | Porteck records reflect the value of acquired total assets from stated PCA in 2014 equal to $2,546,246.55 | Stipulated Fact |

| Statement of Fact | | Evidentiary Support |
|---|---|---|
| 44. | Porteck funded the Acquisition of PCA in Nov. 2014 with 1.9 MM in loans which loans the Debtors paid off or took over payment of at time of acquisition in 2015. | Stipulated Fact |
| 45. | The net asset value of PCA recorded at time of purchase by the Debtor was **$474,000** | Stipulated Fact |
| 46. | According to Section 1.6(b) of the APA, all sums owed to the Selling Parties were to be disbursed at closing on March 2015. | Stipulated Fact |
| 47. | Walia asserts the 2.5MM First Transfer was paid to him pursuant to section 1.6(e) of the APA | Stipulated Fact |
| 48. | No escrow was established by the parties to the APA in 2015 and there was no discussion between Walia and Parmar of selecting an escrow or depositing monies. | Stipulated Fact |
| 49. | The Buyer and the Seller to the APA did not execute an escrow agreement. | Stipulated Fact |
| 50. | In 2017, Walia agreed to sell Parmar a software company, which he owned, AllRad Direct, LLC ("AllRad"), through Objecttech Holdings LLC, a shell company that controlled AllRad. | Stipulated Fact |
| 51. | The sale was memorialized by a Membership Interests Purchase Agreement ("MIPA") dated June 2017 to Physicians Healthcare Network Management Solutions, LLC, ("PHNMS") | Stipulated Fact |
| 52. | On May 17, 2017, Ted Brindamour ("Brindamour ") forwarded to Parmar and Walia a draft Due Diligence Findings Report dated May 18, 2017, which was incomplete. | Stipulated Fact |
| 53. | Brindamour worked for Sage Consulting who the Debtors used for due diligence reports for their acquisitions which was a company owned by | Stipulated Fact |

| Statement of Fact | | Evidentiary Support |
|---|---|---|
| | Parmar's brother-in-law, Salil Sharma. | |
| 54. | Brindamour wanted Walia to insert the factual information with respect to AllRad its operations and assets. | Stipulated Fact |
| 55. | On May 31, 2017, Walia emailed Parmar to push forward the acquisition of Objecttech. | Stipulated Fact |
| 56. | Parmar responded and asked Walia who was the company to be acquired and what product did it make. | Stipulated Fact |
| 57. | On May 31, 2017, Walia forwarded to Parmar the draft Due diligence report and asked for a contract. | Stipulated Fact |
| 58. | On May 31, 2017, Parmar requested that "accurate figures" be inputted into the Due diligence report. | Stipulated Fact |
| 59. | The financial figures in the draft report could only come from Walia and was based off his recollection of what the business did. | Stipulated Fact |
| 60. | The Due Diligence Report was not finalized. | Stipulated Fact |
| 61. | Multiple sections of the executed MIPA such as sections 1.3 Earn-Out Payments, Section 1.4, Discharge of Debt and Liabilities, Maintenance of Working Capital, were never completed. | Stipulated Fact |
| 62. | The various schedules referenced throughout the MIPA for the acquisition of AllRad were never completed or attached to the MIPA. | Stipulated Fact |
| 63. | On June 8, 2017, Walia advised Parmar he may need to convert the agreement to an asset purchase agreement as he was meeting his accountants today. | Stipulated Fact |

| Statement of Fact | | Evidentiary Support |
|---|---|---|
| 64. | On June 15, 2017, Walia advised Parmar the price was 1.52MM. | Stipulated Fact |
| 65. | Walia as the seller was trying to maximize the price the Debtor would have to pay for AllRad. | Stipulated Fact |
| 66. | Defendants did not produce either Federal or State tax returns for Objecttech Holdings, LLC or AllRad. | Stipulated Fact |
| 67. | PHNMS is a non-debtor entity. | Stipulated Fact |
| 68. | No revenue projections, working capital, balance sheets or statement of assets and liabilities referenced in the MIPA were attached. | Stipulated Fact |
| 69. | The Orion board of director's resolution approving the sale as required by the MIPA was never delivered. | Stipulated Fact |
| 70. | Neither Parmar nor Defendant, as CEO of the Debtor, considered any other competing software or put the contract out for a competitive bid. | Stipulated Fact |
| 71. | On February 29, 2016, Plaintiff Cockerell Dermatopathology filed a complaint, case no. DC-16-02365 against the Debtors Medical Billing Services and Orion Healthcorp., Inc. in the District Court of Dallas County Texas for monetary relief in excess of $1,000,000. | Stipulated Fact |
| 72. | On March 23, 2018, a Suggestion of Bankruptcy of the Debtors Physician Practice Plus, LLC d/b/a Orion Billing Services and Orion Healthcorp., Inc. was filed in the District Court of Dallas County Texas advising of the triggering of the automatic stay of the proceedings. | Stipulated Fact |
| 73. | On December 16, 2015, the Southern District Court of Texas issued a Judgment in the amount | Stipulated Fact |

| Statement of Fact | Evidentiary Support |
|---|---|
| of $194,185, against the Debtor Orion Healthcorp, Inc. in favor of former employees Jack McBride and Alan Nottingham for unpaid deferred compensation.  The Judgment was filed as a proof of claim in Case No. 8-18-71748, and assigned claim no. 10001.  The filed claim remains unsatisfied. | |
| 74. On March 9, 2016, a lawsuit was initiated in the Supreme Court of the State of New York by Criterions, LLC, against the Debtors Physician Practice Plus, LLC and Constellation Healthcare Technologies, Inc. | Stipulated Fact |
| 75. Judgment was entered on November 30, 2017, against the Debtors Physician Practice Plus, LLC and Constellation Healthcare Technologies, Inc. in the amount of $77,767.26. | Stipulated Fact |
| 76. On March 23, 2018, a Suggestion of Bankruptcy was filed by the Debtors Physician Practice Plus, LLC and Constellation Healthcare Technologies, Inc., in the Supreme Court of the State of New York. | Stipulated Fact |

Comes now, Plaintiff, and submits his Separate Statement of Additional

Uncontroverted Facts ("ASOF") with respect to Plaintiff's Motion for Summary Judgment:

## II.    PLAINTIFF'S ADDITIONAL SEPARATE STATEMENT OF FACT

| | | |
|---|---|---|
| 77. | Robinson Brog Leinwand Greene Genovese & Gluck P.C. ("Robinson Brog"), forwarded ledgers of the Interest on Lawyers Account activity in the escrow account maintained by Robinson Brog at  Wells Fargo Bank, N.A. ("IOLA Account") to executives of the Debtors. | See Affidavit of Frank Lazzara ("Affid. of F. Lazzara"), ¶5. |
| 78. | For the fiscal year ended December 31, 2014, 23.1 million dollars borrowed by Orion through a facility with RCC Commercial, Inc. was deposited into and appears in the IOLA Account | See Affidavit of Frank Lazzara ("Affid. of F. Lazzara"), ¶6. |

| | statement activity, dated 4/1/2014 | |
|---|---|---|
| 79. | On February 19, 2016, $5,058,408.81, was transferred out of the Debtor Constellation Healthcare Technologies, Inc, bank account to the IOLA account at the firm of Robinson Brog. | See, Affidavit of Edith Wong ("Affidavit of E. Wong"), ¶5, referencing, February 2016 M&T Bank Statement, attached as Exhibit A to the Affidavit. |
| 80. | On August 10, 2016, $12,740,000 was transferred out of the Debtor Constellation Healthcare Technologies, Inc, bank account to the IOLA account at the firm of Robinson Brog. | See, Affidavit of E. Wong, ¶5, referencing, August 2016 M&T Bank Statement, attached as Exhibit B to the Affidavit. |
| 81. | On March 10, 2017, $5,590,000 was transferred out of the Debtor Orion HealthCorp. Inc., bank account to the IOLA account at the firm of Robinson Brog. | See, Affidavit of E. Wong, ¶6, referencing March 2017, JP Morgan Chase Bank Statement, attached as Exhibit C to the Affidavit. |
| 82. | On February 3, 2017, approximately $46,000,000 that resulted from the CHT Go-Private transaction was transferred into the Debtors' IOLA account at the firm of Robinson Brog. | See Affidavit of Frank Lazzara ("Affid. of F. Lazzara"), ¶7 |
| 83. | Based off a review of the IOLA Account, no Debtor other than CHT and Orion deposited monies into the IOLA Account. | See Affidavit of Frank Lazzara ("Affid. of F. Lazzara"), ¶7 |
| 84. | On December 1, 2014, Parmar characterized Porteck as "a joke" as it acquired PCA only one month prior and a portion of the PCA billing revenue was Telecom revenue from India. | See email, Ehren-Walia 005138-5140, attached to Decl. of J. Nolan, as Exhibit D) |
| 85. | On March 2, 2015, the day prior to the March 3, 2015 disbursement for the sale of Porteck Corporation to Physician Practice Plus, LLC. the IOLA Account records memorialize Constellation Healthcare Technologies "wire in" for $9,800,000. | See Affidavit of Frank Lazzara ("Affid. of F. Lazzara"), ¶8, referencing Exhibits 1 and 3. |
| 86. | $3,000,000 of the $9,800,000 went to First United Health and 6.8MM was disbursed to Walia in accordance with the Disbursement Authorization and Itemization Form. | See Affidavit of Frank Lazzara, ¶8, referencing Ex. 4. |

| 87. | First United Health, LLC or FUH is an investment entity conrolled by Paul Parmar. | See Request For Judicial Notice, Ex. 1, CHT Application for Admission to AIM, page 10. |
|---|---|---|
| 88. | At year-end, December 31, 2015, the Debtors' books and records do not evidence a 2.5 MM antecedent debt owed to any of the Sellers of Porteck. | See Affidavit of Frank Lazzara ("Affid. of F. Lazzara"), ¶9. |
| 89. | In 2016, the Debtors' books and records do not evidence a 2.5 MM antecedent debt owed to any of the Sellers of Porteck or the satisfaction of an antecedent debt as a result of the Debtors' payment of $2,500,000 to Defendants on April 15, 2016. | See Affidavit of Frank Lazzara ("Affid. of F. Lazzara"), ¶9. |
| 90. | On April 15, 2016, Parmar relayed to Walia, "I am willing to give you 3.5 MM in return for you to allow me to structure it properly internally which requires I close the file with a 2M payment." | See April 15, 2016, 12:37 pm email, attached to Declaration of J. Nolan, as Ex. 4. |
| 91. | As part of the forensic analysis of the Debtors' books and records between January 1, 2017 and December 31, 2017, no entry was made recording a 1.52 MM debt owed to any of the Sellers of Objecttech including Walia, NIKNIM. | See Affidavit of Frank Lazzara ("Affid. of F. Lazzara"), ¶10. |
| 92. | In 2017, the Debtor's books and records do not evidence the satisfaction of any antecedent debt or increase in net assets through the acquisition of an asset such as Objecttech Holdings LLC, Allrad or PHNMS for $1,520,000 | See Affidavit of Frank Lazzara ("Affid. of F. Lazzara"), ¶10. |
| 93. | On May 31, 2017, Parmar reached out to the law firm of Robinson Brog and directed they create a shell company, PHNMS, quickly so I can get it going. | See, Affidavit of E. Wong, ¶5, referencing, See May 31, 2017, email, Ehren –Walia 004032, attached hereto as Exhibit "L". |
| 94. | Plaintiff requested the tax returns of both Objecttech and AllRad | See Affidavit of J. Nolan, Exhibit 2, Plaintiff's First Set of Request To Produce Documents, Nos. 31 & 35. |

| 95. | Walia was the owner and President of both entities and has not produced tax returns for Objecttech or AllRad. | Depo of Walia, pg. 352-354, lines 7-20, attached Affidavit of J. Nolan as Ex. 1; See Defendants' First Set of Responses to Req. To Produce Documents, Affidavit of J. Nolan, Ex. 3; Depo of Walia, pg 352-353, Ex 1 to Affidavit of J. Nolan. |
| 96. | Walia filed a proof of claim, Claim No. 10141, in the amount of $1,150,947, in case no. 18-71, asserting monies the Debtor owed him personally under the Asset Purchase Agreement dated March 2015. | See Request For Judicial Notice; Exhibit 2, proof of claim. |
| 97. | In 2016 and 2017, Walia utilized the NIKNIM bank account to pay his personal expenses. | See Decl. of J. Nolan, ¶7, JP Morgan Chase cancelled bank checks. |

Dated:  January 18, 2023      PACHULSKI STANG ZIEHL & JONES LLP

By: _____

Ilan D. Scharf, Esq.
Jeffrey P. Nolan, Esq. (admitted *pro hac vice*)
PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 34th Floor
New York, New York 10017
Telephone:    (212) 561-7700
Facsimile:    (212) 561-7777

Counsel for the Plaintiff,
Howard M. Ehrenberg in his capacity as
Liquidating Trustee of Orion Healthcorp, Inc., *et al*.

Dated:  January 18, 2023      ROSEN & ASSOCIATES, P.C.

By:

Attorneys at Law
747 Third Avenue
New York, NY 10017
Tel: (212) 223-1100
srosen@rosenpc.com

The Law Office of Eugene R. Scheiman, PLLC
570 Lexington Ave
Suite 1600
New York, NY 10022
Phone: 646-280-9000
eugene.scheiman@scheimanlaw.com

Counsel for the Defendants, Arvind Walia and
NIKNIM Management

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| ORION HEALTHCORP, INC[1]. | : | Case No. 18-71748 (AST) |
| | : | |
| Debtors. | : | (Jointly Administered) |

------------------------------------------------

| | | |
|---|---|---|
| HOWARD M. EHRENBERG IN HIS CAPACITY | : | |
| AS LIQUIDATING TRUSTEE OF ORION | : | Adv. Pro. No. 20-08049 (AST) |
| HEALTHCORP, INC., ET AL., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| ARVIND WALIA; NIKNIM MANAGEMENT, | : | |
| INC., | : | |
| | : | |
| Defendants. | : | |
| | : | |

------------------------------------------------

## AFFIDAVIT OF JEFFREY P. NOLAN
## IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR IN THE
## ALTERNATIVE, SUMMARY ADJUDICATION AGAINST DEFENDANTS
## ARVIND WALIA; NIKNIM MANAGEMENT, INC.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Orion Healthcorp, Inc. (7246); Constellation Healthcare Technologies, Inc. (0135); NEMS Acquisition, LLC (7378); Northeast Medical Solutions, LLC (2703); NEMS West Virginia, LLC (unknown); Physicians Practice Plus Holdings, LLC (6100); Physicians Practice Plus, LLC (4122); Medical Billing Services, Inc. (2971); Rand Medical Billing, Inc. (7887); RMI Physician Services Corporation (7239); Western Skies Practice Management, Inc. (1904); Integrated Physician Solutions, Inc. (0543); NYNM Acquisition, LLC (unknown) Northstar FHA, LLC (unknown); Northstar First Health, LLC (unknown); Vachette Business Services, Ltd. (4672); Phoenix Health, LLC (0856); MDRX Medical Billing, LLC (5410); VEGA Medical Professionals, LLC (1055); Allegiance Consulting Associates, LLC (7291); Allegiance Billing & Consulting, LLC (7141); New York Network Management, LLC (7168). The corporate headquarters and the mailing address for the Debtors listed above is 1715 Route 35 North, Suite 303, Middletown, NJ 07748.

STATE OF CALIFORNIA )
)  ss.:
COUNTY OF LOS ANGELES )

JEFFREY P. NOLAN, being duly sworn, deposes and says:

1.      I am an attorney at law duly licensed to practice before all courts in the State of California.  I am an attorney with the law firm of Pachulski Stang Ziehl & Jones LLP, attorneys of record for Plaintiff, Howard M. Ehrenberg in his capacity as Liquidating Trustee of Orion Healthcorp, Inc., et al., for the estates of the above-captioned debtors, counsel of record in this adversary proceeding.  The facts stated herein are of my own personal knowledge, or made known to me from a review of the files and pleadings in this action which are maintained in the ordinary course of business.  If called upon as a witness to any facts set forth herein, I could and would competently testify thereto.

2.      Attached hereto as **Exhibit 1** are true and correct copies of excerpts of the deposition of Arvind Walia taken on October 28, 2021, pages 352-354, in the above referenced adversary.

3.      Attached hereto as **Exhibit 2** is a true and correct copy of Plaintiff's First Request For the Production of Documents.

4.      Attached hereto as **Exhibit 3** is a true and correct copy of Defendants' Responses, as was marked Exhibit 30 at the deposition of Arvind Walia.

5.      Attached hereto as **Exhibit 4** is a true and correct copy of the email bate-stamped AWNK003013-3014 as labelled by Defendant and produced to this office and the undersigned in response to Plaintiff's Request For the Production of Documents.

6.      Attached hereto as **Exhibit 5** is a true and correct copy of Membership Interests Purchase Agreement ("MIPA") Exhibit 15, from the deposition of Defendant Walia,

bate-stamped AWNK003104-3168. The MIPA is a document produced by Defendant in this litigation and maintained in the files of this firm.

7.      Attached hereto as **Exhibit 6** are true and correct copies of documents received by Plaintiff in response to a duly issued subpoena to JPMorgan Chase, bate-stamped EHREN-NIKNIM CHASE 000001-2 and 000171-197.

8.      Attached hereto as **Exhibit 7** is the Proposed Order Granting Plaintiff's Motion For Summary Judgment, Or In The Alternative Summary Adjudication, Against Defendants John Petrozza and Abruzzi Investments, LLC.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 18th day of January, 2023, at Los Angeles, California.

Jeffrey P. Nolan

SWORN TO AND SUBSCRIBED before me this
18th day of January, 2023.

SOPHIA LOUISA LEE
Notary Public - California
Los Angeles County
Commission # 2337676
My Comm. Expires Dec 16, 2024

# EXHIBIT 1

Page 326

1

2    UNITED STATES BANKRUPTCY COURT

3    EASTERN DISTRICT OF NEW YORK

     ----------------------------------------X

4    In re:                     Chapter 11

     ORION HEALTHCORP, INC.,    No. 18-71748(AST)

5                  Debtors.

     ----------------------------------------

6    HOWARD M. EHRENBERG IN

     HIS CAPACITY AS LIQUIDATING

7    TRUSTEE OF ORION HEALTHCORP

     INC., ET AL.,              Adv. Pro. No.

8                  Plaintiff,   8-20-08049(AST)

     ARVIND WALIA, NIKNIM

9    MANAGEMENT, INC.,

                   Defendant(s).

10   ----------------------------------------X

11

12                     October 28, 2021

13                     12:11 p.m.

14

15       Continued deposition of ARVIND WALIA,

16   held via Zoom at 27 Kettlepond Road,

17   Jericho, New York, pursuant to Notice,

18   before Theresa Tramondo, AOS, CLR, a

19   Notary Public of the State of New York.

20

21

22

23

     Reported by:

24

     THERESA TRAMONDO, AOS, CLR

25

Page 327

1

2   APPEARANCE OF COUNSEL:

3

4   FOR PLAINTIFF HOWARD M. EHRENBERG IN HIS

5   CAPACITY AS LIQUIDATING TRUSTEE OF ORION

6   HEALTHCORP INC., ET AL.:

7       PACHULSKI STANG ZIEHL & JONES LLP

8       10100 Santa Monica Boulevard, Floor 13

9       Los Angeles, California 90067-4003

10      BY:   JEFFREY NOLAN, ESQ.

11      jnolan@pszjlaw.com

12      (310)277-6910

13

14  FOR DEFENDANTS ARVIND WALIA and

15  NIKNIM MANAGEMENT, INC.:

16      ROSEN AND ASSOCIATES

17      747 Third Avenue

18      New York, New York 10017

19      BY:   SANFORD P. ROSEN, ESQ.

20      srosen@rosenpc.com

21      (212)223-1100

22

23  ALSO PRESENT:

24      PAUL RAFFERTY, Concierge, Veritext

25  Legal Solutions

Page 328

1

2                MR. NOLAN:   All parties agree

3        that the court reporter can

4        swear/affirm the witness in virtually

5        via Zoom as if the witness was in the

6        same room as the court reporter.

7        Unless there are any objections by any

8        party, say it's so stipulated.

9                MR. ROSEN:   So stipulated.

10                MR. NOLAN:   So stipulated.

11  A R V I N D   W A L I A, called as a

12  witness, having been duly sworn via Zoom

13  by a Notary Public, was examined and

14  testified as follows:

15  EXAMINATION BY (CONT'D)

16  MR. NOLAN:

17        Q.    Good morning, Mr. Walia.

18        A.    Good morning.

19        Q.    Can you speak up a little bit.

20  I lost you.  You were great --

21        A.    Good morning.

22        Q.    Mr. Walia, this is the third

23  session of your deposition.  Do you recall

24  the admonitions or discussions I had about

25  what we're doing here today?

Page 352

Walia

1

2      A.      Yes, it was.

3      Q.      And it was doing that in the

4   sphere of with only -- with respect to

5   radiologists?

6      A.      That is correct, yes.

7      Q.      Did you -- since we last had

8   your deposition you were going to go back

9   and check and tell me whether or not

10  Objecttech filed tax returns.  Did they?

11     A.      Again, I believe I did.  I have

12  not been able -- I mean, the CPA firms have

13  changed, so I have to follow up with it.

14          So I -- right now, as of this

15  date, I don't have the answer whether --

16  definitively whether the taxes were filed or

17  not.

18     Q.      How about AllRad Direct, LLC,

19  what was the last year AllRad Direct filed

20  federal or state tax returns?

21     A.      I don't have the answer to that.

22     Q.      I believe your prior testimony

23  was that AllRad Direct went out of business

24  in 2013 or 2012; is that correct?

25     A.      It stopped doing business in

Page 353

Walia

1
2   that time frame.
3          Q.     Okay.  And if it stopped doing
4   business, there would be no -- would there
5   be any rationale for it to file tax returns
6   for those subsequent years?
7                MR. ROSEN:  Objection.
8                You can answer that, Arvid.
9          A.     I'm not an accountant, so that
10  would be a question for my accountants at
11  that time who were managing AllRad.
12         Q.     Well, you were the president or
13  owner or CEO of AllRad Direct LLC, correct?
14         A.     That is correct.
15         Q.     And you would be the person who
16  would have to sign the tax returns, correct?
17         A.     That is correct.
18         Q.     Do you recall ever signing any
19  tax returns for AllRad Direct after 2012?
20         A.     I don't remember.  My answer is:
21  I'll have to get back to you on this
22  question.
23         Q.     And you were --
24         A.     I remember doing something, but
25  I don't exactly remember.  It's been quite

Page 354

1                          Walia

2       some time.  It's been about eight, nine

3       years.

4            Q.    You are the president and were

5       the owner of Objecttech LLC, correct?

6            A.    That is correct.

7            Q.    And as you sit here today, do

8       you recall if you ever filed a federal or

9       state tax return on behalf of Objecttech

10      LLC?

11           A.    Once again, I don't recall.  I

12      will have to get back to that question.  I

13      assume I did, but I don't recall it fully.

14           Q.    Is it a fair statement it would

15      only be you who would be filing those tax

16      returns for AllRad Direct or Objecttech LLC?

17           A.    That is correct.

18                 MR. ROSEN:  Objection.

19                 You can answer that, Arvind.

20           A.    Yes, that is correct.

21                 MR. NOLAN:  Paul, can you keep

22           going down to -- let's go down to

23           detailed assessment.

24           Q.    Mr. Walia, did you provide any

25      of this information on 3973?  It's the lower

# EXHIBIT 2

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| ORION HEALTHCORP, INC[1]. | : | Case No. 8-18-71748 (AST) |
| | : | |
| Debtors. | : | (Jointly Administered) |

---------------------------------------------

| | | |
|---|---|---|
| HOWARD M. EHRENBERG IN HIS CAPACITY AS LIQUIDATING TRUSTEE OF ORION HEALTHCORP, INC., ET AL., | : | Adv. Pro. No. 8-20-08049 (AST) |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| ARVIND WALIA, NIKNIM MANAGEMENT, INC., | : | |
| | : | |
| Defendant(s) | : | |

---------------------------------------------

### PLAINTIFF'S AMENDED REQUEST FOR PRODUCTION OF DOCUMENTS PROPOUNDED TO DEFENDANT, ARVIND WALIA, SET ONE

TO:        Defendant, Arvind Walia

FROM:     Plaintiff, Howard M. Ehrenberg, Liquidating Trustee

**PLEASE TAKE NOTICE** that pursuant to Bankruptcy Rule 7034 and Rule 34 of the

Federal Rules of Civil Procedure Plaintiff requests that Defendant respond to Plaintiff's Request

for Production of Documents, Set Two ("Document Production Requests") within thirty (30)

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Orion Healthcorp, Inc. (7246); Constellation Healthcare Technologies, Inc. (0135); NEMS Acquisition, LLC (7378); Northeast Medical Solutions, LLC (2703); NEMS West Virginia, LLC (unknown); Physicians Practice Plus Holdings, LLC (6100); Physicians Practice Plus, LLC (4122); Medical Billing Services, Inc. (2971); Rand Medical Billing, Inc. (7887); RMI Physician Services Corporation (7239); Western Skies Practice Management, Inc. (1904); Integrated Physician Solutions, Inc. (0543); NYNM Acquisition, LLC (unknown) Northstar FHA, LLC (unknown); Northstar First Health, LLC (unknown); Vachette Business Services, Ltd. (4672); Phoenix Health, LLC (0856); MDRX Medical Billing, LLC (5410); VEGA Medical Professionals, LLC (1055); Allegiance Consulting Associates, LLC (7291); Allegiance Billing & Consulting, LLC (7141); New York Network Management, LLC (7168). The corporate headquarters and the mailing address for the Debtors listed above is 1715 Route 35 North, Suite 303, Middletown, NJ 07748.

days of the time of their service and produce all responsive documents at the offices of Pachulski

Stang Ziehl & Jones LLP, attn.: Jeffrey P. Nolan, 10100 Santa Monica Boulevard, Suite 1300,

Los Angeles, California 90067.

### DEFINITIONS AND INSTRUCTIONS

A.     The term "DOCUMENT(S)" means and includes, without limitation, the

following: any and all writings of whatever kind, including the originals and all non-identical

copies, whether different from the originals by reason of any notation made on such copies or

otherwise (including without limitation correspondence, memoranda, notes, diaries, statistics,

letters, telegrams, minutes, contracts, reports, studies, checks, statements, receipts, returns,

summaries, pamphlets, books, prospectuses, interoffice and intra-office communications, offers,

notations of any sort of conversations, telephone calls, meetings or other communications,

bulletins, printed matter, computer printouts, teletypes, telefax, invoices, work sheets, and all

drafts, alterations, modifications, changes and amendments of any of the foregoing), graphic or

aural records or representations of any kind (including without limitation, photographs, charts,

graphs, microfiche, microfilm, videotape, recordings, motion pictures), and electronic,

mechanical or electric records or representations of any kind (including without limitation tapes,

cassettes, discs, recordings).

B.     "BANKRUPTCY CASES" means case no. 8-18-71748 (AST) and all related

chapter 11 cases filed in the United States Bankruptcy Court, Eastern District of New York.

C.     "CONCERN" or "CONCERNING" means relate to, refer to, describe, evidence

or constitute.

D.     "DEBTOR" shall mean Orion Healthcorp, Inc., Constellation Healthcare

Technologies, Inc. et al., and their affiliates in these chapter 11 cases.

E.      "PLAINTIFF" means the Howard M. Ehrenberg, Liquidating Trustee.

F.      "YOU" or "YOUR" means Arvind Walia, the named defendant in this adversary proceeding, and shall include any other names or alias, his successors, agents, representatives, attorneys, accountants, and all other persons acting on its behalf or under its control.

G.      DEFENDANTS means NIKNIM Management, Inc. and/or Arvind Walia the named defendants in the adversary proceeding 8-20-08049 (AST).

H.      "COMPLAINT" means the First Amended Complaint For Avoidance and Recovery of (1) Fraudulent Transfers; (2) Preferential Transfers; (3) Recovery of Avoided Transfers; (4) Objection To Claim No. 10067; Pursuant to 11 USC §§ 502, 544, 547, 548 and 550 [Dkt. No. 21], filed in this adversary; # 20-08049-ast on approximately May 26, 2021.

I.      "PERSON" means and includes natural persons, firms, associations, corporations, institutions, partnerships, government agencies, or other organizations cognizable at law, and their agents and employees.

J.      "COMMUNICATION" means every manner or means of disclosure, transfer, or exchange of information, words, thoughts or ideas, whether orally or by document, whether face-to-face, by telephone, mail, personal delivery, electronic communication or otherwise.

K.      "ACTION" means the legal proceeding commenced with the Complaint filed by DEBTOR against NIKNIM Management, Inc., in the United States Bankruptcy Court for the Eastern District of New York, Adv. No. 20-08049.

L.      "PREFERENCE PERIOD" means one year prior to March 16, 2018, the date on which DEBTOR filed its bankruptcy petition.

M.      "TRANSFERS" means any and all payments identified on Exhibit A to the First Amended Complaint For Avoidance and Recovery of (1) Fraudulent Transfers; (2) Preferential

Transfers; (3) Recovery of Avoided Transfers; (4) Objection To Claim No. 10067; Pursuant to

11 USC §§ 502, 544, 547, 548 and 550.

      N.      "ANSWER" means DEFENDANT's Answer to First Amended Complaint and

Affirmative Defenses [Dkt. No. 23] filed in this adversary on or about June 9, 2021.

      O.      PETITION DATE means March 16, 2018, the date the Debtors filed voluntary

petitions in bankruptcy.

      P.      OBJECTTECH means Objecttech Holdings, LLC or any other related subsidiary

or business entity which it holds or owns a controlling share.

      Q.      In responding to these Document Production Requests, YOU shall provide

DOCUMENTS that are known or available to YOU, YOUR attorneys, YOUR accountants, to

any of YOUR investigators, employees, agents, or other persons serving YOU or YOUR

attorneys.  Reasonable investigation is required of YOU to provide a complete response.  If, after

making such an investigation or having one made, YOU are still unable to fully respond, YOU

are required to respond to the extent possible, and, further, to explain what investigative steps

were undertaken, and how and why YOU are unable to provide a complete response.

      R.      Throughout these Document Production Requests, the use of the masculine,

feminine or neuter is to be understood to include each of the others, where that is necessary to a

reasonable understanding of the Document Production Request.  Similarly, the use of the plural

is to be understood to include the singular, and vice versa.

      S.      If YOU contend that any DOCUMENT called for by any of these Document

Production Requests is privileged, in whole or in part, or if YOU otherwise object to any part of

any Document Production Request, state the reasons for each objection, claim of privilege and/or

ground for refusal to produce, and identify each person having knowledge of the factual basis, if

any, on which each objection, claim of privilege and/or other ground(s) for refusal to produce is asserted.

      T.     If any DOCUMENTS requested herein have been lost or destroyed, the DOCUMENTS so lost or destroyed shall be identified by author, date, and subject matter. In addition, the date of disposal, the manner of disposal, the reason for disposal, the PERSON authorizing disposal, and the PERSON disposing of the DOCUMENTS shall be identified.

      U.     All DOCUMENTS produced shall be produced as they are kept in the usual course of business or shall be organized and labeled to correspond to the paragraph of this request to which they are primarily responsive.

      V.     These Document Production Requests are of a continuing nature. If YOU acquire additional DOCUMENTS responsive to these Document Production Requests after the service of YOUR responses thereto, YOU shall promptly furnish such DOCUMENTS to the undersigned attorneys.

## DOCUMENT PRODUCTION REQUESTS

### DOCUMENT REQUEST NO. 1:

If YOU contend that the DEBTOR'S assets had a value higher than the amount listed on the DEBTOR'S schedules, please produce all DOCUMENTS to support such claim.

### DOCUMENT REQUEST NO. 2:

If YOU contend that the DEBTOR'S liabilities were less than those listed on the DEBTOR'S schedules, please produce all DOCUMENTS to support such claim.

### DOCUMENT REQUEST NO. 3:

All DOCUMENTS which support, form the basis of or document any service or product

owed by YOU as evidenced in proof of claim number 10067 filed in Case Number 18-71753.

**DOCUMENT REQUEST NO. 4:**

All DOCUMENTS YOU contend evidence that the DEBTOR was solvent at any time from January 1, 2016 to the PETITION DATE.

**DOCUMENT REQUEST NO. 5:**

Any and all DOCUMENTS that memorialize or record any COMMUNICATIONS between DEFENDANTS and DEBTOR, or any executive or employee, from January 2016 to the PETITION DATE CONCERNING debts owed to the DEFENDANTS.

**DOCUMENT REQUEST NO. 6:**

Any and all DOCUMENTS that constitute, relate, or refer in any way to the product or services rendered by DEFENDANTS for which the payments identified on Exhibit "A" attached to the COMPLAINT in this ACTION were received.

**DOCUMENT REQUEST NO. 7:**

Any and all DOCUMENTS memorializing the receipt of any payments between DEFENDANTS and DEBTOR from July 1, 2015 to the PETITION DATE.

**DOCUMENT REQUEST NO. 8:**

Any and all account DOCUMENTS which reflect account reconciliations generated by YOU for TRANSFERS with DEBTOR from July 1, 2016 to the PETITION DATE.

**DOCUMENT REQUEST NO. 9:**

Any and all DOCUMENTS, which YOU forwarded to DEBTOR regarding payment to collect any debt or sum from January 1, 2015 to the PETITION DATE.

**DOCUMENT REQUEST NO. 10:**

All DOCUMENTS reflecting or memorializing any communication(s) between

DEFENDANTS in 2016, 2017, or 2018 memorializing or referencing the status of any debt or payment from the DEBTOR.

**DOCUMENT REQUEST NO. 11:**

Any and all DOCUMENTS, which memorialize, identify or otherwise support YOUR contentions within the First Affirmative Defense asserted within the ANSWER.

**DOCUMENT REQUEST NO. 12:**

Any and all DOCUMENTS, which memorialize, identify or otherwise support YOUR contentions within the Second Affirmative Defense asserted within the ANSWER.

**DOCUMENT REQUEST NO. 13:**

Any and all DOCUMENTS, which memorialize, identify or otherwise support YOUR contentions within the Third Affirmative Defense asserted within the ANSWER.

**DOCUMENT REQUEST NO. 14:**

Any and all DOCUMENTS, which memorialize, identify or otherwise support YOUR contentions within the Fourth Affirmative Defense asserted within the ANSWER.

**DOCUMENT REQUEST NO. 15:**

Any and all DOCUMENTS, which memorialize, identify or otherwise support YOUR contentions within the Fifth Affirmative Defense asserted within the ANSWER.

**DOCUMENT REQUEST NO. 16:**

Any and all DOCUMENTS, which memorialize, identify or otherwise support YOUR contentions within the Sixth Affirmative Defense asserted within the ANSWER.

**DOCUMENT REQUEST NO. 17:**

Any and all DOCUMENTS, which memorialize, identify or otherwise support YOUR contentions within the Seventh Affirmative Defense asserted within the ANSWER.

**DOCUMENT REQUEST NO. 18:**

Any and all DOCUMENTS, which memorialize, identify or otherwise support YOUR contentions within the Eighth Affirmative Defense asserted within the ANSWER.

**DOCUMENT REQUEST NO. 19:**

Any and all DOCUMENTS, which memorialize, identify or otherwise support YOUR contentions within the Ninth Affirmative Defense asserted within the ANSWER.

**DOCUMENT REQUEST NO. 20:**

Any and all DOCUMENTS, which memorialize, identify or otherwise support YOUR contentions within the Tenth Affirmative Defense asserted within the ANSWER.

**DOCUMENT REQUEST NO. 21:**

Any and all DOCUMENTS, which memorialize, identify or otherwise support YOUR contentions within the Eleventh Affirmative Defense asserted within the ANSWER.

**DOCUMENT REQUEST NO. 22:**

Any and all DOCUMENTS, which memorialize, identify or otherwise support YOUR contentions within the Twelfth Affirmative Defense asserted within the ANSWER.

**DOCUMENT REQUEST NO. 23:**

Any and all DOCUMENTS, which memorialize, identify or otherwise support YOUR contentions within the Thirteenth Affirmative Defense asserted within the ANSWER.

**DOCUMENT REQUEST NO. 24:**

Any and all DOCUMENTS, which memorialize any COMMUNICATION between Defendants and Paul Parmar from January 1, 2016 to the PETITION DATE.

**DOCUMENT REQUEST NO. 25:**

Any and all DOCUMENTS, which YOU forwarded to DEBTOR evidencing the

operations of OBJECTTECH from January 1, 2015 to the PETITION DATE.

**DOCUMENT REQUEST NO. 26:**

Any and all DOCUMENTS, which YOU forwarded to DEBTOR evidencing the valuation of OBJECTTECH.

**DOCUMENT REQUEST NO. 27:**

Any and all DOCUMENTS, which memorialize, identify or otherwise constitute the corporate documents governing the formation and/or governance of OBJECTTECH.

**DOCUMENT REQUEST NO. 28:**

ALL invoices issued by YOU to the DEBTOR from January 1, 2016 to the PETITION DATE.

**DOCUMENT REQUEST NO. 29:**

Any and all COMMUNICATIONS between YOU and Paul Parmar from January 1, 2015, to the PETITION DATE.

**DOCUMENT REQUEST NO. 30:**

For any new value YOU contend was provided to the DEBTOR in the PREFERENCE PERIOD, please produce any and all supporting DOCUMENTS for the services or product upon which the services were rendered, including all bills, invoices, work sheets, correspondence and memorialization of when product shipped or services rendered.

**DOCUMENT REQUEST NO. 31:**

Any and all DOCUMENTS that constitute the Federal and/or State tax records of OBJECTTECH from January 1, 2015 to the January 1, 2019.

**DOCUMENT REQUEST NO. 32:**

Any and all COMMUNICATIONS between YOU and Sotirios Zaharis, a/k/a Sam Zaharis, from January 1, 2015, to the PETITION DATE.

**DOCUMENT REQUEST NO. 33:**

Any and all DOCUMENTS which support any services rendered by YOU for non-debtor Orion Health Corp. from January 1, 2015 to the PETITION DATE.

**DOCUMENT REQUEST NO. 34:**

Any and all DOCUMENTS, which memorialize any COMMUNICATION between YOU and Sage Group from January 1, 2015 to the PETITION DATE.

**DOCUMENT REQUEST NO. 35:**

Any and all DOCUMENTS that constitute the Federal and/or State tax records, including schedules, of AllRad Direct from January 1, 2015 to the January 1, 2019.

**DOCUMENT REQUEST NO. 36:**

Any and all DOCUMENTS, which memorialize any COMMUNICATION between YOU and Ravi Chivukula from January 1, 2015, to the PETITION DATE.

**DOCUMENT REQUEST NO. 37:**

Any and all DOCUMENTS, which reflect the ownership and formation of Orion Health Corp.